UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTINA CONYERS WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C. A. NO. 06-2076 CKK |
| ROBERT JOHNSON, DAVID ANTHONY, and | ) |
| THE DISTRICT OF COLUMBIA, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Defendants filed a Motion to Dismiss that purports to seek dismissal of ***all*** claims brought by Ms. Conyers Williams. As we show below, defendants arguments lack merit, because Conyers Williams states a claim under the WhistleBlower Protection Act ("WPA") and the actions taken against her are sufficiently adverse to allege a violation of her first amendment rights under the Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White,* --- U.S. ----, 126 S. Ct. 2405, 2409, 2415-2419 (2006). *Burlington Northern* establishes an objective test for determining whether a challenged action is retaliatory, *i.e.*, whether it "might well have dissuaded a reasonable worker from making or supporting a change of discrimination under Title VII." *Id.* at 2415. The facts alleged in the complaint are sufficient to allege that "adverse actions" taken against Ms. Conyers Williams are causally related to her exercise of her First Amendment rights.

Further, Defendants' Motion to Dismiss never addresses plaintiff's claims for injunctive relief, which are not subject to the restrictions of *Monell v. Dept of Soc. Serv. Of City of New York*, 436 U.S. 658, 665-695 (1978). Defendants never addresses the First Amendment claims brought by Ms. Conyers Williams against the individual defendants in their personal capacities.

Notwithstanding defendants' failure to address these issues, the District seeks dismissal of the entire twenty-one page Complaint.

## BACKGROUND

Ms. Conyers Williams is exceptionally well-qualified for the position she held with the Addiction Prevention and Recovery Administration ("APRA") in the District of Columbia Department of Health ("DOH"). Ms. Conyers Williams is a graduate of Wayne State University in Detroit, Michigan with a Bachelor of Arts degree in Sociology. Ms. Conyers Williams holds a Master of Science degree in Health Science Administration from Central Michigan University and a second post-graduate degree, a Master of Public Health from Emory University. Complaint ¶9.

Prior to beginning employment with the District of Columbia (" the District") on June 28, 2004, Ms. Conyers Williams was Executive Director for the National Tuberculosis Controllers Association, Inc. Ms. Conyers Williams was a Public Health Advisor for the National Center for Infectious Diseases/Division of Mycotic Diseases at the Center for Diseases Control and Prevention. Ms. Conyers Williams served in the United States Navy for three years and another three years in the Public Health Services Corps from which she was honorably discharged as a Lieutenant. Ms. Conyers Williams has worked in the fields of public health and social work for her entire career. Complaint ¶¶10, 11, 12.

The most recent official evaluation of Ms. Conyers Williams's performance in her current job, signed by Mr. Johnson and dated November 15, 2005, rated Ms. Conyers Williams as "Exceeds Expectations," with a "significantly exceeds expectations" rank for professionalism, resource usage and managing people. Ms. Conyers Williams was ranked "exceeds expectations" for "integrity and trust" and for "teamwork." *See* Evaluation attached to Complaint as Exhibit A. Complaint ¶13.

Defendants argue that Conyers Williams' testimony consisted of three statements. These are the she informed the Council that: she was in charge of ACIS. ACIS was intended to provide on line information about the experiences of clients at the detoxification unit at DC General Hospital. ACIS was to provide managers with information such as who the clients were, when they were admitted, how long they waited to be served, and what services they received.

Conyers Williams also testified about the type of information that could be retrieved by the system. Specifically, Conyers Williams testified that the system had very limited abilities to provide useful information and the system could only provide demographic information, that is the gender, age and ethnicity of the recipients of APRA's services. This data was of little importance to APRA.[1]

We submit that all present at the February 14, 2006 hearing understood this testimony to mean that the system was a failure, as of February 2006, because the District of Columbia had spent hundreds of thousands of dollars paying a contractor who was many months behind and had failed to deliver meaningful data to APRA.

