**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHRISTINA CONYERS WILLIAMS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **C. A. NO. 06-2076 CKK** |
| **ROBERT JOHNSON,  DAVID ANTHONY, and** | ) |
| **THE DISTRICT OF COLUMBIA,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

Defendants filed a renewed Motion to Dismiss that purports to seek dismissal of *all* claims brought by Ms. Conyers Williams, even after plaintiff filed an Amended Complaint.  As we show below, defendants' arguments lack merit, because Ms. Conyers Williams states a claim under the WhistleBlower Protection Act ("WPA") and the actions taken against her are sufficiently adverse to allege a violation of her First Amendment rights under the Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White,* --- U.S. ----, 126 S. Ct. 2405, 2409, 2415-2419 (2006). *Burlington Northern* establishes an objective test for determining whether a challenged action is retaliatory, *i.e.*, whether it "might well have dissuaded a reasonable worker from making or supporting a change of discrimination under Title VII." *Id.* at 2415.  The facts alleged in the complaint are sufficient to show that "adverse actions" taken against Ms. Conyers Williams are causally related to her exercise of her First Amendment rights.  Almost immediately after Ms. Conyers Williams engaged in activity protected under the First Amendment and the D.C. Whistleblower Protection Act, defendants began to take steps to terminate her employment.

The District also argues that Ms. Conyers Williams' First Amendment claims are no longer

viable in light of the Supreme Court's decision in *Garcetti v. Ceballos*, 126 S. Ct. 1951 (2006). The Court's decision in that case did not address the situation present here where a government employee gave truthful testimony at a legislative hearing and followed up with a private meeting with a member of the District of Columbia Council.

Further, defendants claim *Monell v. Dept of Soc. Serv. Of City of New York*, 436 U.S. 658, 665-695 (1978) supports their Motion to Dismiss Plaintiff's Amended Complaint. As we show below, this reliance is misplaced. Moreover, the District never addresses plaintiff's claims for injunctive relief, which are not subject to the restrictions of *Monell.*

Further, defendants never address the First Amendment claims brought by Ms. Conyers Williams against the individual defendants in their personal capacities. Notwithstanding defendants' failure to address these issues, the District seeks dismissal of the entire twenty-four page Amended Complaint.[1]

## BACKGROUND

Ms. Conyers Williams is exceptionally well-qualified for the position she held with the Addiction Prevention and Recovery Administration ("APRA") in the District of Columbia Department of Health ("DOH"). Ms. Conyers Williams is a graduate of Wayne State University in Detroit, Michigan with a Bachelor of Arts degree in Sociology. Ms. Conyers Williams holds a Master of Science degree in Health Science Administration from Central Michigan University and a second post-graduate degree, a Master of Public Health from Emory University. Amended Complaint ¶9.

---

[1]     The oversight is even more surprising in light of the fact that Ms. Conyers Williams raised these issues in her Opposition to the District's initial Motion to Dismiss.

Prior to beginning employment with the District of Columbia (" the District") on June 28, 2004, Ms. Conyers Williams was Executive Director for the National Tuberculosis Controllers Association, Inc. Ms. Conyers Williams was a Public Health Advisor for the National Center for Infectious Diseases/Division of Mycotic Diseases at the Center for Diseases Control and Prevention. Ms. Conyers Williams served in the United States Navy for three years and another three years in the Public Health Services Corps from which she was honorably discharged as a Lieutenant.   Ms. Conyers Williams has worked in the fields of public health and social work for her entire career. Amended Complaint ¶¶10, 11, 12.

The most recent official evaluation of Ms. Conyers Williams's performance in her  current job, signed by Mr. Johnson and dated November 15, 2005, rated Ms. Conyers Williams as "Exceeds Expectations," with a "significantly exceeds expectations" rank for professionalism, resource usage and managing people. Ms. Conyers Williams was ranked "exceeds expectations" for "integrity and trust" and for "teamwork." *See* Evaluation attached to Amended Complaint as Exhibit A.  Amended Complaint ¶13.

Defendants argue that Ms. Conyers Williams' testimony consisted of three statements.  These are the she informed the Council that: she was in charge of ACIS.  ACIS was intended to provide "on line" information about the experiences of clients at the detoxification unit at DC General Hospital. ACIS was to provide managers with information such as who the clients were, when they were admitted, how long they waited to be served, and what services they received.

Ms. Conyers Williams also testified about the type of information that could be retrieved by the system.  Specifically, Ms. Conyers Williams testified that the system had very limited abilities to provide useful information and the system could only provide demographic information, that is

the gender, age and ethnicity of the recipients of APRA's services. Since this data was of little importance to APRA, it is clear the contractor had failed. *See* First Amended Complaint at ¶41.

