# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHRISTINA CONYERS WILLIAMS

    Plaintiff,

    v.

ROBERT JOHNSON, *et al.*

    Defendants.

Civil Action No. 06-2076 (CKK)

## MEMORANDUM OPINION
(February 18, 2009)

Plaintiff, Christina Conyers Williams, filed the instant lawsuit against the District of Columbia (the "District"), and her supervisors Robert Johnson, individually and as Senior Deputy Director of the Addiction Prevention and Recovery Administration ("APRA") of the District of Columbia Department of Health ("DOH"), and David Anthony, individually and as Chief of Staff to the Senior Deputy Director of APRA (collectively "Defendants"). Plaintiff alleges that Defendants violated her rights under the First Amendment and the District of Columbia Whistleblower Protection Act ("WPA"), 1-615.01 *et seq.*, by retaliating against her for her remarks made during testimony before the District of Columbia Council's ("D.C. Council") Committee on Health, which is chaired by D.C. Councilmember David A Catania, and during a separate meeting with Councilmember Catania and two of his aides, including Tori F. Whitney.

In the course of discovery in this matter, Plaintiff served both Councilmember Catania and Whitney with a subpoena to compel testimony and the production of documents. Councilmember Catania and Whitney subsequently moved to quash Plaintiff's subpoenas. Upon a searching review of Councilmember Catania's and Whitney's motion to quash, Plaintiff's

Oppositions, and Councilmember Catania's and Whitney's replies, as well as the relevant

statutes and case law, the Court orally GRANTED Councilmember Catania's and Whitney's [45]

motion to quash at the February 13, 2009 status hearing in this matter.  In addition, Plaintiff's

[58] Cross-Motion to Compel Whitney's Deposition[1] was DENIED WITH PREJUDICE to the

extent it seeks to compel testimony and/or the production of documents as concerns Whitney in

her official capacity as Councilmember Catania's former legislative aide, but DENIED

WITHOUT PREJUDICE to the extent it seeks to compel testimony and/or the production of

documents as concerns Whitney in her individual capacity.  Specifically, the Court concluded

that, to the extent Plaintiff seeks to depose either Councilmember Catania or Whitney and/or to

compel the production of documents relating to the D.C. Council's alleged investigation of

APRA, the District's Speech or Debate statute affords both Councilmember Catania and Whitney

absolute legislative immunity.

## I.  BACKGROUND

The Court shall assume familiarity with its March 14, 2008 Memorandum Opinion,

which set forth in detail the factual background of this case, and shall therefore only briefly

address such facts as are necessary for resolution of the motions currently before the Court.  *See*

*Williams v. Johnson*, 537 F. Supp. 2d 141 (D.D.C. 2008) (CKK).

A.      *Plaintiff's Employment and the ACIS Contract*

Plaintiff, Christina Conyers Williams, was hired by the APRA in June 2004, and in

February 2006 held the position of Chief of the Center of Research Evaluation and Grants

---

[1]The Court notes that Plaintiff did not file a Cross-Motion to Compel as to
Councilmember Catania.

("CREG").  Am. Compl. ¶ 5.[2]  Defendant Robert Johnson served as Plaintiff's immediate

supervisor, and Defendant David Anthony was Mr. Johnson's assistant and Chief of Staff.  *Id.* ¶¶

7-8.

In April 2005, Plaintiff was assigned the task of implementing APRA's Client

Information System ("ACIS") software, which was purchased from Softscape, Inc. ("Softscape"),

and designed to capture statistical data regarding APRA's clients, providers, and local

contractors.  *Id.* ¶ 18.  Although the software had been scheduled to go on line in February or

March 2005, little work had been done to that end when Plaintiff was assigned to implement the

software.  *Id.* ¶ 20.  Getting ACIS on line became Plaintiff's primary job responsibility.  *Id.* ¶ 17.

Plaintiff alleges that upon assuming responsibility for the ACIS project and throughout 2006, she

repeatedly requested a copy of the Softscape contract from Pamela Shaw, the employee

previously responsible for it, as well as from Mr. Johnson.  *Id.* ¶¶ 19, 22-24.  According to

Plaintiff, her requests were denied, and as a result she "has not received a precise explanation of

what tasks Softscape is required to perform under the terms of the contract and how much

Softscape is entitled to be paid for services it performs."  *Id.* ¶¶ 23-24.