Conyers Williams statement to the Council that the system could be up and running by November, 2006 is significant for several reasons. First, this statement, based on Conyers Williams' best information, was contrary to the statement made by Johnson *in writing* and submitted to the Council just prior to the hearing that the system would be up and running by June, 2006.[2]

---

[1] Plaintiff is filing her First Amended Complaint with additional details regarding her protected activity. *See* First Amended Complaint at ¶41.

[2] Conyers Williams and the contractor previously informed Johnson that Phase 2 of the project would not be ready until November, 2006. But Johnson knowingly provided inaccurate information to Councilman Catania. First Amended Complaint at ¶35.

The evidence will show that the contractor, in fact, failed to meet the November, 2006 deadline, after Ms. Conyers Williams was removed from the contract..

At a debriefing held after Ms. Conyers Williams' public testimony, much of the discussion at the "debriefing" was whether APRA would be the target of a federal fraud investigation. At the "debriefing," Mr. Johnson blamed Ms. Conyers Williams for doing a poor job of answering Councilman Catania's questions because she disclosed to Councilman Catania that the ACIS contract was many months behind schedule and that APRA had little to show for the hundreds of thousands of dollars the District had already spent on the ACIS contract. Mr. Johnson was angry with Ms. Conyers Williams and he told her that her testimony made APRA look like "crooks," and made it appear the agency was doing something wrong because she truthfully testified that Phase 2 of the ACIS project would not be ready until November, 2006. *See* Complaint ¶¶46, 47.

Defendants bury in a footnote Conyers Williams private meeting with Councilman Catania, Memorandum at 4, n.1. but overlook the fact that Conyers Williams advised Councilman Catania of the contractor's numerous failings. Conyers Williams also advised Councilman Catania at the private meeting that Johnson had begun harassing her because of her testimony about the status of the contract. Conyers Williams told Councilman Catania that Johnson turned mean and belligerent after her testimony. Conyers Williams told Councilman Catania that she did not believe that a written contract actually existed, because she had never seen the ACIS contract.[3]

Conyers Williams shared with Councilman Catania her concerns about the limited ability of computer system because of the high turnover of the contractor's staff and the contractor's unwillingness to properly staff the contract. Conyers Williams shared with Councilman Catania her concern about possible waste, fraud, and abuse. Plaintiff believes Johnson was informed that Conyers Williams met with Councilman Catania in March, 2006 after her testimony about the ACIS

---

[3] Conyers Williams still has not seen the ACIS contract, despite repeated requests.

contract.

## ARGUMENT

### I. Legal Standard for Motion to Dismiss

In appraising the sufficiency of the complaint, the court is required to "follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (footnote omitted). The court is bound to consider all well-pleaded facts as true, and to draw all reasonable inferences in favor of the nonmovant. *Scheuer v. Rodes,* 416 U.S. 232, 236 (1974).

Contrary to the District's unsupported assertions, Conyers Williams is not required to make a *prima facie* case in her Complaint. *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113, 1114-15 (D.C. Cir. 2000) (citations omitted) (Plaintiff, whether *pro se* or represented, is not required to present a *prima facie* case in her pleadings or even match facts to every element of a legal theory or allege all facts that must be eventually proved.) Conyers Williams "need not plead law or match facts to every element of a legal theory." *Krieger v. Fadely,* 211 F.3d 134, 136 (D.C. Cir. 2000) (citation omitted). Conyers Williams does not even need to "allege all facts necessary to prove [her] claim." *Caribbean Broadcasting System, Ltd v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998) (citation omitted). The Complaint need only contain general allegations sufficient to give adequate notice of the alleged unlawful acts which form the basis of plaintiff's claims and the grounds upon which it rests. *Sinclair v. Kleindienst,* 711 F.2d 291, 293 (D.C. Cir.1983). Where Conyers Williams filed a detailed twenty-one page complaint, she meets the standard for surviving a Motion to Dismiss.