We submit that all present at the February 14, 2006 hearing understood this testimony to mean that the system was a failure, as of February 2006, because the District of Columbia had spent hundreds of thousands of dollars paying a contractor who was many months behind and had failed to deliver any meaningful data to APRA.

Ms. Conyers Williams' statement to the Council that the system could be up and running by November, 2006 is significant for several reasons. First, this statement, based on Ms. Conyers Williams' best information, was contrary to the statement made by Mr. Johnson ***in writing*** and submitted to the Council just prior to the hearing that the system would be up and running by June, 2006. Ms. Conyers Williams and the contractor previously informed Mr. Johnson that Phase 2 of the project would not be ready until November, 2006. But Mr. Johnson knowingly provided inaccurate information to Councilman Catania. First Amended Complaint at ¶35.[2]

At a "debriefing" held after Ms. Conyers Williams' public testimony, much of the discussion centered on whether APRA would be the target of a federal fraud investigation. At the "debriefing," Mr. Johnson blamed Ms. Conyers Williams for doing a poor job of answering Councilman Catania's questions because she made truthful statements. Ms. Conyers Williams disclosed to Councilman Catania that the ACIS contract was many months behind schedule and that APRA had little to show for the hundreds of thousands of dollars the District had already spent on the ACIS contract. Mr. Johnson was angry with Ms. Conyers Williams and he told her that her testimony made APRA look

---

[2]     The evidence will also show that the contractor, in fact, failed to meet the November, 2006 deadline, after Ms. Conyers Williams was removed from the contract.

like "crooks," and made it appear the agency was doing something wrong because she truthfully testified that Phase 2 of the ACIS project would not be ready until November, 2006. *See* Amended Complaint ¶¶46, 47.

Defendants overlook the fact that Ms. Conyers Williams advised Councilman Catania of the contractor's numerous failings. Ms. Conyers Williams also advised Councilman Catania at the private meeting that Mr. Johnson had begun harassing her because of her testimony about the status of the contract. Ms. Conyers Williams told Councilman Catania that Mr. Johnson turned mean and belligerent after her February, 2006 testimony. Ms. Conyers Williams told Councilman Catania that she did not believe that a written contract actually existed, because she had never seen the ACIS contract.[3] If the contract does not exist, a reasonable jury might find that defendants retaliated against Ms. Conyers Williams because she disclosed the existence of unlawful payments to a "contractor," who appeared to have no legitimate claim for those payments. *See generally* Complaint ¶¶ 59-100.

Ms. Conyers Williams shared with Councilman Catania her concerns about the limited ability of computer system because of the high turnover of the contractor's staff and the contractor's unwillingness to properly staff the contract. Plaintiff believes Mr. Johnson was informed that Ms. Conyers Williams met with Councilman Catania in March, 2006 to discuss her testimony about the ACIS contract, just before Councilman Catania started his investigation of APRA. *See generally* Complaint ¶¶ 54-57.

Almost immediately after she engaged in protected activity, defendants commenced their

---

[3]     Ms. Conyers Williams still has not seen the ACIS contract, despite repeated requests.

efforts to fire Ms. Conyers Williams by alleging she violated the D.C. Residency Preference Act.

When those efforts were rejected after an evidentiary hearing before the District of Columbia Office

of Personnel, defendants continued to try to find other ways to fire Ms. Conyers Williams, by

claiming she was an "at will" employee, and by also attempting to force Ms. Conyers Williams to

quit because of the escalating harassment.  Defendants moved Ms. Conyers Williams on several

occasions, removed most of her staff, and took away her most important duties.  Complaint ¶¶ 59-

100.

## ARGUMENT

### I.  Legal Standard for Motion to Dismiss

In appraising the sufficiency of the complaint, the court is required to "follow, of course, the

accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears

beyond doubt that the plaintiff can prove no set of facts  in support of his claim which would entitle

him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (footnote omitted).  The court is bound

to consider all well-pleaded facts as true, and to draw all reasonable inferences in favor of the

nonmovant. *Scheuer v. Rodes,* 416 U.S. 232, 236 (1974).