Phase 1.0 of ACIS was intended to provide information about the experiences of clients

at the detoxification unit at D.C. General Hospital.  *Id.* ¶ 25.  According to Plaintiff, Phase 1.0

went on line in June 2005, but did not work very well.  *Id.* ¶ 26.  Plaintiff therefore sought

---

[2] It is unclear from Plaintiff's First Amended Complaint ("Am. Compl.") whether she is
still employed by APRA.  *See* Am. Compl. ¶ 100 (identifying another individual as the "Interim
Deputy Director of APRA" as of March 2007, and alleging that Plaintiff was advised that her
position was being abolished effective April 1, 2007).  The pleadings now before the Court,
however, confirm that Plaintiff no longer works for APRA.  *See* Whitney's Reply In Support of
Motion to Quash, Docket No. [60], ("Whitney's Reply"), Ex. A (Whitney Aff.) ¶ 4).

technical help from Softscape, which delayed responding, and then refused to do any work on

ACIS until it was paid $175,000 cash in hand.  *Id.* ¶¶ 26-27.  Phase 2.0 of ACIS was scheduled to

begin in November 2005, and provide information about six APRA programs not included in

Phase 1.0, while Phase 3.0 was scheduled to begin in February 2006 and provide information

about outside service contractors.  *Id.* ¶ 29.  According to Plaintiff, by the middle of September

2005, it was obvious that Phase 2.0 of ACIS would not be on line by November 2005, and in

fact, Phase 2.0 had not even begun by February 2006.  *Id.* ¶ 30.

> B.     *February 14, 2006 D.C. Council Meeting*

On February 14, 2006, the D.C. Council Committee on Health, headed by

Councilmember Catania, held a routine oversight hearing.  *Id.* ¶ 33.  In the course of the hearing,

Councilmember Catania directed several questions about ACIS to Plaintiff.  *Id.* ¶¶ 37-38.

According to Plaintiff, her testimony at the hearing lasted 10 minutes, during which time she

testified that: (1) she was responsible for the implementation of ACIS; (2) as of the hearing,

ACIS could only provide demographic information; and (3) ACIS would be up and running by

November 2006.  *Id.* ¶¶ 39, 40-42.  Plaintiff alleges that her brief testimony was significant

because her "disclosure that ACIS could provide only demographic data was a statement that

ACIS was a major failure," because "notwithstanding all of the money spent by [the] District on

ACIS, the software could not track such crucial information such as education or continuing use

of drugs, which was one of the primary goals of the contract."  *Id.* ¶ 41.  Plaintiff further alleges

that her testimony that ACIS would be operative by November 2006 "was another statement of

major failure by the contractor that contradicted [a] written statement [previously] submitted to

the Council by Mr. Johnson."  *Id.* ¶ 42.  Indeed, according to Plaintiff, following her testimony,

Mr. Catania "*sua sponte* . . . raised the issue whether some kind of fraud had taken place within APRA because of the large amount of money involved." *Id.* ¶ 43.

      C.     *Plaintiff's Private Meeting With Councilmember Catania*

      On March 8, 2006, Plaintiff and her husband met "privately" for an hour with Councilmember Catania and two of his aides[3] "to discuss the Softscape contract and Mr. Johnson's harassment of [Plaintiff] following her testimony before the Council." *Id.* ¶ 54. According to Plaintiff, Councilmember Catania told Plaintiff and her husband that he had tried to get a copy of the ACIS contract and had not been provided with one. *Id.* ¶ 55.  Plaintiff responded that she did not have a copy of the contract either and had doubts whether the contract actually existed. *Id.*  Plaintiff asserts that, as a result of the information she provided, "[Councilmember] Catania instructed his staff to launch an investigation into the Softscape contract." *Id.* ¶ 56.  That investigation began in the middle of March 2006 and Plaintiff alleges, on information and belief, that at that time "Mr. Johnson became aware that [Plaintiff] met with Councilmember Catania and he concluded that Councilmember Catania started the investigation because of [Plaintiff's] testimony before the Council and her statements to him during their private meeting in mid-March, 2006." *Id.* ¶ 57.

---

      [3]Although Plaintiff's Amended Complaint does not identify the two aides that attended the meeting, it appears from the pleadings now before the Court that Whitney was one of the aides in attendance at the private meeting between Plaintiff and Councilmember Catania.  *See* Whitney's Reply, Ex. A (Whitney Aff.) ¶ 9) (acknowledging attendance at the March 8, 2006 meeting between Plaintiff and Councilmember Catania in her official capacity as Deputy Committee Clerk and Policy Direct for the Council's Committee on Health).  Whitney has since left her position with the D.C. Council, and, as of June 25, 2007, now serves as the Senior Deputy Director of APRA.  *See id.* ¶¶ 1-3.

D.       *Procedural History*

Plaintiff subsequently filed the above-captioned lawsuit on December 4, 2006, alleging

that Defendants violated her rights under the First Amendment and the District of Columbia

Whistleblower Protection Act ("WPA"), 1-615.01 *et seq.*, by retaliating against her for her

remarks during the February 14, 2006 Council hearing and during the March 8, 2006 meeting

with Councilmember Catania and his aides.[4]

On December 22, 2008, Plaintiff served Councilmember Catania with a subpoena,

demanding that he appear for a deposition and produce the following categories of documents:

1.       Any and all documents reflecting communications with Christine Conyers
         Williams and/or Robert Williams.

2.       Any and all documents reflecting communications with Robert Johnson.

3.       Any and all documents reflecting communications with David Anthony.

4.       Any and all documents relating to or reflecting communications about APRA's
         contract or business dealings with Softscrape, Inc.