## II. Allegations in the Complaint

In Count I of the Complaint, Conyers Williams repeated and incorporated by reference the factual allegations contained in Paragraphs 1 through 97 and, in addition, alleged:

> 99. When Ms. Williams testified before Council member Catania's Council Committee, and when she met with Mr. Catania to discuss contracting irregularities, Ms. Williams was speaking on matters of public interest and public concern when she testified and when she provided truthful information regarding government contract.
>
> 100. Ms. Williams's interest as a citizen in speaking out on such matters of public concern serves the public interest because the subject was reporting waste, fraud, abuse of authority, violations of law, and threats to public health and safety.
>
> 101. Ms. William's interest as a citizen in speaking out on such matters of public concern outweighs the interest, if any, of stifling public speech under the pretense that doing so allegedly promotes the efficiency of the public service.
>
> 102. Ms. Williams's exercise of her First Amendment rights was a substantial or motivating factor in the adverse actions taken against her by defendants Johnson and Anthony, who would not have taken these adverse actions had Ms. Williams not engaged in activity protected under the First Amendment of the Constitution.

It is submitted that the Complaint contains more than enough factual allegations in support of her First Amendment violations to satisfy the law of the Circuit's standards on notice pleading. *Hall v. Ford,* 856 F.2d 255, 258 (D.C. Cir.1988); *Tao v. Freah*, 27 F.3d 635, 638 (D.C. Cir. 1994).

In Count II, Conyers Williams repeated and incorporated by reference the allegations contained in Paragraphs 1 through 104, in the Complaint and, in addition, alleged

> 106. When Ms. Williams provided truthful testimony at a public [hearing] before the D.C. Council and later provided information to D.C. Councilman Catania, Williams was making a "protected disclosure" under the D.C. Whistleblower statute, D.C.

Code §1-615.52(a)(6). Williams reasonably believes this truthful testimony and information evidences "Gross mismanagement;" "Gross misuse or waste of public resources or funds;" "Abuse of authority in connection with the administration of a public program or the execution of a public contract;" and/or "A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature."

107. Defendants Johnson and Anthony took and/or threatened to take "prohibited personnel actions," as defined in the Whistleblower Act §1-615.52(a)(5), and otherwise retaliated against her because of Ms. Williams's protected activity. These actions included recommended, threatened, or actual termination, demotion, suspension, or reprimand; involuntary transfers, reassignments, or detail; retaliation in the manner described above.

108. The D.C. Whistleblower Act guarantees that District employees have the right to communicate freely and openly with the members of the Council. D.C. Code §1-615.58 and to disclose information that is illegal or unethical or that threatens public funds and public health and safety without fear of retaliation.

109. Ms. Williams's exercise of her whistleblower rights was a contributing factor in the adverse actions taken against her by defendants the District of Columbia and Robert Johnson and David Anthony. The District would not have taken these adverse actions against Ms. Williams had she not engaged in activity protected under the D.C. Whistleblower Act.

It is submitted that the Complaint contains more than enough factual allegations in support of her claims of retaliation under the Whistleblower Protection Act to satisfy the law of the Circuit's standards on notice pleading.

### III. Whistleblower Protection Act

The District of Columbia set forth detailed "Findings and Declaration of Purpose" in passing the Whistleblower statute: "The Council finds and declares that the public interest is served when employees of the District government are free to report waste, fraud, abuse of authority, violations

of law, or threats to public health or safety without fear of retaliation or reprisal." D.C. Code §1-615.51

Accordingly, the D.C. Council passed the statute to:

> (1) Enhance the rights of District employees to challenge the actions or failures of their agencies and to express their views without fear of retaliation through appropriate channels within the agency, complete and frank responses to Council inquiries, free access to law enforcement officials, oversight agencies of both the executive and legislative branches of government, and appropriate communication with the public;
>
> (2) Ensure that acts of the Council enacted to protect individual citizens are properly enforced;
>
> (3) Provide new rights and remedies to guarantee and ensure that public offices are truly public trusts;
>
> (4) Hold public employees personally accountable for failure to enforce the laws and for negligence in the performance of their public duties;
>
> (5) Ensure that rights of employees to expose corruption, dishonesty, incompetence, or administrative failure are protected;
>
> (6) Guarantee the rights of employees to contact and communicate with the Council and be protected in that exercise;
>
> (7) Protect employees from reprisal or retaliation for the performance of their duties; and
>
> (8) Motivate employees to do their duties justly and efficiently.