Contrary to the District's unsupported assertions, Ms. Conyers Williams is not required to

make a *prima facie* case in her Amended Complaint.  *Sparrow v. United Air Lines, Inc.,* 216 F.3d

1111, 1113, 1114-15 (D.C. Cir. 2000) (citations omitted) (Plaintiff, whether *pro se* or represented,

is not required to present a *prima facie* case in her pleadings or even match facts to every element

of a legal theory or allege all facts that must be eventually proved.)  Ms. Conyers Williams  "need

not plead law or match facts to every element of a legal theory." *Krieger v. Fadely,* 211 F.3d 134,

136 (D.C.  Cir. 2000) (citation  omitted).  Ms. Conyers Williams does not even need to "allege all

facts necessary to prove [her] claim." *Caribbean Broadcasting System, Ltd v. Cable & Wireless PLC,*

148 F.3d 1080, 1086 (D.C. Cir. 1998) (citation omitted).   The Amended Complaint need only

contain general allegations sufficient to give adequate notice of the alleged unlawful acts which form

the basis of plaintiff's claims and the grounds upon which it rests.  *Sinclair v. Kleindienst,* 711 F.2d

291, 293 (D.C. Cir.1983).

## II.  Allegations in the Amended Complaint

In Count I of the Amended Complaint, Ms. Conyers Williams repeated and incorporated by

reference the factual allegations contained in Paragraphs 1 through 97 and, in addition, alleged:

> 99.    When Ms. Williams testified before Council member Catania's Council Committee, and when she met with Mr. Catania to discuss contracting irregularities, Ms. Williams was speaking on matters of public interest and public concern when she testified and when she provided truthful information regarding government contract.

> 100.    Ms. Williams's interest as a citizen in speaking out on such matters of public concern serves the public interest because the subject was reporting waste, fraud, abuse of authority, violations of law, and threats to public health and safety.

> 101.    Ms. William's interest as a citizen in speaking out on such matters of public concern outweighs the interest, if any, of stifling public speech under the pretense that doing so allegedly promotes the efficiency of the public service.

> 102.    Ms. Williams's exercise of her First Amendment rights was a substantial or motivating factor in the adverse actions taken against her by defendants Johnson and Anthony, who would not have taken these adverse actions had Ms. Williams not engaged in activity protected under the First Amendment of the Constitution.

It is submitted that the Amended Complaint contains more than enough factual allegations

in support of her First Amendment violations to satisfy the law of the Circuit's standards on notice

pleading. *Hall v. Ford,* 856 F.2d 255, 258 (D.C. Cir.1988); *Tao v. Freah*, 27 F.3d 635, 638 (D.C. Cir. 1994).

In Count II, Ms. Conyers Williams repeated and incorporated by reference the allegations contained in Paragraphs 1 through 104, in the Amended Complaint and, in addition, alleged

> 106. When Ms. Williams provided truthful testimony at a public [hearing] before the D.C. Council and later provided information to D.C. Councilman Catania, Williams was making a "protected disclosure" under the D.C. Whistleblower statute, D.C. Code §1-615.52(a)(6). Williams reasonably believes this truthful testimony and information evidences "Gross mismanagement;" "Gross misuse or waste of public resources or funds;" "Abuse of authority in connection with the administration of a public program or the execution of a public contract;" and/or "A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature."

> 107. Defendants Johnson and Anthony took and/or threatened to take "prohibited personnel actions," as defined in the Whistleblower Act §1-615.52(a)(5), and otherwise retaliated against her because of Ms. Williams's protected activity. These actions included recommended, threatened, or actual termination, demotion, suspension, or reprimand; involuntary transfers, reassignments, or detail; retaliation in the manner described above.

> 108. The D.C. Whistleblower Act guarantees that District employees have the right to communicate freely and openly with the members of the Council. D.C. Code §1-615.58 and to disclose information that is illegal or unethical or that threatens public funds and public health and safety without fear of retaliation.

> 109. Ms. Williams's exercise of her whistleblower rights was a contributing factor in the adverse actions taken against her by defendants the District of Columbia and Robert Johnson and David Anthony. The District would not have taken these adverse actions against Ms. Williams had she not engaged in activity protected under the D.C. Whistleblower Act.

It is submitted that the Amended Complaint contains more than enough factual allegations

in support of her claims of retaliation under the Whistleblower Protection Act to satisfy the law of the Circuit's standards on notice pleading.   Where Ms. Conyers Williams filed a detailed twenty-four page Amended Complaint, she meets the standard for surviving a Motion to Dismiss.[4]

## IV.  First Amendment Claims

The District argues that Ms. Conyers Williams "testimony before the DC Council enjoys no First Amendment Protection."  Defendants' Memorandum at 7.  The District also argues Ms. Conyers Williams' meeting with Councilman Catania is not protected by the First Amendment. Defendants' Memorandum at 7.