5.       Any and all documents relating to APRA's Client Information System ("ACIS").

*See* Motion of Councilmember David Catania to Quash Subpoena ("Mot. to Quash"), Ex. A

(Copy of Plaintiff's Subpoena to Councilmember Catania).  Councilmember Catania

---

[4]Defendants moved to dismiss Plaintiff's Amended Complaint, which the Court granted-in-part and denied-in-part in an order and accompanying memorandum opinion dated March 14, 2008.  *See Williams v. Johnson*, 537 F. Supp. 2d 141 (D.D.C. 2008) (CKK).  Specifically, the Court dismissed Plaintiff's First Amendment claim to the extent it relies on her testimony before the D.C. Council and Plaintiff's WPA claim as against Defendants Johnson and Anthony in their individual capacity.  *See id.* at 156.  Accordingly, Plaintiff's remaining claims include: (1) Plaintiff's First Amendment claim to the extent it relies on her private meeting with Councilmember Catania as against the District and Defendants Johnson and Anthony, both in their individual and official capacity; and (2) Plaintiff's WPA claim as against the District and Defendants Johnson and Anthony in their official capacity only.  *See id.*

subsequently filed a [45] Motion to Quash Subpoena, arguing that he has absolute legislative immunity pursuant to the District's Speech or Debate statute, D.C. Code § 1-301.42.

On January 22, 2009, Plaintiff served Whitney[5] with an identical subpoena, demanding that she appear for a deposition and produce the same categories of documents as listed in Plaintiff's subpoena *duces tecum* to Councilmember Catania. Whitney, through counsel for the District, thereafter filed an unopposed motion to join Councilmember Catania's Motion to Quash, asserting that the District's Debate and Speech Clause's provision of legislative immunity applied equally to Whitney in her role as an aide to Councilmember Catania. *See* Motion to Join Councilmember Catania's Motion to Quash on Behalf of Tori Whitney, Docket No. [49]. By Order dated January 30, 2009, this Court granted Whitney's request to join Councilmember Catania's Motion to Quash, but, as briefing on the Motion to Quash had largely been completed, the Court required both Plaintiff and the District to file a separate opposition and reply specific to Whitney. *See* Pl.'s Opp'n (Catania), Docket No. [47]; Pl.'s Opp'n (Whitney), Docket No. [55]; Catania Reply, Docket No. [57]; Whitney Reply, Docket No. [60]. In addition, Plaintiff filed a Response to Whitney's Reply, Docket No. [64]. Briefing on the Motion to Quash, as to both Councilmember Catania and Whitney, is now complete, and the Court therefore turns to the substance of the pending motions.

## II.  DISCUSSION

Both Councilmember Catania and Whitney have moved to quash on the grounds that they

---

[5]As a current employee of the D.C. Government at the time she was served with the subpoena in this case, Whitney authorized the District to accept service of the subpoena on her behalf as well as to request to join Councilmember Catania's motion to quash on her behalf. *See* Whitney's Supplemental Notice, Docket No. [51] at 1.

each have absolute legislative immunity pursuant to the District's Speech or Debate statute.  This

statute provides that, '[f]or any speech or debate made in the course of their legislative duties, the

members of the Council shall not be questioned in any other place."  D.C. Code  § 1-301.42.

"Legislative duties" are defined by the D.C. Code as:

> [T]he responsibilities of each member of the Council in the exercise of such
> member's functions as a legislative representative, including but not limited to:
> Everything said, written or done during legislative sessions, meetings, or
> investigations of the Council or any committee of the Council, and everything
> said, written, or done in the process of drafting and publishing legislation and
> legislative reports.

*Id.* § 1-301.41(b).  As has been repeatedly observed, "[t]he legislative history and the case law

interpreting this statute make clear that it is modeled on the Speech or Debate Clause of the

United States Constitution."  *Dominion Cogen, D.C., Inc. v. District of Columbia*, 878 F. Supp.

258, 261 (D.D.C. 1995); *see also Gross v. Winter*, 876 F.2d 165 (D.C. Cir. 1989) (same);

*Alliance for Global Justice v. District of Columbia*, 437 F. Supp. 2d 32, 35 (D.D.C. 2006);

*Chang v. United States,* 512 F. Supp. 2d 62, 65 (D.D.C. 2007); *Dorsey v. District of Columbia*,

917 A.2d 639 (D.C. 2007) (same).  In construing and applying the District's Speech or Debate

statute, courts have therefore consistently turned to and relied upon precedent interpreting its

analogous federal counterpart.  *See Alliance for Global Justice*, 437 F. Supp. 2d at 35 ("case law

interpreting the Speech [or] Debate Clause is pertinent to construing the District's analogous

statute"); *see also Gross*, 876 F.2d at 172; *Dominion Cogen*, 878 F. Supp. at 261-264; *Chang*,