D.C. Code §1-615.51. Defendants' argument would eviscerate the purposes of the Whistleblower Act.

The Council defined "protected disclosure" means any disclosure of information, not specifically prohibited by statute, by an employee to a supervisor or a public body that the employee

reasonably believes evidences: "Gross mismanagement," "Gross misuse or waste of public resources or funds, Abuse of authority in connection with the administration of a public program or the execution of a public contract, A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or "A substantial and specific danger to the public health and safety."

Conyers Williams' statements to Councilman Catania during the Council's oversight hearings and in the private March 7, 2006 meeting are protected disclosures because they evidence gross mismanagement, and gross misuse or waste of public resources or funds because a contractor was paid over $900,000 for a contract that was both months behind schedule and failed to meet the contract's requirements. Conyers Williams statements to Councilman Catania are "protected disclosures" because they suggest an abuse of authority in connection with the administration of a public program or the execution of a public contract because there is evidence to suggest that substantial sums were paid to a contractor who did not perform and who may not have even had a contract. This would also constitute a violation of a federal, state, or local law, rule, or regulation and/or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature. Conyers Williams' statements also constitute "protected disclosures" because the disclosure of this information is about a "substantial and specific danger to the public health and safety" because the information the contract was supposed to track and provide in a useful form was intended to assist APRA in reducing the amount of drugs used in the District. Delays in completing the contract adversely impacted APRA's ability to protect the

public health and safety by making its drug programs more effective.[4]

The District argues that "no reasonable person could believe that Conyers statements to the Council evidence gross mismanagement, gross misuse or waste of public resources, fraud or any violation of the law." This argument is incorrect as the inferences drawn in Conyers Williams' favor from the facts alleged in the Complaint demonstrate she reasonably believe her speech dealt with a protected subject and that she engaged in disclosures protected under the Whistleblower Act because she disclosed major failures in the ACIS contract.[5]

### IV. First Amendment Claims

Defendants admit that Conyers Williams may file a First Amendment pursuant to 42 U.S.C. §1983, but complains that Conyers Williams make no reference to the statute in her Complaint. The District misreads case law governing the requirements of a Complaint and we submit it would be error to require Conyers Williams to reference a specific statute. But in order to resolve this manufactured controversy, Conyers Williams specifically refers to 42 U.S. C. §1983 in filing her First Amended Complaint.

### A. Appropriate Defendants for First Amendment Claims

Defendants correctly note that municipal liability under 42 U.S.C §1983 is limited by *Monell*

---

[4] The Whistleblower Act, unlike the First Amendment, does not require the Court to balance the employee's free-speech interests against any government interests that might support restrictions on the employee's speech. D.C. Code §§ 1-615.52(a), 1.615.54. In fact, nothing in the statute even permits such a balancing process.

[5] Plaintiff's First Amended Complaint also supplements her claims of retaliatory actions taken against her because APRA continues to retaliate against her. On March 15, 2007, Linda Fisher, the current acting Head of APRA, advised Ms. Conyers Williams that her position was being abolished, even though APRA continues to need to have performed the duties previously performed by Ms. Conyers Williams.