The District also mischaracterizes issues raised in the March 7, 2006 meeting with Catania as "personal work place grievance regarding supervisor harassment."  Defendants' Memorandum at 8.  This statement misses the point and purpose of the meeting.  Although Ms. Conyers Williams advised Councilman Catania of the harassment, this was not the principal purpose of the meeting. The principal purpose of the meeting was to alert Councilman Catania fact that the District paid substantial sums of money to a contractor who did not perform and may not have even had a written contract with the District.  It is, of course, a matter of public interest that Mr. Johnson was retaliating

---

[4]      Ms. Conyers Williams is not required to plead facts supporting her allegations that her supervisors were aware of her meeting with Catania.  However, on information and belief plaintiff alleges the evidence will show that defendant Johnson and defendant Anthony both knew about Williams' meeting with Councilman Catania.  There is a circumstantial causal connection because  Councilman Catania began an investigation of APRA shortly thereafter.

In April, 2006, defendant Anthony stated that he was going to fire Ms. Conyers Williams, as she was not on good terms with her boss Robert Johnson because of her testimony before the D.C. Council.  Mr. Anthony further stated that defendant Johnson was unhappy and displeased about the things Williams said at a hearing before Councilman Catania.  Mr. Johnson said that Williams "talked too much" and revealed things to Councilman Catania that Mr. Johnson did not want disclosed.

against a District employee for her truthful testimony at the Councilman Catania's meeting several weeks earlier.  *Tao v. Freeh*, 27 F.3d at 639-640 ("an employee's speech aimed at resolving a personnel dispute may touch upon an issue of public concern."  "[W]e have no difficulty concluding that Tao has met her burden of showing that her complaint about racial discrimination was protected speech."

The District argues that the Supreme Court's 2006 decision in *Garcetti v. Ceballos*, 126 S. Ct. 1951 (2006) requires dismissal of Ms. Conyers Williams' First Amendment claims.  We submit that Ms. Conyers Williams did not relinquish her First Amendment right to "comment on matters of public interest."  *Thompson v. District of Columbia,* 428 F.3d 283, 285 (D.C. Cir. 2005) citing *Pickering v. Bd. of Educ., supra,* 391 U.S. at 568.

Garcetti alleged that he engaged in three types of activity protected under the First Amendment.  The only disclosure at issue in the Supreme Court's decision in *Garcetti* was the memo criticizing the accuracy of an affidavit written in the normal course of the work day and similar to memos written for every single case crossing the public employee's desk.  Writing the memo was a regular, standard, almost "ministerial" duty that was part of his routine duties and responsibilities.

The employee in *Garcetti* also discussed with other persons his allegations of misconduct by the deputy sheriff and he testified truthfully at a court hearing.  *Ceballos v. Garcetti*, 361 F.3d at 1168, 1171 (9th Cir 2004).  The  Supreme Court's decision did ***not*** address these actions. Since the court testimony was not reviewed by the Supreme Court, the Court did not hold that giving truthful testimony in court [or in a legislative hearing] was no longer protected by the First Amendment. Nothing in the Court's opinions suggests the acts of discussing allegations of misconduct and testifying truthfully at a court [or legislative] hearing were stripped of  their protected status under

the First Amendment. Accordingly, Ms. Conyers Williams's testimony before D.C. Councilman Catania and her report made in a private meeting to Catania retained their protected status under the First Amendment, provided they meet this Circuit's test in *Hall v. Ford,* 856 F.2d 255, 258 (D.C. Cir.1988).

Justice Kennedy, writing for the five Justice majority of the Court, noted that a citizen is necessarily required to give up some freedoms as part and parcel of working for the federal government. In analyzing the case, the Court first had to decide in what capacity Ceballos spoke. If he spoke in his capacity as a private citizen in regard to a matter of public concern, then the oft-cited case, *Pickering, supra,* protected his statements.

There is no dispute that: "A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." *Garcetti,* 126 S.Ct at 1958. Put another way, the Court held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 1960.

There should be no dispute that Ms. Conyers Williams's statement in a public forum such as the D.C. Council, which was not part of her regular, routine duties, continue to be protected by the First Amendment. Nothing in Court's decision would allow Mr. Johnson and Mr. Anthony to retaliate against Ms. Conyers Williams for giving truthful testimony to the D.C. Council or making truthful statements at a private meeting with Councilman Catania, where she clearly spoke as a private citizen. There is no support for the District's claim that the Supreme Court intended to deprive public employees of ***all*** protection under the First Amendment where the employee testifies

before a legislative body or meets privately with a legislator regarding a matter of public concern, where such actions are outside of the employee's job duties

As the *Garcetti* Court observed: "When an employee speaks as a citizen addressing a matter of public concern, the First Amendment requires a delicate balancing of the competing interests surrounding the speech and its consequences." *Id.* at 1961. Here, since the District has no legitimate interest in controlling speech made by its employees in order to prevent the D.C. Council from learning the truth about failure of APRA to supervise its contractors, the *Pickering* balancing test favors protecting that speech.[5] In fact, Ms. Conyers Williams furthered the District's [and the public's interest] in providing truthful testimony regarding the status of the contract.

"Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." *Kirby v. City of Elizabeth City,* 388 F.3d 440, 446 (4th Cir.2004). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147-148 (1983); *See Edwards v. City of Goldsboro,* 178 F.3d 231, 247 (4th Cir.1999) (explaining that whether a public employee's speech touches on a matter of public concern "rests on whether the public or the community is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a private matter between employer and employee") (internal quotation marks omitted).

Ms. Conyers Williams' statements to Councilman Williams certainly involved "a matter of

---

[5]    The dissent characterized this statement as the "majority's concession of some First Amendment protection when a public employee repeats statements made pursuant to his duties but in a separate, public forum or in a letter to a newspaper." *Id.* at 1965, n. 1 *citing ante,* at 1961.

public concern" when the people of the District of Columbia are interested in the failure of a contractor to provide the computer program necessary to monitor whether District residents with substance abuse problems are properly served by DC General Hospital, particularly where the contractor has received large sums of public money, and may not even have a properly executed written contract with the District. There can be little doubt that Ms. Conyers Williams spoke on a matter of public concern.

## IV.  Applicability of *Monell v. Dept of Soc. Serv. Of City of New York*

Defendants correctly note that municipal liability under 42 U.S.C §1983 *for monetary damages* is limited by *Monell v. Dept of Soc. Serv. Of City of New York*, 436 U.S. 658, 665-695 (1978).  "Under § 1983, a municipality is liable [ ] only for constitutional torts arising from 'action pursuant to official municipal policy.' " *Triplett v. District of Columbia,* 108 F.3d 1450, 1453 (D.C. Cir.1997) (quoting *Monell*) 436 U.S. at  691.   A person's actions may constitute official municipal policy if the person has " 'final policy making authority [under] state law.' " *Triplett*, 108 F.3d at 1453 (quoting *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989)).

In *Triplett,* a prisoner of the District of Columbia Department of Corrections sued the District of Columbia for injuries inflicted by two D.C. correctional officers. *Triplett,* 108 F.3d at 1451.  The Circuit Court found that one of the final policy-makers was the Director of the D.C. Dept of Corrections because he was responsible for "the general direction and supervision" of the Department. *Id.* at 1453 (quoting D.C.Code § 24-442 (1981)).

The District is liable for the wrongful actions at issue in this litigation because Robert Johnson who held the title of Senior Deputy Director of APRA was the highest ranking official in APRA and was a final policy-maker for the District of Columbia.  The Director of APRA is

responsible for the administration of APRA by exercising necessary and appropriate power; making personnel decisions; enforcing rules and regulations; and contracting on behalf of APRA.  *See Banks v. District of Columbia*, 377 F. Supp.2 d 85, 91 (D. D.C. 2005) (Director for Department of Mental Health to be a final policy-maker for the Department of Mental Health because she is responsible for the administration of the Dept. of Mental Health, including hiring and terminating personnel.) This case is like *Triplett,* because in the instant case the top official in APR is responsible for promulgating rules to run their respective agencies.  Since Mr. Johnson is the Head of APRA, he is a final policy-maker.  Amended Complaint ¶¶7, 13.  Thus, the District is liable under 42 U.S.C. § 1983 for Mr Johnson's and, arguably, Mr. Anthony's policy decisions.[6]  Thus, the District is an appropriate defendant in Ms. Conyers Williams claims for violations of the First Amendment.[7]

The District's assertion of the *Monell* defense is also inapplicable because Ms. Conyers Williams alleges sufficient facts to demonstrate policy and a pattern of wrongdoing by high-ranking officials in the Department of Health.  Defendants made continuing efforts to fire Ms. Conyers Williams and then demoted her by taking away her most important duties and responsibilities and depriving her of her staff.  In view of the pattern of harassment and retaliation directed toward  Ms. Conyers Williams, *Monell* is inapplicable to the facts alleged in the Amended Complaint because the facts alleged support the existence of an official policy directed against plaintiff.

In any event,  *Monell* limits municipal liability only for monetary damages and does not limit

---

[6]     Mr. Johnson's assistant, defendant David Anthony, who held the Title of Chief of Staff, was the "number 2" person is APRA.