512 F. Supp. 2d at 64-66; *Dorsey*, 917 A.2d at 642-43.[6]

---

[6]Plaintiff argues throughout her Opposition to Councilmember Catania's Motion to
Quash that, in construing the District's Speech or Debate statute, the Court should not rely on
federal case law interpreting the federal Speech or Debate Clause because the two provisions are
not coterminous.  *See generally* Pl.'s Opp'n (Catania) at 7.  Plaintiff thus urges the Court to find

"The primary purposes of the Speech [or] Debate Clause's legislative immunity is to insure the independent performance of the legislative function and to preserve the separation of powers." *Alliance for Global Justice*, 437 F. Supp. 2d at 35.  Accordingly, the District's Speech or Debate statute, as with the Speech or Debate Clause of the United States Constitution upon which it was modeled, "was intended to be interpreted liberally so as to protect 'genuine legislative functions.'" *Dominion Cogen*, 878 F. Supp. at 261 (quoting *Gross*, 876 F.2d at 174); *see also Eastland v. U.S. Serviceman Fund,* 421 U.S. 491, 502 (1975) ("Without exception, our cases have read the Speech or Debate Clause broadly to effectuate its purposes."); *Jewish War Veterans v. Gates*, 506 F. Supp. 2d 30, 52 (D.D.C. 2007) ("The Court's cases 'indicate that the legislative privilege will be read broadly to effectuate its purposes. . . .'").  The "broad" reading given to the Speech or Debate Clause, however, is not boundless.  *Jewish War Veterans*, 506 F. Supp. 2d at 53.  Rather, it confers on members of the legislature immunity for only those "actions within the legislative sphere." *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995).

Accordingly, "in determining whether legislative immunity applies, the critical question is whether the action at issue was undertaken within the 'legislative sphere.'"  *Alliance for Global Justice*, 437 F. Supp. 2d at 36.  The Clause "obviously covers core legislative acts—'how [a Member] spoke, how he debated, how he voted, or anything he did in the chamber or in

---

that the District's Speech or Debate statute affords a lesser degree of legislative immunity than its federal counterpart. *See id.* at 7-8.  Plaintiff, however, presents no legal authority in support of this argument and does not identify any reason why the District's Speech or Debate statute should be read in a more limited manner than its federal counterpart. *See generally id.* Accordingly, the Court rejects Plaintiff's argument and, consistent with the case law in this Circuit, relies, where appropriate, on federal authority interpreting both the District's Speech or Debate statute and its federal counterpart.

committee.'" *Fields v. Off. of Eddie Bernice Johnson*, 459 F.3d 1, 9 (D.C. Cir. 2006) (quoting

*United States v. Brewster*, 408 U.S. 501, 515 (1972)).  In addition, the Supreme Court has held

that the Clause also protects "legislative acts" that are "an integral part of the deliberative and

communicative processes by which Members participate in committee and [legislative]

proceedings with respect to the consideration and passage or rejection of proposed legislation or

with respect to other matters" within their jurisdiction.  *Gravel v. United States*, 408 U.S. 606,

625 (1972).  To that end, the D.C. Circuit has provided a non-exhaustive list of legislative acts

protected by the Speech or Debate Clause, including at the least:  "delivering an opinion, uttering

a speech, or haranguing in debate; proposing legislation; voting on legislation; making,

publishing, presenting, and using legislative reports; authorizing investigations and issuing

subpoenas; holding hearings; and introducing material at Committee hearings."  *Fields*, 459 F.3d

at 10-11 (internal citations, quotation marks, and footnotes omitted).

      In addition, as is specifically relevant here, legislative investigations—both formal and

informal—have been held to be protected by the Speech or Debate Clause.  As to formal

legislative investigations, the Supreme Court has explicitly recognized that "[t]he power to

investigate . . . plainly falls within" the legislative sphere.  *Eastland*, 421 U.S. at 504 ("This

Court has often noted that the power to investigate is inherent in the power to make laws because

'[a] legislative body cannot legislate wisely or effectively in the absence of information

respecting the conditions which the legislation is intended to affect or change.'") (quoting

*McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)); *see also* D.C. Code § 1-301.41 (defining

"legislative duties" to include, *inter alia*, "[e]verything said, written or done during . . . meetings,

or investigations of the Council or any committee of the Council").  A legislature's efforts to

acquire information during formal committee investigations or through the issuance of subpoenas thus clearly constitute "legislative acts" covered by the Speech or Debate Clause.  421 U.S. at 504; *see also Jewish War Veterans,* 506 F. Supp. 2d at 54.  The question of whether *informal* investigations and information-gathering is equally covered, however, is less clear.  Although neither party has raised this issue, the Court notes that the Supreme Court has never directly addressed whether the Clause covers informal, as well as formal, information gathering by a legislator, and lower courts are divided on the question.  *See Jewish War Veterans*, 506 F. Supp. 2d at 54.  The Court, however, agrees with the well-reasoned decision by Judge John D. Bates in *Jewish War Veterans* in which Judge Bates concluded that investigation and information gathering by a legislator—whether formally or informally conducted—is protected by the Speech or Debate Clause "so long as the information is acquired in connection with or in aid of an activity that qualified as 'legislative' in nature."  506 F. Supp. 2d at 57.  That is, the Court is persuaded that, regardless of whether conducted formally or informally, "the acquiring of information [is] an activity that is a 'necessary concomitant of legislative conduct and thus should be within the ambit of the privilege so that [legislators] are able to discharge their duties properly.'"  *Dominion Cogen*, 878 F. Supp. 2d at 263; *see also Alliance for Global Justice*, 437 F. Supp. 2d at 36.