*v. Dept of Soc. Serv. Of City of New York*, 436 U.S. 658, 665-695 (1978). *Monell* limits municipal liability only for monetary damages and does not limit this Court's jurisdiction or ability to enter injunctive relief against the District to, *e.g.*, "Enjoin defendants from engaging in employment practices and procedures that operate to violate Ms. Conyers Williams's rights under the First Amendment and the D.C. Whistleblower Act." Complaint, Prayer for Relief, ¶B.  Even if *Monell* governs any issues in this litigation, this case does not limit the Court's ability to enjoin further interference with Ms. Conyers Williams' employment, such as the abolition of her job and threatening her with termination.  *Ex Parte Young*. 209 U.S. 123 (1908); *Samuels v. District of Columbia,* 770 F.2d 184, 192, n.3 (D.C. Cir. 1985) (applying *Young* to official-capacity suits against municipal officers fro injunctive relief under §1983); *Paxman v. Campbell*, 612 F.2d 848, 859-860 (4th Cir. 1980) (*en banc*) .

"Under § 1983, a municipality is liable [ ] only for constitutional torts arising from 'action pursuant to official municipal policy.' " *Triplett v. District of Columbia,* 108 F.3d 1450, 1453 (D.C. Cir.1997) (quoting *Monell*) 436 U.S. at 691.  A person's actions may constitute official municipal policy if the person has " 'final policy making authority [under] state law.' " *Triplett*, 108 F.3d at 1453 (quoting *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989)).

In *Triplett,* a prisoner of the District of Columbia Department of Corrections sued the District of Columbia for injuries inflicted by two D.C. correctional officers. *Triplett,* 108 F.3d at 1451.  The Circuit Court found that one of the final policy-makers was the Director of the D.C. Dept of Corrections because he was responsible for "the general direction and supervision" of the Department. *Id.* at 1453 (quoting D.C.Code § 24-442 (1981)).

The District is liable for the wrongful actions at issue in this litigation because Robert

Johnson who held the title of Senior Deputy Director of APRA was the highest ranking official in APRA and was a final policy-maker for the District of Columbia.  The Director of APRA is responsible for the administration of APRA by exercising necessary and appropriate power; making personnel decisions; enforcing rules and regulations; and contracting on behalf of APRA.[6]  *See Banks v. District of Columbia*, 377 F. Supp.2 85 (D. D.C. 2005) (Director for Department of Mental Health to be a final policy-maker for the Department of Mental Health because she is responsible for the administration of the Dept. of Mental Health, including hiring and terminating personnel.)  This case is like *Triplett,* because in the instant case the top official in APR is responsible for promulgating rules to run their respective agencies.  Since Johnson is the Head of APRA, he is a final policy-maker.  Thus, the District is liable under 42 U.S.C. § 1983 for Mr Johnson's and, arguably, Mr. Anthony's policy decisions.

### B.  "Adverse Action" Requirement

Defendants assert that Conyers-Williams failed to plead a "adverse action" causally related to the alleged exercise of her First Amendment rights."  Defendants' Memorandum at 8.  In support of this argument defendants cite *Brown v. Brody*, 199 F.3d 336 (D.C. Cir. 1999), that discusses adverse action under Title VII.  Defendants' Memorandum at 8.

The District asserts that Conyers Williams' complaints of "strained workplace relations are simply not substantive enough constitute an actionable injury under the First Amendment." Defendants' Memorandum at 9.  This argument is followed by the following citation "*Cf. Tao v. Freeh,* 27 F.3d 635, 639 (D.C. Cir. 1994).  Review of *Tao* demonstrates that imposing a "more

---

[6]     Mr. Johnson's assistant, defendant David Anthony, who held the Title of Chief of Staff, was the "number 2" person is APRA.  Mr. Anthony is also, arguably a final decision maker for the District

burdensome promotion requirement is an actionable injury under the First Amendment."[7] Thus, *Tao* does not assist the District.

In *Burlington Northern*, decided last year, the Supreme Court stated:

> The scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm. We therefore reject the standards applied in the Courts of Appeals that have treated the anti-retaliation provision as forbidding the same conduct prohibited by the anti-discrimination provision and that have limited actionable retaliation to so-called "ultimate employment decisions." See *supra,* at 2410.

*Id*. at 2414.