[7]     The Amended Complaint does not allege liability for the individual defendants under the D.C. Whistleblower Act.   In light of U.S. District Judge Bates' decision in *Winder v. Erste*, C.A. No. 03-2623, 2005 WL 736639, (D.D.C. March 31, 2005) Mem. Op. at *8, and the absence of contrary authority, it appears that this is appropriate.

this Court's jurisdiction or ability to enter injunctive relief against the District to, *e.g.*, "Enjoin defendants from engaging in employment practices and procedures that operate to violate Ms. Conyers Williams's rights under the First Amendment and the D.C. Whistleblower Act." Amended Complaint, Prayer for Relief, ¶B.

Thus, even if *Monell* governs any issues in this litigation, this case does not limit the Court's ability to enjoin further interference with Ms. Conyers Williams' employment, such as the abolition of her job and threatening her with termination. *Ex Parte Young*. 209 U.S. 123 (1908); *Samuels v. District of Columbia,* 770 F.2d 184, 192, n.3 (D.C. Cir. 1985) (applying *Young* to official-capacity suits against municipal officers for injunctive relief under §1983); *Paxman v. Campbell*, 612 F.2d 848, 859-860 (4th Cir. 1980) (*en banc*) .

### V.  "Adverse Action" Requirement

Defendants assert that Ms. Conyers-Williams failed to plead a "adverse action" causally related to the alleged exercise of her First Amendment rights." Defendants' Memorandum at 10. In support of this argument defendants cite *Brown v. Brody*, 199 F.3d 336 (D.C. Cir. 1999), that discusses adverse action under Title VII. Defendants' Memorandum at 10.

The District asserts that Ms. Conyers Williams' complaints of "strained workplace relations are simply not substantive enough constitute an actionable injury under the First Amendment." Defendants' Memorandum at 10. This argument is followed by the following citation "*Cf. Tao v. Freeh,* 27 F.3d 635, 639 (D.C. Cir. 1994). Review of *Tao* demonstrates that imposing a "more burdensome promotion requirement is an actionable injury under the First Amendment."[8] Thus, *Tao*

_____

[8]      The District also cites *Taylor v FDIC*, 132 F.3d 753, 765 (D.C. Cir. 1997), but does not advise the Court that the portion of the Court of Appeals opinion cited was made in the context of a  discussion of a claim arising under an entirely different statute, the RTC

does not assist the District.

Morever, in *Burlington Northern*, decided last year, the Supreme Court stated:

> The scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm. We therefore reject the standards applied in the Courts of Appeals that have treated the anti-retaliation provision as forbidding the same conduct prohibited by the anti-discrimination provision and that have limited actionable retaliation to so-called "ultimate employment decisions." See *supra,* at 2410.

*Id*. at 2414.

Since the Supreme Court adopted the standard articulated by this Circuit's decision in *Rochon v. Gonzales,* 438 F.3d 1211, 1217 (D.C. Cir. 2006), "the concept of retaliation encompasses more than just adverse employment actions." Since "Title VII makes unlawful any act of retaliation by an employer that might well dissuade a reasonable employee from making or supporting a charge of discrimination pursuant to Title VII," *Id.* at 1219 (citation omitted), the cases on which the District relies in its "adverse action" argument have been limited. As long as defendants' actions "might well dissuade a reasonable employee from making or supporting a charge of discrimination pursuant to Title VII, they are actionable. *See also Passer v. American* Chemical Society, 935 F.2d 322, 331-332 (D.C. Cir. 1991) (cancellation of major public symposium in employee's honor could be an act of retaliation). Although *Burlington Northern* and *Rochon* construe the retaliation provisions of Title VII, there is no reason to believe that the Court would interpret retaliation more narrowly under the First Amendment than under Title VII.

Ms. Conyers Williams specifically alleged economic loss:

> 98. APRA has failed and refusal to give Ms. Conyers

---

Whistleblower Act, 12 U.S.C. §1441a(q).

Williams a performance evaluation for 2006. As a result of defendants' failure and refusal to give Ms. Conyers Williams a performance evaluation for 2006, Ms. Conyers Williams is not eligible for and has not received the merit pay increase that her job performance deserves.

Under the law of the Circuit, plaintiff states a claim where for retaliation where she alleges economic loss resulting from the agency's actions. *Velikonja v. Gonzales,* 466 F.3d 122, 124 (D.C. Cir. 2006) (referral of FBI agent to Office of Professional Responsibility is actionable under Title VII).