Nonetheless, the Supreme Court's decision have made clear that not all conduct relating to the legislative process is protected under by the Speech or Debate Clause.  *Jewish War Veterans*, 506 F. Supp. 2d at 53 (citing *Brewster*, 408 U.S. at 515).  For example, the Supreme Court has recognized that certain activities that are "political in nature rather than legislative" and are therefore not covered by the Speech or Debate Clause, such as: "legitimate 'errands'

-11-

performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called 'news letters' to constituents, news releases, and speeches delivered outside the Congress." *Brewster*, 408 U.S. at 512.  "Although these activities are important and might even 'be integral to a Member's legislative goals,' they are nonetheless considered 'political' and thus beyond the coverage of the Speech or Debate Clause." *Jewish War Veterans*, 506 F. Supp. 2d at 53-54 (quoting *Fields*, 459 F.3d at 12).  In addition, efforts to "cajole" or "influence" the executive branch are not protected activity.  *Gravel*, 408 U.S. at 625; *see also Jewish War Veterans*, 506 F. Supp. 2d at 54 ("contacting an executive agency in order to influence its conduct is not" protected activity).

Significancy, where the Speech or Debate Clause applies, "the immunity it confers is absolute." *Jewish War Veterans*, 506 F. Supp. 2d at 52-53.  "Once the legislative act test is met, the principle is absolute.'" *MINPECO, S.A. v. Conticommodity Servs. Inc.*, 844 F.2d 856, 862 (D.C. Cir. 1988) (internal quotations omitted).  Moreover, the Speech or Debate Clause, where it applies, "shields legislators from lawsuits relating to legitimate legislative activities, as well as from being compelled to testify or provide other discovery in lawsuits brought by or against third parties." *Alliance for Global Justice*, 437 F. Supp. 2d at 35-36.  As is relevant here, the D.C. Circuit has explicitly recognized that the Clause provides both testimonial immunity and a non-disclosure privilege pursuant to which legislators cannot be required to either produce documents or to answer questions, whether in a deposition or on the witness stand.  *Brown & Williamson Tobacco Corp.,* 62 F.3d at 416-17, 420; *see also Gravel,* 408 U.S. at 616 (holding that the Clause embraces a testimonial privilege); *United States v. Rayburn House Off. Bldg.*, 497 F.3d 654, 660 (D.C. Cir. 2007) (noting that the Clause also includes a non-disclosure privilege).  Legislative

immunity therefore affords protection not only when a legislator is named a defendant in a lawsuit but also when a litigant wishes to obtain discovery from a legislator as a third-party witness. *See Alliance for Global Justice*, 437 F. Supp. 2d at 35-36; *see also MINPECO*, 844 F.2d at 859). "As '[d]iscovery procedures can prove just as intrusive' as naming Members or their staffs as parties to a suit, . . . '[a] party is no more entitled to compel congressional testimony—or production of documents—than it is to sue a congressmen.'" *Rayburn House Off. Bldg.*, 497 F.3d at 660 (internal citations omitted).

Importantly, the purpose for which the protected material or testimony is sought is irrelevant to the application of legislative immunity. "The privilege is not designed to protect the reputations of congressmen but rather the functioning of Congress." *Brown & Williamson Tobacco Corp.*, 62 F.3d at 419. Accordingly, it does not matter whether the subpoenas at issue are entirely neutral as to the legislator's conduct or have a potential for embarrassing the legislator. *Id.* at 418-19.

Finally, "for the purposes of construing the privilege a Member and his aide are to be treated as one." *Gravel*, 408 U.S. at 616 (internal citations and quotation marks omitted). As the Supreme Court observed:

> [I]t is literally impossible, in view of the complexities of the modern legislative process . . . for [legislators] to perform their legislative tasks without the help of aides and assistant; that the day-to-day work of such aides is so critical to the Members' performance that they must be treated as the latter's alter egos; and that if they are not so recognized, the central role of the Speech or Debate Clause—to prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary—will be inevitably diminished and frustrated.

*Id.* at 616-17. Accordingly, "a legislative aide to a [legislator] shares in the member's Speech or Debate Clause to the extent the aide assists in the performance of legislative acts." *Gross*, 876

-13-

F.2d at 172; *see also Chang,* 512 F. Supp. 2d at 64-65 (holding that District's Debate or Speech statute afforded individual who served as Special Counsel for an investigation conducted by the D.C. Council "the same legislative immunity enjoyed by Council members or former legislative aides").