Since the Supreme Court adopted the standard articulated by this Circuit's decision in *Rochon v. Gonzales,* 438 F.3d 1211, 1217 (D.C. Cir. 2006), "the concept of retaliation encompasses more than just adverse employment actions." Since "Title VII makes unlawful any act of retaliation by an employer that might well dissuade a reasonable employee from making or supporting a charge of discrimination pursuant to Title VII," *Id.* at 1219 (citation omitted), the cases on which the District relies in its "adverse action" argument have been limited. *See Velikonja v. Gonzales,* 466 F.3d 122 (D.C. Cir. 2006) (referral of FBI agent to Office of Professional Responsibility is actionable under Title VII); *See also Passer v. American* Chemical Society, 935 F.2d 322, 331-332 (D.C. Cir. 1991) (cancellation of major public symposium in employee's honor could be an act of retaliation).

As long as defendants' actions "might well dissuade a reasonable employee from making or

---

[7] The District also cites *Taylor v FDIC*, 132 F.3d 753, 765 (D.C. Cir. 1997), but does not advise the Court that the portion of the Court of Appeals opinion cited was made in the context of a discussion of a claim arising under the RTC Whistleblower Act, 12 U.S.C. 1441a(q), an entirely different statute.

supporting a charge of discrimination pursuant to Title VII, they are actionable.[8] Nor are such claims subject to dismissal on summary judgment. *Czekalski v. Peters*, 476 F.3d 360, 368-369 (D.C. Cir. 2007) (dispute of material fact as to whether lateral transfer was an adverse employment action in discrimination case); *Kessler v. Westchester County Department of Social Services*, 461 F.3d 199 210-211 (2nd Cir. 2006) (reversing grant of summary judgment where, *inter alia*, there was a fact issue as to the definition of "adverse action" in a retaliation case where the lateral transfer could well have dissuaded reasonable employee in same position from complaining of discrimination).[9]

Because of the short periods of time involved, there is circumstantial evidence that the retaliatory actions were caused by Conyers Williams' exercise of her First Amendment rights. *Rochon v. Gonzales,* 438 F.3d at 1220, citing *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C. Cir. 1985).

---

[8] Although *Burlington Northern* and *Rochon* construe the retaliation provisions of Title VII, there is no reason to believe that the Court would interpret retaliation more narrowly under the First Amendment than under Title VII.

[9] The Whistleblower Protection Act takes a similar approach. "A supervisor shall not threaten to take or take a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order." D.C. Code §1-615.53.

WHEREFORE, plaintiff respectfully requests the Court deny Defendants' Motion to Dismiss,. where she has stated claims that defendants violated her rights under the First Amendment and the D.C. Whistleblower Act.  A draft Order is attached.

Respectfully submitted,

_____
John F. Karl, Jr. #292458
Karl & Tarone
900 17th Street, NW, Suite 1250
Washington, DC 20006
202.293.3200
202.429.1851 (fax)
Counsel for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHRISTINA CONYERS WILLIAMS** )<br>)<br>**Plaintiff,** )<br>)<br>) **C. A. NO. 06-2076 CKK**<br>**ROBERT JOHNSON, DAVID ANTHONY, and** )<br>**THE DISTRICT OF COLUMBIA** )<br>)<br>**Defendants.** )<br>) | |

**ORDER**

Upon consideration of Defendants' Motion to Dismiss and Memorandum of Points and Authorities in Support Thereof, Plaintiff's Opposition thereto, and the entire record herein,

ORDERED that Defendant's Motion to Dismiss should be, and hereby is, denied.

_____
Colleen Kollar-Kotelly
U.S. District Judge

cc:

John F. Karl, Jr.
Karl & Tarone
900 17th Street, NW
Suite 1250
Washington, DC 20006
Counsel for Plaintiff

Leah Brownlee Taylor., Esquire
Assistant Attorney General
6th Floor South
441 Fourth St., N.W.
Washington, D.C. 20002
Counsel for defendants