Similarly, defendants constructively demoted Ms. Conyers Williams because of the escalating harassment. Defendants moved Ms. Conyers Williams on several occasions, removed most of her staff, and took away her most important duties and responsibilities. Amended Complaint ¶¶75, 77, 95-99. *Czekalski v. Peters*, 476 F.3d 360, 368-369 (D.C. Cir. 2007) (dispute of material fact as to whether lateral transfer was an adverse employment action in discrimination case); *Kessler v. Westchester County Department of Social Services*, 461 F.3d 199 210-211 (2nd Cir. 2006) (reversing grant of summary judgment where, *inter alia*, there was a fact issue as to the definition of "adverse action" in a retaliation case where the lateral transfer could well have dissuaded reasonable employee in same position from complaining of discrimination).[9]

Because of the short periods of time involved, there is circumstantial evidence that the retaliatory actions were caused by Ms. Conyers Williams' exercise of her First Amendment rights. *Rochon v. Gonzales,* 438 F.3d at 1220, citing *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C. Cir. 1985).

Ms. Conyers Williams has alleged sufficient facts to show that the retaliation against her

---

[9] The Whistleblower Protection Act takes a similar approach. "A supervisor shall not threaten to take or take a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order." D.C. Code §1-615.53.

began immediately after her testimony before Councilman Catania and that the retaliation escalated

after she met privately with Councilman Catania.  The acts of retaliation continued for the next year

as defendants took numerous actions against Ms. Conyers Williams.  Where defendants' acts of

retaliation never ceased during the year following her testimony to Councilman Catania, the mere

passage of time does not the inference of discrimination that arises from the temporal proximity

between the protected activity and the first acts of retaliation.  *Beckwith v. City of Daytona Beach*

*Shores,* 58 F.3d 1554, 1556 (11th Cir. 1995)  (citation omitted) (rejecting *per se* rule making the

passage of time sufficient to defeat retaliatory discharge claims as a matter of law because this would

give employers "a fail-safe recipe" for avoiding retaliation claims); *Robinson v. SEPTA*, 982 F.2d

892, 895 (3rd Cir. 1993) (considering "intervening pattern of antagonism")  (citation omitted)

A reasonable jury could find that defendants manufactured false claims that Ms. Conyers

Wiliams violated the D.C. Residency Preference Act and expected these efforts would succeed.

Amended Complaint ¶¶59-68.  When the D.C. Office of Personnel rejected those charges against

Ms. Conyers Williams,  defendants escalated their efforts to harass plaintiff and to procure her

termination by other means.  Amended Complaint ¶¶70-105.  Those efforts continue to the present

as the District refuses to give Ms. Conyers Williams a performance evaluation that is required to

obtain and has not received the merit pay increase that her job performance deserves.  Amended

Complaint ¶ 98.  And the District abolished plaintiff's job.  Amended Complaint ¶ 100

### III.  Whistleblower Protection Act

The District of Columbia set forth detailed "Findings and Declaration of Purpose" in passing

the Whistleblower statute:  "The Council finds and declares that the public interest is served when

employees of the District government are free to report waste, fraud, abuse of authority, violations

of law, or threats to public health or safety without fear of retaliation or reprisal." D.C. Code §1-615.51

Accordingly, the D.C. Council passed the statute to:

(1) Enhance the rights of District employees to challenge the actions or failures of their agencies and to express their views without fear of retaliation through appropriate channels within the agency, complete and frank responses to Council inquiries, free access to law enforcement officials, oversight agencies of both the executive and legislative branches of government, and appropriate communication with the public;

(2) Ensure that acts of the Council enacted to protect individual citizens are properly enforced;

(3) Provide new rights and remedies to guarantee and ensure that public offices are truly public trusts;

(4) Hold public employees personally accountable for failure to enforce the laws and for negligence in the performance of their public duties;

(5) Ensure that rights of employees to expose corruption, dishonesty, incompetence, or administrative failure are protected;

(6) Guarantee the rights of employees to contact and communicate with the Council and be protected in that exercise;

(7) Protect employees from reprisal or retaliation for the performance of their duties; and

(8) Motivate employees to do their duties justly and efficiently.

D.C. Code §1-615.51. Defendants' argument would eviscerate the purposes of the Whistleblower Act.

The Council defined "protected disclosure" means any disclosure of information, not specifically prohibited by statute, by an employee to a supervisor or a public body that the employee reasonably believes evidences: "Gross mismanagement," "Gross misuse or waste of public resources or funds, Abuse of authority in connection with the administration of a public program or the

execution of a public contract, A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature;  or "A substantial and specific danger to the public health and safety."