    *A.      Motion To Quash As To Councilmember Catania*

    Councilmember Catania has filed a motion to quash Plaintiff's subpoena, in which Plaintiff seeks both deposition testimony and the production of documents, arguing that he has absolute legislative immunity under the District's Debate or Speech statute.  For the reasons stated below, the Court agrees with Councilmember Catania that he is entitled to absolute legislative immunity and that Plaintiff's subpoena shall therefore be quashed.

    The "critical question is whether the action at issue was undertaken within the 'legislative sphere.'"  *Alliance for Global Justice*, 437 F. Supp. 2d at 36.  Review of both Plaintiff's Complaint and her briefing on the Motion to Quash demonstrate that she is seeking testimony and documents directly relating to Councilmember Catania's alleged investigation into APRA's conduct.  Indeed, the heart of Plaintiff's case is that, as a direct result of Plaintiff's comments at the February 14, 2006 hearing before the Committee on Health and during the subsequent private conversation that took place on March 8, 2006, Councilmember Catania began an investigation into APRA's contract with Softscape, and that Defendant thereafter retaliated against Plaintiff for her alleged role in triggering the D.C. Council's investigation.  *See* Pl.'s Opp'n to Catania Mot. to Quash at 4; *see also* Am. Compl. ¶ 56.  Therefore, accepting Plaintiff's allegations in her Complaint as true, Councilmember Catania's only involvement with the issues underlying the present lawsuit include: (a) conducting a hearing; (b) questioning witnesses and making

statements at the hearing; (c) meeting with Plaintiff and her husband and two aides to discuss a matter that was raised at the hearing and to receive information concerning alleged wrongdoing at an agency that is under Councilmember Catania's oversight responsibility; and (d) launching an investigation as a result of the information received. *See* Mot. to Quash at 6.

The Court finds that each of these activities is well within the sphere of protected legislative activities. Quite obviously, Councilmember Catania's conduct and statements made during the February 14, 2006 hearing are protected activities. *See Fields,* 459 F.3d at 9 (legislative immunity "obviously covers core legislative acts—'how [a Member] spoke, how he debated, how he voted, or anything he did in the chamber or in committee.'") (quoting *Brewster*, 408 U.S. at 515); *see also* D.C. Code § 1-301.41 (defining "legislative duties" to include, *inter alia*, "[e]verything said, written or done during . . . meetings . . . of the Council or any committee of the Council"). Similarly, the March 8, 2006 private conversation between Councilmember Catania, two of his aides and Plaintiff, during which the parties discussed the Softscape contract and Defendants' alleged wrongful conduct, is also protected activity, as is the alleged ensuing investigation. *See Eastland*, 421 U.S. at 504 ("[t]he power to investigate . . . plainly falls within" the legislative sphere); *see also* D.C. Code § 1-301.41 (defining "legislative duties" to include, *inter alia*, "[e]verything said, written or done during . . . investigations of the Council or any committee of the Council"). Although the private conversation at issue occurred outside the formal setting of a committee room, "the acquiring of information [is] an activity that is a 'necessary concomitant of legislative conduct and thus should be within the ambit of the privilege so that [legislators] are able to discharge their duties properly.'" *Dominion Cogen*, 878 F. Supp. 2d at 263; *see also Alliance for Global Justice*, 437 F. Supp. 2d at 36. Furthermore, as

explained above, the Court is persuaded that Councilmember Catania's information-gathering activities are covered by the District's Speech or Debate clause, regardless of whether the information was obtained through formal or informal investigative procedures. *See supra* at 10-11; *see also Jewish War Veterans,* 506 F. Supp. 2d at 57.  Accordingly, Plaintiff's conversations with Councilmember Catania in which they discussed alleged misconduct at APRA, as well as any alleged investigation into such misconduct, are legitimate legislative activities that are protected activities and Councilmember Catania is thus entitled to absolute legislative immunity.

Plaintiff's arguments to the contrary must fail. Plaintiff primarily argues that any communications between Councilmember Catania and APRA are not covered by the District's Speech or Debate statute.  Pl.'s Opp'n (Catania) at 4-6.  Although Plaintiff correctly notes that a legislator's efforts to cajole or influence an executive agency—as opposed to a legislator's information-gathering or investigative efforts—are not protected by legislative immunity, *see id.*, Plaintiff herself does not allege that Councilmember Catania communicated with APRA in order to cajole or influence the agency's behavior but rather to investigate APRA's misconduct.  *See, e.g.,* Compl. ¶ 56 ("As a result of the information Ms. Williams brought [*sic*] Mr. Catania's attention, Mr. Catania instructed his staff to launch an investigation into the Softscape contact.").  Accordingly, at most, Plaintiff's own allegations establish only that Councilmember Catania was conducting an investigation based on Plaintiff's claims of misconduct at APRA, which she communicated to him first at a public hearing and then at a follow-up private meeting.  Nonetheless, Plaintiff seeks to depose Councilmember Catania and to compel him to produce documents concerning all communications with Plaintiff and/or with APRA.  *See* Mot. to Quash, Ex. A (Copy of Plaintiff's Subpoena to Councilmember Catania).  As the D.C. Circuit has

observed, "[f]or a court to authorize such open-ended discovery in the absence of any information to suggest the likely existence of nonprivileged information would appear inconsistent with the comity that should exist among the separate branches of the federal government.  Such action would also be inconsistent with Supreme Court decisions that 'make clear that the Speech or Debate Clause, designed to preserve the independence and integrity of the Legislative Branch, [is to be] read broadly to effectuate its purposes.'" *MNPECO*, 844 F.2d at 863.