Ms. Conyers Williams' statements to Councilman Catania during the Council's oversight hearings and in the private March 7, 2006 meeting are protected disclosures because they evidence gross mismanagement,  and gross misuse or waste of public resources or funds because a contractor was paid over $900,000 for a contract that was both months behind schedule and failed to meet even the minimal requirements of the contract.  Ms. Conyers Williams' statements to Councilman Catania are "protected disclosures" because they suggest an abuse of authority in connection with the administration of a public program or the execution of a public contract because there is evidence to suggest that substantial sums were paid to a contractor who did not perform and who may not have even had a contract.  This would also constitute a  violation of a federal, state, or local law, rule, or regulation and/or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature.  Ms. Conyers Williams' statements also constitute  "protected disclosures" because the disclosure of this information is about a "substantial and specific danger to the public health and safety" because the information the contract was supposed to track and provide in a useful form was intended to assist APRA in reducing the amount of drugs used in the District and assisting the rehabilitation of those seeking APRA's services.  Delays in completing the contract adversely impacted APRA's ability to protect the public

health and safety by making its programs to prevent drug abuse more effective.[10]

The District argues that "no reasonable person could believe that Ms. Conyers Williams' statements to the Council evidence gross mismanagement, gross misuse or waste of public resources, fraud or any violation of the law." This argument is incorrect as the inferences drawn in Ms. Conyers Williams' favor from the facts alleged in the Amended Complaint demonstrate she reasonably believe her speech dealt with a protected subject and that she engaged in disclosures protected under the Whistleblower Act because she disclosed major failures in the ACIS contract.[11]

The District seeks to trivialize Ms. Conyers Williams by asserting that her testimony was short and concise and lasted ten minutes. Defendants' Memorandum at 11. The District misses the point because Ms. Conyers Williams introduced herself as the person with knowledge of the status of the contract and she disclosed the system could retrieve only demographic data. That meant the system was a failure and that there was little to show for an enormous public expenditure. *See* Amended Complaint ¶¶40-43, 47. Ms. Conyers Williams testimony that ACIS would be up and running by November meant constituted a protected disclosure that Mr. Johnson's statement to the Council that ACIS would be ready by July, 2006 lacked a factual foundation in reality.

Similarly, Ms. Conyers Williams' statement to the Councilman Catania at the private meeting

---

[10]     The Whistleblower Act, unlike the First Amendment, does not require the Court to balance the employee's free-speech interests against any government interests that might support restrictions on the employee's speech. D.C. Code §§ 1-615.52(a), 1.615.54. In fact, nothing in the statute even permits such a balancing process.

[11]     Plaintiff's First Amended Complaint also supplements her claims of retaliatory actions taken against her because APRA continues to retaliate against her. On March 15, 2007, Linda Fisher, the current acting Head of APRA, advised Ms. Conyers Williams that her position was being abolished, even though APRA continues to need to have performed the duties previously performed by Ms. Conyers Williams. Amended Complaint ¶100.

Page 21 of 22

that she did not have a copy of the contract was a protected disclosure because Ms. Conyers Williams should have had a copy of the contract to perform her duties. Defendants' failure or refusal to give her a copy of the contract strongly suggests that the contract did not exist. Since a reasonable jury could find that Defendants were giving the contractor hundreds of thousands of dollars without a contract, this is evidence of gross mismanagement, gross misuse and waste of public resources. If these payments in the absence of a written contract, a reasonable jury could find fraud and other violations of the law. *See* Amended Complaint ¶¶22-24, 48, 55, and 91.

WHEREFORE, plaintiff respectfully requests the Court deny Defendants' Motion to Dismiss, where she has stated viable claims that defendants violated her rights under the First Amendment and the D.C. Whistleblower Act. A draft Order is attached.

Respectfully submitted,

_____
John F. Karl, Jr. #292458
Karl & Tarone
900 17th Street, NW, Suite 1250
Washington, DC 20006
202.293.3200
202.429.1851 (fax)
Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHRISTINA CONYERS WILLIAMS** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **C. A. NO. 06-2076 CKK** |
| **ROBERT JOHNSON,  DAVID ANTHONY, and** | ) |
| **THE DISTRICT OF COLUMBIA** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**ORDER**

Upon consideration of Defendants' Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Points and Authorities in Support Thereof, Plaintiff's Opposition thereto, and the entire record herein, it is this ___ day of May, 2007, hereby

ORDERED that Defendant's Motion to Dismiss Plaintiff's Amended Complaint  should be, and hereby is, denied.

_____
Colleen Kollar-Kotelly
U.S. District Judge

cc:

John F. Karl, Jr.
Karl & Tarone
900 17th Street, NW
Suite 1250
Washington, DC 20006
Counsel for Plaintiff

Leah Brownlee Taylor., Esquire
Assistant Attorney General
6th Floor South
441 Fourth St., N.W.
Washington, D.C. 20002
Counsel for defendants