Plaintiff's other arguments are wholly without merit and may be easily dispensed. First, Plaintiff argues that the Court should find that the District's Speech or Debate statute provides only qualified, not absolute, immunity, and that the Court should therefore balance Plaintiff's need for the evidence against the burden to Councilmember Catania.  *See* Pl.'s Opp'n to Catania Mot. to Quash at 6-11.  The case law is clear, however, that where the Speech or Debate statute applies, "the immunity it confers is absolute."  *Jewish War Veterans*, 506 F. Supp. 2d at 52-53; *see also MINPECO*, 844 F.2d at 862 ("Once the legislative act test is met, the principle is absolute.") (internal quotation marks omitted).  Plaintiff has presented no legal support for his assertion to the contrary.[7]  Second, Plaintiff's asserts that Councilmember Catania is not entitled to absolute legislative immunity because Plaintiff seeks his testimony only as a third-party witness, and not as a defendant in the lawsuit.  *See* Pl.'s Opp'n (Catania) at 7-8.

---

[7]Plaintiff's reliance on *Clinton v. Jones*, 520 U.S. 681 (1997) and *United States v. Nixon*, 418 Us. 683 (1974) is misplaced.  *See* Pl.'s Opp'n (Catania) at 6-7.  As Councilmember Catania notes, *see* Catania Reply at 13-14, neither case involves the issue of *legislative* immunity as is relevant to the situation at hand.  Plaintiff's citation to the discussion of the deliberative process privilege of *executive* officials in *Dominion Cogen*, *see* Pl.'s Opp'n (Catania) at 8, is similarly inapposite.

Plaintiff is wrong as a legal matter, however, as the Speech or Debate Clause "shields legislators from lawsuits relating to legitimate legislative activities, as well as from being compelled to testify or provide other discovery in lawsuits brought by or against third parties." *Alliance for Global Justice*, 437 F. Supp. 2d at 35-36.  Accordingly, "[r]egardless of who is the defendant, the speech and debate statute shields from discovery . . . testimony relating to a Council investigation, which was conducted as part of the Council's deliberative and legislative process." *Id.*  Finally, Plaintiff argues that the District's Speech or Debate statute should not apply because the purpose of the subpoena at issue is solely to vindicate Plaintiff's rights and not to discredit or embarrass Councilmember Catania.  *See* Pl.'s Opp'n (Catania) at 10-11.  Again, however, Plaintiff is wrong as a legal matter, as the D.C. Circuit has made clear that "[t]he privilege is not designed to protect the reputations of congressmen but rather the functioning of Congress," and that the purpose for which the protected material or testimony is sought is therefore irrelevant. *Brown & Williamson Tobacco Corp.,* 62 F.3d at 419.

The Court therefore finds that the conduct at issue is protected by District's Speech or Debate statute and that Councilmember Catania is thus entitled to absolute legislative immunity, both as to Plaintiff's notice of deposition and subpoena *duces tecum*.  The Court therefore grants the Motion to Quash as to Councilmember Catania.

B.      *Motion To Quash As To Whitney*

As discussed above, Plaintiff also served Councilmember Catania's former legislative aide, Whitney, with a subpoena demanding that she appear for a deposition and produce the same categories of documents as requested of Councilmember Catania.  According to Whitney's affidavit, she is no longer with the D.C. Council, however, having left her position as the Deputy

Committee Clerk and Policy Director of the Committee on Health on June 25, 2007 to assume

the position of Senior Deputy Director of APRA.  *See* Whitney Reply, Docket No. [60], Ex. A

(Whitney Aff.) ¶¶ 1-3.  Because Plaintiff asserts that she seeks testimony from Whitney as it

relates both to her former position as a legislative aide and as to her current position at APRA,

the Court shall examine the Motion to Quash as concerns Whitney first as to her time at the D.C.

Council before then turning to her current employment at APRA.

 1. Legislative Aide to Councilmember Catania

 As explained above, Whitney joined in Councilmember Catania's Motion to Quash,

arguing that she is also entitled to absolute legislative immunity in her role as a legislative aide to

Councilmember Catania.  The Court agrees with Whitney that the District's Speech or Debate

statute affords her absolute legislative immunity as to her conduct while employed as a

legislative aide to Councilmember Catania.[8]

 It is well settled that, "for the purposes of construing the privilege a Member and his aide

are to be treated as one."  *Gravel*, 408 U.S. at 616 (internal citations and quotation marks

omitted).  Accordingly, "a legislative aide to a [legislator] shares in the member's Speech or

Debate Clause to the extent the aide assists in the performance of legislative acts."  *Gross*, 876

F.2d at 172; *see also Chang,* 512 F. Supp. 2d at 64-65.  Although Plaintiff's Complaint does not

identify Whitney by name, Whitney's Affidavit confirms that she served as the Deputy

---

 [8]In her opposition to Whitney's motion to quash, Plaintiff asserts that the District's
executive branch does not have standing to assert claims of legislative immunity under the
Districts's Speech or Debate statute. Pl.'s Opp'n (Whitney) at 1.  The Court, however, does not
understand the District to be asserting legislative immunity on its own behalf, but rather only on
behalf of Whitney.  As stated above, Whitney is now an employee of the D.C. Government and,
as such, has authorized the District to accept service of the subpoena on her behalf as well as to
request to join Councilmember Catania's motion to quash on her behalf.  *See supra* at 7, n.5.

Committee Clerk and Policy Director for the D.C. Council's Committee on Health and that she was also one of the two aides that attended the March 8, 2006 meeting with Plaintiff and Councilmember Catania. Whitney Reply, Ex. A (Whitney Aff.) ¶¶ 2, 9. For the same reasons as discussed above in relation to Councilmember Catania, the Court finds that Whitney's knowledge of the February 14, 2009 D.C. Council hearing, the March 8, 2006 private meeting between Councilmember Catania and Plaintiff, and any subsequent investigation into APRA's alleged misconduct falls well within the "legislative sphere" protected by the District's Speech or Debate statute. *See supra* at 14-18. Indeed, Plaintiff does not appear to dispute that, to the extent the Court finds that Councilmember Catania has absolute legislative immunity as to the alleged investigation into APRA, Whitney is afforded the same legislative immunity as to her position as Councilmember Catania's legislative aide. *See generally* Pl.'s Opp'n (Whitney). Accordingly, the Court finds that Whitney, like Councilmember Catania, is entitled to the absolute legislative immunity to the extent Plaintiff seeks information as to her knowledge of the alleged APRA investigation and related issues gained through her role as Councilmember Catania's legislative aide. The Court therefore grants the Motion to Quash Plaintiff's notice of deposition and subpoena *duces tecum* to the extent Plaintiff seeks information learned by Whitney while employed with the D.C. Council.

        2.      <u>Agency Employee at APRA</u>

As explained above, however, Whitney left her position with the D.C. Council in June of 2007 and has since served as the Senior Deputy Director of APRA. Whitney Reply, Ex. A (Whitney Aff.) ¶¶ 1-3. Plaintiff asserts that she seeks not only testimony as to Whitney's knowledge gained while a legislative aide, for which Whitney has absolute legislative immunity

as discussed above, but also testimony as to Whitney's knowledge gained in her current position at APRA.  *See* Pl.'s Opp'n (Whitney) at 1-2.  Quite obviously, Whitney may not claim legislative immunity for her conduct or knowledge gained as Senior Deputy Director at APRA, an agency in the D.C. Government.  However, as Whitney did not leave her position at the D.C. Council to begin working at APRA until June 25, 2007, *see* Whitney Reply, Ex. A (Whitney Aff.) ¶ 1, which was well after the above-captioned lawsuit was filed in December of 2006, it is unclear to the Court what personal knowledge Whitney has from her tenure in APRA that is relevant to the instant lawsuit.  Nonetheless, as discussed at the status hearing in this case, the Court has permitted Plaintiff to serve two interrogatories directed to Whitney *solely* in her individual capacity—*i.e.,* not in her official capacity as an aide to Councilmember Catania—addressing whether, prior to the filing of the instant lawsuit, Whitney engaged in any discussions with individuals, either at APRA or otherwise within D.C. Government, regarding the allegations underlying Plaintiff's Amended Complaint.  In the event her sworn answers to Plaintiff's interrogatories indicate that she in fact has relevant personal knowledge that is not otherwise subject to the protection of the District's Speech or Debate statute, Plaintiff may move the Court to compel the deposition of Whitney.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall GRANT Councilmember Catania's and Whitney's Motion to Quash.  The Court shall DENY WITH PREJUDICE Plaintiff's Cross-Motion to Compel the Deposition of Whitney to the extent she seeks to compel testimony and/or the production of documents as concerns Whitney in her official capacity as Councilmember Catania's former legislative aide, but shall DENY WITHOUT PREJUDICE Plaintiff's Cross-

Motion to the extent she seeks to compel testimony and/or the production of documents as concerns Whitney in her individual capacity.  An appropriate Order accompanies this Memorandum Opinion.

Date:   February 18, 2009

                                          _____/s/_____
                                          COLLEEN KOLLAR-KOTELLY
                                          United States District Judge