# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHRISTINA CONYERS WILLIAMS

    Plaintiff,

     v.

ROBERT JOHNSON, *et al.*

    Defendants.

Civil Action No. 06-2076 (CKK)

## MEMORANDUM OPINION
(March 18, 2010)

Plaintiff, Christina Conyers Williams, brings this action against the District of Columbia, and her supervisors Robert Johnson, individually and as Senior Deputy Director of the Addiction Prevention and Recovery Administration ("APRA") of the District of Columbia Department of Health ("DOH"), and David Anthony, individually and as Chief of Staff to the Senior Deputy Director of APRA (collectively "Defendants"). Plaintiff alleges that Defendants violated her rights under the First Amendment and the District of Columbia Whistleblower Protection Act ("WPA"), D.C. Code § 1-615.01 *et seq.*, by retaliating against her for remarks made during testimony before the District of Columbia Council ("D.C. Council") and during a separate meeting with a D.C. Councilmember.

Presently pending before the Court are the parties' cross-motions for summary judgment. Defendants have filed a [68] Motion for Summary Judgment, arguing that Plaintiff's remaining claims are without merit because Plaintiff's testimony before the D.C. Council does not constitute protected disclosures and Defendants had no knowledge that Plaintiff privately met with the individual Councilmember. Plaintiff in turn has filed a [72] Motion for Partial

Summary judgment, in which she argues that Defendants are bound under the principles of collateral estoppel from relitigating at trial any claim that Plaintiff violated the District of Columbia Residency Preference Act. Upon a searching review of the parties' motions and responsive briefing, the attachments thereto, the relevant statutes and case law, and the record of this case as a whole, the Court GRANTS-IN-PART and DENIES-IN-PART Defendants' [68] Motion for Summary Judgment. Specifically, Defendants' motion is GRANTED with respect to Plaintiff's claims of retaliation in violation of the First Amendment and the WPA to the extent both are based on her private meeting with the D.C. Councilmember, but is DENIED with respect to Plaintiff's WPA claim to the extent it is premised on her testimony before the D.C. Council. As such, only Plaintiff's allegation in Count II of the First Amended Complaint that Defendants impermissibly retaliated against her in violation of the WPA based upon remarks made to the D.C. Council remains viable.[1] The Court shall also DENY Plaintiff's [72] Motion for Partial Summary Judgment, for the reasons set forth below. Plaintiff may re-raise any evidentiary issues relating to the charges against Plaintiff and the Office of Personnel's final decision, as may be appropriate, at the motions in limine stage.

## I. BACKGROUND

A. *Factual Background*

At all times relevant to this action, Plaintiff was employed as Chief of the Center of

---

[1] Because Plaintiff is a resident of Maryland and seeks damages in an amount in excess of $75,000, the Court has jurisdiction over Plaintiff's WPA claim pursuant to 28 U.S.C. § 1333 (diversity jurisdiction). Alternatively, the Court, in its discretion, exercises its supplemental jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1367.

Research Evaluation and Grants for APRA. Defs.' Stmt. ¶ 1, Docket No. [69].[2] Defendant

Robert Johnson served as Senior Deputy Director of APRA and was Plaintiff's supervisor at

DOH. *Id.* ¶ 2. Defendant David Anthony was Chief of Staff to Senior Deputy Director Johnson.

*Id.* ¶ 3. In April of 2005, Plaintiff was assigned responsibility for the implementation of APRA's

Client Information System ("ACIS") software. *Id.* ¶ 4. The ACIS software was intended to

allow "all staff members [to] go online . . . [and] input information or . . . download information"

about data collected from APRA's clients. *Id.* ¶ 4 (quoting Deposition of Christina Conyers

Williams, attached as Ex. A to Defs.' Stmt., at 15:18-16:6).

       1.      Plaintiff's Testimony Before the D.C. Council Committee on Health

On February 14, 2006, Plaintiff and Defendant Johnson attended a routine oversight

hearing before the D.C. Council Committee on Health ("Committee"), headed by

Councilmember David Catania. *Id.* ¶ 5 & Ex. E (D.C. Office of Cable Television video

---

[2] The Court notes that it strictly adheres to the text of Local Civil Rule 7(h)(1) when resolving motions for summary judgment. Accordingly, as the Court advised the parties, it "assumes that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." *See* Feb. 14, 2009 Order, Docket No. [65], at 2. In setting forth the relevant background for Defendants' motion for summary judgment, the Court therefore cites only to Defendants' statement of material facts submitted in support of their motion for summary judgment ("Defs.' Stmt."), unless Plaintiff has objected to the relevant aspects of Defendants' statement, in which case the Court shall also cite to Plaintiff's response to Defendants' statement ("Pl.'s Resp."). In addition, the Court notes that Plaintiff's response statement includes several additional facts that she asserts are in dispute. *See* Pl.'s Resp. ¶¶ 23-65. As Defendants did not provide a specific paragraph-by-paragraph reply response to these additional facts, *see* Defs.' Reply at 1-3, the Court therefore assumes that such facts identified are admitted. Finally, Defendants similarly declined to file a response to Plaintiff's statement of material facts submitted in support of her motion for partial summary judgment ("Pl.'s Stmt."), indicating that they "accept the facts pleaded by plaintiff as true for the purposes of" Plaintiff's motion. *See* Defs.' Opp'n to Pl.'s MSJ at 1, n. 2. Accordingly, in setting forth the relevant background with respect to Plaintiff's motion for partial summary judgment, the Court cites only to Plaintiff's statement. Where appropriate, the Court also cites directly to evidence in the record.

recording of the Feb. 14, 2006 D.C. Council Committee on Health hearing).  In advance of the

hearing, APRA was required to submit written responses to a series of questions posed by the

Committee, a portion of which focused on ACIS.  *Id.* ¶¶ 6, 7 & Ex. D (DOH-APRA Responses to

DOH Questions (FY 2005)).  In particular, question number 17 asked for the status of the

"installation and implementation" of the ACIS software.  *Id.* ¶ 7 & Ex. D (DOH-APRA

Responses to DOH Questions (FY 2005)) at p. 17.  APRA's written response indicated in

relevant part that ACIS phase 1.0 had been deployed in late June of 2005 and that APRA

anticipated that ACIS phase 2.0 would be released in July 2006 with the release of ACIS phases

3.0, 4.0 and 5.0 to follow in November of 2006, February of 2007, and May of 2007,

respectively.  *Id.* ¶ 8 & Ex. D (DOH-APRA Responses to DOH Questions (FY 2005)) at pp. 17-

18.  In addition, APRA indicated that it had spent $900,000 on ACIS as of the date of its written

responses and that it anticipated spending an additional $1.4 million on the software in FY 2006

as well as another $800,000 in FY 2007.  *Id.* ¶ 8 & Ex. D (DOH-APRA Responses to DOH

Questions (FY 2005)) at pp. 17-18.

    During the course of the February 14, 2006 hearing, Councilmember Catania asked

several questions regarding the ACIS software.  *Id.* ¶ 10 & Ex. E (D.C. Office of Cable

Television video recording of the Feb. 14, 2006 D.C. Council Committee on Health hearing); *see

also* Pl.'s Opp'n, Ex. E (Transcript of selected portions of Feb. 14, 2006 D.C. Council

Committee on Health hearing).[3]  He began the discussion by commenting that "the clock is

---

[3] In drafting their respective pleadings, the parties have relied upon different video
recording versions of the February 14, 2006 Committee hearing, leading to some confusion
between the parties as to the accuracy of their respective record citations.  More specifically,
Plaintiff appears to have reviewed a different — substantially shorter — video recording than
Defendants relied upon and attached as Exhibit E to their motion.  *See* Pl.'s Resp. at p. 2, n.1.  As

ticking and a whole lot of money has been poured into this system [*i.e.,* the ACIS software

system] and we still don't have anything to show for it." Defs.' Stmt. ¶ 11. Councilmember

Catania then asked Defendant Johnson to address the type of data that the ACIS software was

capable of collecting; Defendant Johnson in turn indicated that Plaintiff should approach the

witness table and respond to the Councilmember's questions regarding the ACIS software on

APRA's behalf. *Id.* ¶ 12.

Plaintiff did so and subsequently provided approximately ten minutes of testimony in

response to Councilmember Catania's questions about the ACIS software. *See id.* ¶¶ 12, 13 &

Ex. E (D.C. Office of Cable Television video recording of the Feb. 14, 2006 D.C. Council

Committee on Health hearing) at 1:10:20-1:19:20. Plaintiff began her testimony by stating that

she was the individual responsible for the ACIS software. *Id.* ¶ 14. Councilmember Catania

then repeated his question about the type of data that was being collected by the ACIS software;

Plaintiff testified that, to-date, the software was capable of collecting only "demographic data"

— *i.e.*, the gender and race of APRA's clients and the type of drugs that the clients were using.

*Id.* ¶ 15; *see also id.*, Ex. E (D.C. Office of Cable Television video recording of the Feb. 14, 2006

_____

a result, Plaintiff has objected to any factual statements made by Defendants that are supported
by citations to the video recording of the Committee hearing on the basis that "the parts of the
record relied upon by defendants do not support the allegations." *See, e.g.,* Pl.'s Resp. ¶¶ 7, 8.
The Court has reviewed the DVD video recording of the hearing provided by Defendants as
Exhibit E to their motion and has confirmed that Defendants' citations to that recording are
largely accurate. In addition, Plaintiff has attached a transcript of the Committee hearing to her
opposition briefing, which further confirms the *substantive* accuracy of Defendants' statements.
*See* Pl.'s Opp'n, Ex. E (Transcript of selected portions of Feb. 14, 2006 D.C. Council Committee
on Health hearing). Accordingly, as Plaintiff has provided no other objection to Defendants'
factual statements and as the Court finds that Defendants' statements concerning the February 14,
2006 Committee hearing are supported by accurate citations to the record, Plaintiff's objections
are without merit. Defendants' statements regarding the substance of the Committee hearing are
therefore deemed undisputed.

D.C. Council Committee on Health hearing) at 1:13:10-1:13:30; Pl.'s Opp'n, Ex. E (Transcript of selected portions of Feb. 14, 2006 D.C. Council Committee on Health hearing) at 9:17-10:1. Councilmember Catania responded: "I mean, this solicits a giant big whoop, I mean to have a computer system that tells me the gender, sex, and race that has cost taxpayers, let's see, in this fiscal year, $1.4 million and next year another $600,000, to say nothing of what we've invested so far in this system." Pl.'s Resp. ¶ 27; *see also* Defs.' Stmt., Ex. E (D.C. Office of Cable Television video recording of the Feb. 14, 2006 D.C. Council Committee on Health hearing) at 1:13:40-1:14:05.

After several minutes of additional discussion regarding the collection of data and the purpose of the ACIS software, Councilmember Catania asked Plaintiff when the ACIS software would be "up and functioning in every corner of APRA with every vendor that we utilize?" Defs.' Stmt., Ex. E (D.C. Office of Cable Television video recording of the Feb. 14, 2006 D.C. Council Committee on Health hearing) at 1:17:53-1:18:13. Plaintiff responded that ACIS would be fully functional by "November 2006." *Id.* ¶ 16 & Ex. E (D.C. Office of Cable Television video recording of the Feb. 14, 2006 D.C. Council Committee on Health hearing) at 1:18:13-15. Councilmember Catania responded by stating, "Oh good. That's a short period of time. . . . I hope that you are right because that is a very optimistic deadline." *Id.* ¶ 17 & Ex. E (D.C. Office of Cable Television video recording of the Feb. 14, 2006 D.C. Council Committee on Health hearing) at 1:18:16-1:18:39. He further continued that if Plaintiff met that deadline, he would "personally recommend [her] promotion to whatever point and place in this government" she requested. *Id.* Defendants suggest that these comments by Councilmember Catania should be construed literally and taken as evidence that he was pleased with Plaintiff's testimony that the

ACIS software would be in place by November 2006.  *See* Defs.' MSJ at 11.  Plaintiff disagrees,

arguing that "Mr. Catania's tone of voice and body language" demonstrate that "he was not being

complementary of plaintiff; he was being sarcastic."  Pl.'s Resp. ¶ 31.  Having reviewed the

video recording of the February 14, 2006 hearing, the Court finds that Councilmember Catania's

comments are open to interpretation and that, drawing all reasonable inferences in Plaintiff's

favor, a reasonable jury could conclude that Councilmember Catania's comments to Plaintiff

were sarcastic in nature.  Accordingly, in evaluating Defendants' motion for summary judgment,

the Court proceeds with the understanding that Councilmember Catania did not intend his

statements necessarily to be received in a complimentary nature.

  The hearing then shifted to a discussion of another topic.  *Id.* ¶ 17 & Ex. E (D.C. Office

of Cable Television video recording of the Feb. 14, 2006 D.C. Council Committee on Health

hearing) at 1:18:20.  When Councilmember Catania regained the microphone approximately ten

minutes later, he once again expressed dissatisfaction with the slow progress being made with

respect to the ACIS software implementation, particularly given the large amount of money being

spent on the system.  *Id.* ¶ 18 & Ex. E (D.C. Office of Cable Television video recording of the

Feb. 14, 2006 D.C. Council Committee on Health hearing) at 1:31:09-1:33:50.  Councilmember

Catania also noted that the written responses submitted by APRA in advance of the hearing

indicated that — in contrast to Plaintiff's testimony — the "expected date of delivery" for a fully

functioning ACIS system was July of 2006; in light of Plaintiff's testimony, however,

Councilmember Catania stated that "we're going to go and move once again from the July

deadline to the November '06 deadline, but then that is it."  Pl.'s Resp. ¶ 43; *see also* Defs.'

Stmt., Ex. E (D.C. Office of Cable Television video recording of the Feb. 14, 2006 D.C. Council

Committee on Health hearing) at 1:31:32-1:31:52. He concluded by warning

> that if I don't have a fully functioning ACIS system by November of '06, we're going to investigate how this supposed contract got let. This, what looks like a competitively bid contract, I don't see that being competitive. . . . if anyone is seriously thinking we're going to spend 3 million dollars on what could be an off-the-shelf system, they're nuts. . . . [T]his smells. . . . So I mean it, November '06, it better go nowhere near that 3 million dollar mark because if I find that these vendors have provided us claims that cannot be substantiated, I'll introduce them to the beauty of the False Claims Act. . . . Okay, so unless these vendors are prepared to go out of business, I suggest they get this system up and running and under this trumped up budget and they be quick about it.

Pl.'s Resp. ¶¶ 44-49; *see also* Defs.' Stmt., Ex. E (D.C. Office of Cable Television video recording of the Feb. 14, 2006 D.C. Council Committee on Health hearing) at 1:31:53-1:33:50.

> 2.  Alleged Retaliatory Acts Taken by Defendants Immediately Following the D.C. Council Committee on Health Hearing

Plaintiff asserts — and Defendants do not dispute for purposes of this Memorandum Opinion — that "defendants began to harass [Plaintiff]" immediately following her testimony before the D.C. Council. Pl.'s Resp., Ex. D (Pl.'s Supplemented Answer to First Interrogatories) at p. 11; *see also* Defs.' Stmt. ¶ 19 & n.1 (indicating that although "Defendants dispute plaintiff's allegations that she was retaliated against or harassed, [] this dispute is not material for the purposes of [Defendants'] motion [for summary judgment]"). According to Plaintiff, while she had a "good working relationship" with Defendant Johnson prior to testifying at the February 14, 2006 hearing, "the relationship immediately underwent a complete change" directly following her testimony before the D.C. Council. Pl.'s Resp. ¶¶ 50-51. Specifically, Plaintiff alleges that Defendant Johnson held an unprecedented "debriefing" session the next day at work, during which he blamed Plaintiff "for doing a poor job of answering [Councilmember] Catania because she said the ACIS contract would not be ready until November 2006" and complained that her

"testimony made APRA look like 'crooks' and made it appear [that] the agency was doing something wrong." *Id.* ¶¶ 53-55.  Plaintiff further states that Defendant Johnson "threatened to hold [her] liable for the failures of the contract." *Id.* ¶ 56.  According to Plaintiff, "[f]rom the debriefing forward, [Defendant] Johnson was hostile to plaintiff.  He refused to speak with her other than a 'yes' or 'no.'  He cancelled or postponed his 'one-on-one' supervisory sessions with her that previously were held regularly, every other week." *Id.* ¶ 57.  In addition, Plaintiff contends that Defendant Johnson engaged in additional retaliatory and harassing conduct in the immediate days following the February 14, 2006 hearing and debriefing — specifically on February 22, 23, 24 and 26, 2006.  *Id.* ¶ 58 ("Johnson aimed additional harassing conduct at plaintiff on February 22, 23, 24 and 26, 2006").

### 3. Plaintiff's Private Meeting with D.C. Councilmember Catania on March 8, 2006

Shortly thereafter, Plaintiff's husband arranged for her to have a private meeting with Councilmember Catania to discuss Defendants' alleged retaliation against Plaintiff based upon her testimony at the February 14, 2006 D.C. Council hearing.  Defs.' Stmt. ¶ 22.  The meeting took place on March 8, 2006.  *See* Defs.' Stmt., Ex. A (Excerpts from Dec. 22, 2008 Deposition of Christina Conyers Williams) (hereinafter "Williams Dep.") at 55:6-10 (indicating that meeting took place in "the first week of March"); *id.*, Ex. F (Declaration of Tori Fernandez Whitney) (hereinafter, "Whitney Decl.") ¶ 9 (confirming that meeting took place on March 8, 2006).  The only people present at the meeting were Plaintiff and her husband as well as Councilmember Catania and two of his staff members, specifically, Councilmember's special policy advisor Tori Fernandez Whitney and another unidentified member of the Councilmember's staff.  Defs.' Stmt.

¶ 23; *see also* Williams Dep. at 56:13-57:10. The parties discussed Defendants' alleged harassment of Plaintiff based on her testimony before the D.C. Council as well as various problems regarding the ACIS software. Defs.' Stmt. ¶ 24.

<u>4.</u> <u>Defendants' Knowledge of Plaintiff's March 8, 2006 Private Meeting with Councilmember Catania</u>

Plaintiff admits that she did not tell anyone prior to the March 8, 2006 meeting that she intended to meet privately with Councilmember Catania. Defs.' Stmt. ¶ 25; *see also* Williams Dep. at 56:2-5 ("Q. Did you discuss the fact that you were going to meet with City Councilman Cantania [*sic*] with anybody other than your husband? A. No."). Plaintiff also admits that neither she nor her husband discussed the meeting with anyone after it took place, explaining that "City Councilman Catania made it very clear . . . that the meeting was closed door and should not be discussed." Defs.' Stmt. ¶ 26; *see also* Williams Dep. 62:9-18. In particular, Plaintiff concedes that she never spoke with Defendant Johnson or Defendant Anthony about the March 8, 2006 meeting. Defs.' Stmt. ¶ 30. She further admits that no one from APRA was aware that she planned to meet with Councilmember Catania and that she never spoke about the March 8, 2006 meeting with anyone from APRA. *See* Williams Dep. at 63:7-8, 19-21 ("Q. No one from APRA knew about the meeting? A. No one. . . . . Q. Did anybody at APRA ever speak to you about the meeting? A. No.").

Defendants have also provided the declaration of Councilmember Catania's special policy advisor, Ms. Whitney, who avers that she did not reveal that the March 8, 2006 meeting had taken place to anyone at DOH or APRA nor did she discuss the meeting with anyone at DOH or APRA until after this lawsuit was filed. Defs.' Stmt. ¶¶ 27, 29; *see also* Whitney Decl. ¶¶ 10,

12. Ms. Whitney further states that she has "no personal knowledge that anyone at APRA was aware of the [March 8, 2006] conversation prior to the filing of this action." Defs.' Stmt. ¶ 29; *see also id.*, Ex. G (Ms. Whitney's responses to Plaintiff's Interrogatories) at 3.[4]

Finally, both Defendant Johnson and Defendant Anthony aver that they did not learn about the March 8, 2006 meeting until after the instant lawsuit was filed. *See* Defs.' Stmt. ¶¶ 35-36; *see also id.*, Ex. B (Declaration of Robert Johnson) (hereinafter, "Johnson Decl.") ¶ 6; *id.*, Ex. C (Declaration of David Anthony) (hereinafter, "Anthony Decl.") ¶ 6.

Based on this record, Plaintiff concedes that "she has no direct evidence that anyone at APRA knew about the meeting at the time" it occurred. Pl.'s Resp. ¶ 20. She maintains, however, that she has proffered sufficient "indirect evidence that the fact of the meeting and its agenda leaked from Councilman Catania's office" at some unspecified time after the meeting took place. *Id*. The Court does not agree. Plaintiff herself testified at deposition that she has no

---

[4] Plaintiff makes much of the fact that Ms. Whitney's declaration states only that she "did not reveal that the March 8, 2006 meeting had taken place to anyone at the *Department of Health or at APRA*" and that she "did not discuss the March 8, 2006 meeting with anyone at the *Department of Health or APRA* until after this lawsuit was filed." *See* Pl.'s Resp. ¶ 16 (emphasis in Plaintiff's response). According to Plaintiff, a reasonable jury could infer from Ms. Whitney's choice of language choice that she was the source of a leak regarding the March 8, 2006 meeting because: "if [Ms. Whitney] had not been a source, she would not have added the words at the end of the sentence[s] that limit[] her denial to 'anyone in the Department of Health or at APRA.'" *Id.* In other words, Plaintiff speculates that — in the absence of specific language to the contrary — a possibility remains that at some unspecified point in time Ms. Whitney disclosed the existence of the March 8, 2006 meeting to an unidentified person outside of DOH or APRA who in turn caused that fact to be eventually disclosed at some unspecified time to Defendants (or to another third party who in turn disclosed the information to Defendants). The Court is not persuaded by Plaintiff's attempt to manufacture a dispute of material fact based solely upon her own unsupported conjecture, particularly where Plaintiff has offered no evidence that such an alleged leak ever occurred. *Cf. Montgomery v. Chao*, 546 F.3d 703, 708 (D.C. Cir. 2008) ("The possibility that a jury might speculate in the plaintiff's favor under such circumstances is simply insufficient to defeat summary judgment."). Plaintiff's arguments regarding Ms. Whitney's interrogatory responses, *see* Pl's Opp'n at 20, n. 8, are without merit for the same reason.

personal knowledge that anyone at APRA — including either Defendant Johnson or Defendant

Anthony — knew of the March 8, 2006 meeting at anytime prior to the initiation of this lawsuit:

Q. No one from APRA knew about the meeting?

A. No one.

Q. Did anybody at APRA learn about the meeting?

A. I don't know because I never said anything to anybody and my husband didn't know APRA staff, so he never said anything. I just know on my part I never spoke about it again to nobody else.

Q. You have no reason to believe your husband did?

A. I don't think so.

Q. Did anybody at APRA ever speak to you about the meeting?

A. No.

Q. Did Mr. Johnson know about the meeting?

A. No.

Q. Did Mr. Anthony know about the meeting?

A. No.

Q. Either before or after it occurred?

A. I know before no. After, I don't know if someone in his office spoke with someone else, I don't know from me, from myself I never spoke to either one of them.

Q. Do you have any reason to believe that Mr. Johnson knew about the meeting?

A. Before?

Q. That he ever?

A. Apparently, his retaliation continued at a higher rate, after a week or two his

retaliation took on a different spin.

Q.  Anything else other than that?

A.  He never discussed anything with me about Mr. Cantania [*sic*].

Q.  You are shaking your head?

A.  No, Mr. Johnson never spoke to me about the meeting with Mr. Cantania [*sic*].

Q.  Do you . . . have any reason to believe Mr. Anthony knew about the meeting?

A.  No, not from me.

Q.  Did you hear or observe anything to lead you to believe that he had?

A.  No.

Q.  You had no reason to believe anybody else at APRA knew about the meeting?

A.  No, because it was only me and my husband with Mr. Catania and his aides.

Williams Dep. at 63:7-65:12.

As is clear from review of this testimony, Plaintiff herself has no personal knowledge that either Defendants were aware of her March 8, 2006 meeting with Councilmember Catania. While she speculated in her testimony that Defendant Johnson, in particular, may have learned of the meeting at some unspecified point in time after it occurred, she conceded that she did know whether he in fact had knowledge of the meeting.  *Id.* at 64:1-10 ("I know before no.  After, I don't know if someone in his office spoke with someone else, I don't know from me, from myself I never spoke to either one of them.").  Rather, her testimony was based solely on her opinion that "his retaliation continued at a higher rate, after a week or two his retaliation took on a different spin."  *Id.* at 64:15-17.  Plaintiff, however, did not specify how Defendant Johnson's allegedly retaliatory actions changed in the week or two after March 8, 2006.  *See id.*  Nor has

Plaintiff directed the Court to any evidence on the present record supporting her claim that

Defendant Johnson's allegedly retaliatory conduct increased in severity or frequency during that

period of time. Indeed, there is no evidence on the record now before the Court that Defendants

engaged in *any* retaliatory conduct during the second or third week of March 2006.[5] Plaintiff's

unsubstantiated speculation that Defendant Johnson "apparently" learned about the meeting at

some unspecified time is insufficient to create a dispute of material fact on this record.

      Plaintiff's reliance on the declaration of Dorothy Smith is similarly misplaced.[6] Ms.

Smith, an employee of APRA, avers that Defendant Anthony informed her in April of 2006 that

"he was going to fire one of his own managers, an employee named Christine [*sic*] Williams."

Pl.'s Resp., Ex. B (Declaration of Dorothy Smith) (hereinafter, "Smith Decl."), ¶ 2. According to

---

[5] Plaintiff's only reference on the present record to allegedly retaliatory conduct occurring during that time period is contained in a lone footnote in her opposition briefing, in which Plaintiff directs the Court to allegations in her Amended Complaint that Defendant Johnson asked her during a supervisory session on March 22, 2008, whether she had been contacted by the personnel department about her residency status. *See* Pl.'s Opp'n at 18, n. 7 (citing Am. Compl. ¶ 59). Plaintiff argues that this "fact" supports an inference that Defendant Johnson "knew the investigation [into Plaintiff's residency status] was well under way by that time" — *i.e.*, by mid-March. *Id.* Plaintiff's allegations, however, carry no weight at the summary judgment stage. Discovery is now closed, and Plaintiff cannot continue to rely on allegations in her Amended Complaint absent supporting factual evidence, which Plaintiff has not provided.

[6] While Defendants briefly suggest that the Smith Declaration may be inadmissable, *see* Defs.' Reply at 4, Defendants have not actually advanced any specific objection to the admissibility of the declaration nor have they argued that the Court should not consider the declaration as part of the record on summary judgment. Although Court's have a "mandatory" obligation to exclude "clearly inadmissible" evidence in resolving motions for summary judgment, *see Bush v. District of Columbia*, __ F.3d __, 2010 WL 610228, *4 (D.C. Cir. Feb. 23, 2010) (Randolph, J., concurring), the Court notes that in this case, consideration of the statements contained in the Smith Declaration does not alter or in any way affect the Court's decision on the parties' pending motions. Accordingly, absent any specific objections by Defendants, the Court declines to make a final determination at this stage as to admissibility of the Smith Declaration.

Ms. Smith,

> [Defendant] Anthony told [her] that [Plaintiff] was not on good terms with her boss Robert Johnson because of her testimony before the D.C. Council.  Anthony stated that Johnson was unhappy and displeased about the things [Plaintiff] said at a hearing before Councilman Catania.  Johnson said that [Plaintiff] "talked too much" and revealed things to Councilman Catania that Johnson did not want disclosed.

*Id.* ¶ 3.  Plaintiff urges that a "reasonable jury could [] find that Ms. Smith's statement . . . refers to the private meeting between Councilman Catania and Ms. Williams and not just to Ms. Williams' testimony before the Council," such that "both Mr. Johnson and Mr. Anthony both [*sic*] knew about Ms. Williams' private March 8, 2006 meeting with Council member Catania." Pl.'s Opp'n at 21-22.  The Court is not so persuaded.  Ms. Smith — who submitted a declaration on Plaintiff's behalf in this matter — does not mention or refer to the March 8, 2006 meeting. To the contrary, she avers only that she was informed Defendant Johnson was displeased "because of [Plaintiff's] testimony before the D.C. Council."  Smith Decl. ¶ 3.  Plaintiff's claim that Ms. Smith's statements should be read to indicate that Defendants were also aware of, and unhappy with, Plaintiff's meeting with Councilmember Catania is without merit.

In addition, Plaintiff directs the Court to the deposition testimony of Julian Muhammad, who served as risk manager at DOH during the relevant time period.  *See* Pl.'s Resp. ¶ 20; *see also* Pl.'s Not. of Filing Deposition of Julian Muhammed, Docket No. [81] (hereinafter, "Muhammed Dep."), at 6:14-16.  The cited portions of Mr. Muhammed's testimony, however, do not mention or refer to the private March 8, 2006 meeting between Plaintiff and Councilmember Catania, let alone indicate whether Mr. Muhammed had reason to believe that either Defendant Johnson or Defendant Anthony were aware that such a meeting had taken place; indeed, there is no indication that Mr. Muhammed himself was aware that such a meeting ever occurred.  *See*

Muhammed Dep. at 18-26; 35-36; 47-48; 61; 88.  Rather, Mr. Muhammed's testimony was

limited to discussing the Defendants' alleged efforts to terminate Plaintiff for failure to comply

with a District residency requirement, as is discussed in more detail below.  *See generally id.*

Accordingly, Plaintiff has failed to proffer any evidence on the present record (either of a

direct or indirect nature) to contradict Defendant Johnson and Defendant Anthony's sworn

statements that they were unaware of Plaintiff's private meeting with Councilmember Catania

until after this lawsuit was filed.  The Court therefore finds that Plaintiff has failed to

demonstrate that a dispute of material fact exists with respect to Defendants' knowledge of the

March 8, 2006 meeting.

5.     Defendants' Alleged Efforts to Terminate Plaintiff for Failure to Comply
with a District Residency Preference Requirement

Finally, Plaintiff alleges — and Defendants do not dispute for purposes of this

memorandum opinion — that Defendant Johnson, with assistance from Defendant Anthony,

attempted to terminate Plaintiff for failure to comply with a District residency preference

requirement.  *See* Defs.' Stmt. ¶¶ 20-21; *see also* Pl.'s Resp. ¶ 61.  According to Plaintiff, on or

about April 3, 2006, she was informed by Mr. Muhammad that she had been accused of violating

a statutory requirement that she remain a resident of the District of Columbia.  Pl.'s Resp. ¶ 61 &

Ex. D (Pl.'s Supplemented Answer to First Interrogatories) at p. 4.  Thereafter, on May 1, 2006,

DOH issued a Notice to Show Cause why Plaintiff's employment should not be forfeited due to

non-compliance with the D.C. residency preference requirement.  *Id.* ¶ 64 & Ex. C (Final

Decision and Order to Dismiss regarding Christian Williams Residency Preference

Determination) at 2.  Pre-hearing conferences were held on May 5, 2006 and on May 15, 2006, at

which Plaintiff and representatives from the District were in attendance.  *Id.* ¶ 64 & Ex. C (Final

Decision and Order to Dismiss regarding Christian Williams Residency Preference Determination) at 1-2. An evidentiary hearing was ultimately held on June 19, 2006 to consider the charge against Plaintiff. *Id.* ¶ 64 & Ex. C (Final Decision and Order to Dismiss regarding Christian Williams Residency Preference Determination) at 4. Counsel for both parties were in attendance. *Id.* ¶ 64 & Ex. C (Final Decision and Order to Dismiss regarding Christian Williams Residency Preference Determination) at 2.

The charge was ultimately dismissed against Plaintiff on August 8, 2006, on the basis that: (1) the "Agency's evidence fail[ed] to establish that [Plaintiff] was granted a residency requirement," and the Agency therefore "ha[d] not met its burden of proof to show that [Plaintiff] was required to live in the District for five years from the date of appointment and that her failure to do so violated the residency requirement resulting in forfeiture of the position;" and (2) "[e]ven assuming *arguendo* that the [Plaintiff] received a residency preference . . . [t]he failure of the Agency to follow its procedures in providing a written notice to the [Plaintiff] and obtaining a written certification that she received notification of the residency requirements deprived [Plaintiff] of adequate notice and does not comply with basic due process." *Id.* ¶ 64 & Ex. C (Final Decision and Order to Dismiss regarding Christian Williams Residency Preference Determination) at 12.

B.    *Procedural History*

Plaintiff's First Amended Complaint contains two claims. Count I is brought pursuant to 42 U.S.C. § 1983 and alleges that Defendants retaliated against Plaintiff for activity protected under the First Amendment to the United States Constitution, namely her testimony before the D.C. Council and her remarks during her private meeting with Councilman Catania. Am.

Compl., Docket No. [13] ¶¶ 101-07.  Count II is brought pursuant to the District of Columbia

Whistleblower Protection Act and alleges that Defendants took or threatened to take "prohibited

personnel actions" against Plaintiff for the "protected disclosures" she made during her testimony

before the D.C. Council and her meeting with Councilman Catania.  *Id.* ¶¶ 108-113.

By order and memorandum opinion dated March 14, 2008, the Court dismissed Plaintiff's

First Amendment Claim (Count I) insofar as it was based upon her testimony before the D.C.

Council and also dismissed any potential Whistleblower Protection Act claim (Count II) against

Defendants Johnson and Anthony in their individual capacities.  *See Williams v. Johnson*, 537 F.

Supp. 2d 141 (D.D.C. 2008).  Plaintiff's remaining claims in this action are therefore as follows:

(1) Plaintiff's First Amendment claim remains viable  as against the District and Defendants

Johnson and Anthony in their individual as well as official capacities to the extent it is premised

upon speech made during the March 8, 2006 private meeting with Councilmember Catania; and

(2) Plaintiff's WPA claim remains viable in its entirety (*i.e.,* based upon her testimony before the

D.C. Council as well as statements made during her private meeting with Councilmember

Catania), but only as asserted against the District and Defendants Johnson and Anthony in their

official capacities.

Defendants have now moved for summary judgment on Plaintiff's remaining claims.  *See*

Defs.' MSJ, Docket No. [68].  Defendants first argue that they are entitled to summary judgment

on Plaintiff's WPA claim, to the extent it is based on her testimony before the D.C. Council,

because such statements do not qualify as protected disclosures under the Act.  Second,

Defendants argue that they are entitled to summary judgment on both Plaintiff's First

Amendment and WPA claims, to the extent each are based on statements made during the private

meeting with Councilmember Catania, because the undisputed facts demonstrate that Defendants were unaware that the meeting had taken place and therefore could not have retaliated against her on that basis as a matter of law.  Plaintiff has since filed an opposition to Defendants' motion, *see* Pl.'s Opp'n, Docket No. [74], and Defendants have filed a reply, *see* Defs.' Reply, Docket No. [79].[7]

In addition, Plaintiff has filed a [72] Motion for Partial Summary Judgment on grounds of collateral estoppel, in which she argues that Defendants are barred under the principles of collateral estoppel from relitigating at trial any claim that Plaintiff violated the District of Columbia Residency Preference Act.  Defendants have filed an opposition to Plaintiff's motion, *see* Defs.' Opp'n, Docket No. [78], and Plaintiff a reply, *see* Pl.'s Reply, Docket No. [80]. Accordingly, the parties' motions are both fully briefed and ripe for the Court's resolution.

---

[7] The Court notes that Plaintiff subsequently filed a Notice of Supplemental Authority on March 15, 2010, as amended by notice March 17, 2010, advising the Court of recent amendments to the WPA.  *See* Pl.'s Notice, Docket No. [84].  In particular, Plaintiff highlighted the following changes to the WPA, which she asserts are relevant to the pending motions: (1) amendments to the statutory definition of a "prohibited personnel action" to include retaliatory investigations and to clarify that the mode of disclosure does not affect the protected nature of the disclosure; and (2) added language to make clear that supervisors cannot interfere with an employees' communications to the D.C. Council.  *See id.*  The Court provided Defendants an opportunity to file a response to Plaintiff's notice, which Defendants declined.  *See* 3/17/10 Min. Order.  Upon review of Plaintiff's notice and the specific WPA amendments highlighted therein, it is apparent that none of the particular WPA provisions highlighted by Plaintiff are implicated or put into issue by the parties' arguments in the pending motions.  That is, Defendants do not argue in their present motions that Plaintiff's WPA claim must fail because the Defendants' alleged actions do not constitute a "prohibited personnel action" or because Defendants were permitted to interfere with Plaintiff's communications to the D.C. Council.  As such, the amendments — even if applied to Plaintiff's claims in this case, as Plaintiff urges — would not have a substantive impact on the Court's decision herein.  Accordingly, the Court does not consider the Plaintiff's notice in resolving the pending cross-motions for summary judgment.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Under the summary judgment standard, the moving party bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50

(internal citations omitted). "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

## III. DISCUSSION

*A.      Defendants' Motion for Summary Judgment*

The Court begins by considering Defendants' motion for summary judgment. As indicated above, Defendants make two principal arguments in favor of their motion for summary judgment. First, Defendants argue that they are entitled to summary judgment on Plaintiff's WPA claim, insofar as it is based on alleged statements made before the D.C. Council, because such statements do not constitute protected disclosures under the WPA. Second, Defendants argue that they are entitled to summary judgment on Plaintiff's First Amendment and WPA claims, insofar as each are based on statements made during her private meeting with Councilmember Catania, because the record demonstrates that Defendants were unaware that the meeting had taken place and therefore could not have retaliated against her on that basis as a matter of law. Each argument shall be considered in turn below.

1.      Plaintiff's WPA Claim Based Upon Her Testimony Before the D.C.
        Council

Defendants first argue that Plaintiff's statements made before the D.C. Council

Committee on Health at the February 14, 2006 hearing do not qualify as protected disclosures

under the WPA.  The District of Columbia's Whistleblower Protection Act prohibits, in relevant

part, a supervisor from threatening to take or taking a prohibited personnel action or otherwise

retaliating against an employee because of the employee's "protected disclosure."  D.C. Code §

1-615.53.  A "protected disclosure" is statutorily defined as:

> any disclosure of information, not specifically prohibited by statute, by an employee
> to a supervisor or a public body that the employee reasonably believes evidences:
>
> (A) Gross mismanagement;
>
> (B) Gross misuse or waste of public resources or funds;
>
> (C) Abuse of authority in connection with the administration of a public program or
> the execution of a public contract;
>
> (D) A violation of a federal, state, or local law, rule, or regulation, or of a term of a
> contract between the District government and a District government contractor which
> is not of a merely technical or minimal nature; or
>
> (E) A substantial and specific danger to the public health and safety.

*Id.* § 1-615.52(a)(6).  A "public body" includes a member of the D.C. Council.  *Id.* § 1-

615.52(a)(7).

The District of Columbia Court of Appeals has recently explained that "[a] 'protected

disclosure' under the DC-WPA is one that the employee 'reasonably believes' evidences one or

more of the circumstances delineated in D.C. Code § 1-615.52(6)(A)-(E) (2001)."  *Wilburn v.

District of Columbia*, 957 A.2d 921, 925 (D.C. 2008).  The "'employee must disclose such

serious errors by the agency that a conclusion the agency erred is not debatable among reasonable

people.'" *Id.* (quoting *White v. Dep't of the Air Force*, 391 F.3d 1377, 1382 (Fed. Cir. 2004)).

To determine whether an individual reasonably believed that such errors constituted gross

misconduct or abuse or were illegal, a court must consider whether "'a disinterested observer

with knowledge of the essential facts known to and readily ascertainable by the employee [could]

reasonably conclude that the actions of the government evidence [illegality, gross abuse, etc.].'"

*Zirkle v. District of Columbia*, 830 A.2d 1250, 1259-60 (D.C. 2003) (quoting *Lachance v. White*,

174 F.3d 1378, 1381 (Fed. Cir. 1999)).  "'A purely subjective perspective of an employee is not

sufficient even if shared by other employees.'" *Id.*  The key inquiry remains whether the plaintiff

reasonably believed the conduct disclosed was illegal and/or a gross abuse and not whether the

conduct was in fact ultimately found to be illegal or a gross abuse, etc.  *See id.*

 Plaintiff in this case alleges that her statements before the D.C. Council that (1) the ACIS

software was capable at that time of collecting only demographic data and (2) the system would

not be fully functional until November of 2006 qualify as protected disclosures under the WPA.

Am. Compl. ¶¶ 41-42.  According to Plaintiff, these statements revealed that the ACIS software

was a "major failure." *Id.*  Specifically, she asserts that this testimony revealed that, despite the

significant monetary expenditures made on the system, the ACIS software was currently unable

to track crucial information concerning an individual's education and use of drugs (*i.e.*, non-

demographic information), and that the software would not be completed until November 2006,

contrary to APRA's written statement indicating that the software would be ready by July 2006.

*Id.*  Plaintiff therefore urges that these statements qualify as protected disclosures because she

reasonably believed that the statements evidenced (1) "[g]ross management," D.C. Code § 1-

615.52(a)(6)(A); (2) "[g]ross misuse or waste of public resources or funds," *id.* § 1-

615.52(a)(6)(B); (3) "[a]buse of authority in connection with the administration of a public program or the execution of a public contract," *id.* § 1-615.52(a)(6)(C); and/or (4) "[a] violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature," *id.* § 1-615.52(a)(6)(D).

Defendants contend that Plaintiff's statements do not qualify as protected disclosures under any of the relevant D.C. Code provisions for two principal reasons. First, Defendants assert that the D.C. Council was already aware that the ACIS software system was a "major failure." Defs.' MSJ at 9-10. Accordingly, Defendants urge that Plaintiff's testimony did not reveal any new information and therefore cannot qualify as a "disclosure" under the WPA. *Id.* The Court does not agree. While District of Columbia case law suggests that a plaintiff's statements do not qualify as "protected disclosures" under the WPA if the statements conveyed only information that was already known to the person to whom the information is reported, *see Wilburn*, 957 A.2d at 925-26, Defendants have not shown that this was the case in this instance. Defendants' only evidence in support of their position that Plaintiff's testimony disclosed no new information is Councilmember Catania's statement, made at the beginning of the discussion regarding the ACIS software, that "a whole lot of money has been poured into this system [*i.e.,* the ACIS software system] and we still don't have anything to show for it." *See* Defs.' MSJ at 10. This statement, however, is insufficient to establish that Councilmember Catania knew either that the ACIS software could collect only demographic information or that it would not be fully functional until November of 2006. Although Councilmember Catania's comment suggests that he was already aware, or at least suspected, that the ACIS software was

not performing as expected, it does not necessarily demonstrate that he was also aware of the specific details disclosed by Plaintiff during the hearing. This is particularly so given that after making the general observation quoted by Defendants, Councilmember Catania immediately proceeded to ask detailed questions about the type of data currently being collected as well as the timeline for placing the ACIS software fully online. A reasonable jury could therefore infer that Councilmember Catania was unaware of this information. Accordingly, the Court finds that Defendants have not shown on the present record that Plaintiff disclosed only information already publicly known. *Cf. Mentzer v. Lanier*, __ F. Supp. 2d __, Civ. Act. No. 06-281, 2010 WL 24151, *5 (D.D.C. Jan. 6, 2010) (denying summary judgment on WPA claim because the record indicated that "it is probable that some of [the] details [disclosed by plaintiff] were not public knowledge available" prior to plaintiff's disclosures).

Second, Defendants contend that even if Plaintiff's statements disclosed information not previously known, her WPA claim based on her testimony before the D.C. Council nonetheless fails because "[a]t worst, her [testimony] reveals that a government project was six-months behind schedule." Defs.' MSJ at 10-11. Defendants urge that such testimony "merely buttressed Councilmember Catania's prior knowledge that the ACIS project was expensive and was not performing as expected." Defs.' Reply at 4. Defendants therefore conclude that "no reasonable juror could find that plaintiff's Council testimony was evidence of the type of gross abuse covered by the WPA." *Id.* at 11. The Court does not agree. Drawing all reasonable inferences in Plaintiff's favor, her statements disclosed specific evidence that a three million dollar software system was both largely ineffective and behind schedule. Indeed, after hearing Plaintiff's testimony, Councilmember Catania questioned the validity of spending "3 million dollars on

what could be an off-the-shelf system" and threatened to pursue relief under the False Claims Act. Pl.'s Resp. ¶¶ 44-49; *see also* Defs.' Stmt., Ex. E (D.C. Office of Cable Television video recording of the Feb. 14, 2006 D.C. Council Committee on Health hearing) at 1:31:53-1:33:50. Defendants' present claim that no one with knowledge of the essential facts could find that Plaintiff's statements revealed anything more than an innocent delay is belied by Plaintiff's evidence — uncontested by Defendants — that Defendant Johnson himself complained the next day that her "testimony made APRA look like 'crooks,' and made it appear [that] the agency was doing something wrong." Pl.'s Resp. ¶ 55. Defendants have therefore failed to demonstrate that they are entitled to summary judgment on Plaintiff's WPA claim to the extent it is based on her testimony at the February 14, 2006 D.C. Council hearing. The Court therefore DENIES Defendants' [68] Motion for Summary Judgment insofar as Defendants contend that Plaintiff's testimony before the D.C. Council does not qualify as a protected disclosure under the WPA.

>    2.    Plaintiff's Claims of Retaliation in Violation of the WPA and the First Amendment Based Upon Statements Made During her Private Meeting with Councilmember Catania

Defendants next argue that Plaintiff's claims of retaliation — under both the WPA and the First Amendment — fail to the extent that each is based on statements made by Plaintiff during her meeting with Councilmember Catania on March 8, 2006. Specifically, Defendants contend that there is no evidence on the present record that Defendants knew about Plaintiff's meeting with Councilmember Catania, such that Plaintiff cannot succeed on her claims that Defendants retaliated against her based on protected disclosures made during that meeting. *See* Defs.' MSJ at 11-12. For the reasons set forth below, the Court agrees and shall therefore grant Defendants' motion for summary judgment on Plaintiff's First Amendment and WPA

claim insofar as each is premised upon comments made during her private meeting with Councilmember Catania.

To prevail on her section 1983 claim alleging retaliation in violation of her First Amendment rights, Plaintiff must show, *inter alia*, that her speech was "a substantial or motivating factor in prompting the retaliatory or punitive act." *Wilburn v. Robinson*, 480 F.3d 1140, 1149 (D.C. Cir. 2007) (quoting *O'Donnell v. Barry*, 148 F.3d 1126, 1133 (D.C. Cir. 1999)). Similarly, to succeed on her WPA claim, Plaintiff is required to demonstrate as part of her *prima facie* case that the protected disclosure was a "contributing factor" to the allegedly retaliatory actions and a jury must ultimately find that "a *direct causal link* in order for there to be liability" — *i.e.,* that Defendants would not have taken the allegedly retaliatory actions "but for" her protected disclosures. *Johnson v. District of Columbia*, 935 A.2d 1113, 1119 (D.C. 2007) (emphasis in original) (internal quotation marks omitted). The causation inquiry, then, is substantially similar under both the First Amendment and the WPA. While the question is ordinarily one of fact for the jury, *see Wilburn*, 480 F.3d at 1149, summary judgment may be granted where, as here, the plaintiff has failed to proffer any evidence (either of a direct or indirect nature) from which a reasonable jury could find the required causal link between the protected disclosures allegedly made by Plaintiff to Councilmember Catania at the March 8, 2006 meeting and the allegedly retaliatory actions. *See Amos v. District of Columbia*, 589 F. Supp. 2d 48, 56 (D.D.C. 2008) (granting summary judgment to the District of Columbia where "no one in the D.C. government knew that [plaintiff] had [made the protected disclosure]," such that the disclosures "could not have been a substantial or motivating factor" for the allegedly retaliatory action); *Johnson*, 935 A.2d at 1120-21 (affirming grant of summary judgment to District of

Columbia on plaintiffs' claims of retaliation in violation of First Amendment and WPA where there was insufficient evidence establishing a causal link between the allegedly protected disclosures and retaliatory conduct).

Plaintiff has failed to proffer any evidence that Defendants were aware of her private meeting with Councilmember Catania at anytime prior to the institution of this lawsuit, and the record is therefore devoid of any evidence from which a reasonable jury could find that Defendants retaliated against her for statements made during that meeting. As discussed above, Plaintiff concedes that she lacks any direct evidence that anyone at APRA, including either Defendant Johnson or Defendant Anthony, was aware of her meeting with Councilmember Catania, *see* Pl.'s Resp. ¶ 20, and the Court finds that she has not offered sufficient indirect evidence from which a reasonable jury could infer Defendants' knowledge of the meeting. *See generally supra* at pp. 10-16. At most, Plaintiff's evidence demonstrates that she met with Councilmember Catania on March 8, 2006, and that approximately three weeks later she was informed by Mr. Muhammad that she had been accused of violating a statutory requirement that she remain a resident of the District of Columbia. Although in many instances temporal proximity by itself may be sufficient to create an inference of retaliation based on a protected activity, the Court concludes that — in light of the specific facts of this case — a jury could not reasonably infer that Defendants retaliated against Plaintiff for her participation in the March 8, 2006 meeting simply because the alleged retaliatory action (*i.e.,* the investigation into Plaintiff's compliance with the District's residency requirement) took place shortly after her meeting with Councilmember Catania. In addition, Defendants undisputably had knowledge of Plaintiff's testimony before the D.C. Council on February 14, 2006, and, according to Plaintiff, began their

retaliatory actions immediately after that testimony. In other words, Defendants began to take allegedly retaliatory actions well before she met privately with Councilmember Catania on March 8, 2006. As such, absent specific evidence that Defendants were aware of Plaintiff's meeting on March 8, 2006, the fact that Defendants' allegedly retaliatory conduct continued throughout March and April of 2006, ultimately culminating in an attempt to terminate her employment for failure to comply with the residency requirement, does not create a reasonable inference that Plaintiff's *meeting* — as opposed to her testimony before the D.C. Council — was either a "substantial" or "contributing" factor behind Defendants' allegedly retaliatory conduct.

For this reason, Plaintiff's reliance on *Jones v. Bernanke*, 557 F.3d 670 (D.C. Cir. 2009), is misplaced, as the plaintiff in that case demonstrated that the defendant employer had knowledge of the protected activity. *Id.* at 678-79 (finding plaintiff's evidence that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity, sufficient to permit an inference of retaliatory motive). Even setting that fact aside, however, the Court is not persuaded that the D.C. Circuit's opinion in *Jones*, which involved consideration of a retaliation claim under Title VII of the Civil Rights Act of 1964, is directly applicable to Plaintiff's instant claim of retaliation in violation of the First Amendment and the WPA. In considering claims of retaliation under Title VII, the D.C. Circuit has made clear that the *prima facie* case is "almost always irrelevant;" a district court therefore need not, and should not, decide whether a plaintiff has met her *prima facie* burden under the *McDonnell Douglas* burden shifting test, but should instead proceed directly to consider the ultimate issue of retaliation *vel non*. *Id.* at 678 (quoting *Brady v. Off. of Sergeant at Amrs*, 520 F.3d 490, 494 (D.C. Cir. 2008)).

By contrast, a plaintiff alleging retaliation in violation of the First Amendment has the initial burden of showing that she engaged in "constitutionally protected [conduct] and that this conduct was a 'substantial factor' or . . . a 'motivating factor' in the [employer's] decision [to engage in retaliatory conduct]." *Mt. Healthy City Sch. District Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977). Only once the plaintiff meets this burden of showing at least some causal nexus between her speech and the alleged retaliatory conduct does the burden shift to the defendant to show why it would have taken the same action even in the absence of any protected activity. *Velikonja v. Mueller*, 362 F. Supp. 2d 1, (D.D.C. 2004), *aff'd in relevant part and rev'd on other grounds by* 446 F.3d 122 (D.C. Cir. 2006) ("The District Court properly granted summary judgment on Velikonja's First Amendment retaliation claim . . . because [she] introduced no evidence establishing a causal link between her speech and the government's actions against her."). Similarly, pursuant to D.C. Code § 1-615.54(b), a plaintiff alleging retaliation in violation of the WPA has the initial burden of establishing by a preponderance of the evidence that a protected activity was a contributing factor in the allegedly prohibited personnel action; only then does the burden shift to the employer to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate reasons even absent the protected activity. *See also Crawford*, 891 A.2d at 218-19. Plaintiff therefore retains the burden of proffering sufficient evidence from which a reasonable jury could infer that Defendants retaliated against her based upon her participation in the March 8, 2006 meeting with Councilmember Catania. Given the particular facts of this case, Plaintiff cannot meet this initial burden absent evidence that Defendants had knowledge that such a meeting occurred. Her claims of retaliation in violation of the First Amendment and the WPA based on the private meeting with Councilmember Catania

must therefore fail. Accordingly, the Court GRANTS Defendants' [68] Motion for Summary

Judgment insofar as Plaintiff alleges that Defendants impermissibly retaliated against her in

violation of the First Amendment and the WPA based on her private meeting with

Councilmember Catania on March 8, 2006.

        *B.*     *Plaintiff's Motion for Partial Summary Judgment*

        The Court turns finally to consider Plaintiff's [72] Motion for Partial Summary Judgment,

in which she contends that Defendants are precluded from relitigating at trial any claim that

Plaintiff violated the District of Columbia Residency Preference Act. Collateral estoppel bars a

party from relitigating "'(1) [an] identical issue (2) that was fully and fairly litigated and (3)

determined by a valid judgment on the merits (4) in which the issue was essential.'" *Melara v.

China N. Indus. Corp.*, 658 F. Supp. 2d 178, 182 (D.D.C. 2009) (quoting *Rogers v.

Johnson-Norman*, 466 F. Supp. 2d 162, 169 (D.D.C. 2006)).[8] In this case, Plaintiff asserts that

"[t]he District of Columbia has expressed the intention to relitigate at trial the issue of whether

[Plaintiff] violated the D.C. Residency Preference Act." Pl.'s MSJ at 5. Plaintiff contends,

however, that the District is precluded from doing so under the rules of collateral estoppel

because the D.C. Office of Personnel has already found "that [Plaintiff] was not subject to a

---

    [8] Plaintiff asserts in her motion for partial summary judgment that the Court should apply
the District of Columbia's law of collateral estoppel in this case. Pl.'s MSJ at 5-6. Defendants
for their part do not explicitly argue that Plaintiff's position is incorrect, but nonetheless cite to
federal — rather than District — collateral estoppel rules. *See* Defs.' Opp'n at 3. While "it is
'unclear' whether the law of collateral estoppel is procedural or substantive for the purposes of
applying federal or D.C. law, the rules of each jurisdiction are 'substantially similar.'" *Melara*,
658 F. Supp. 2d at 182, n.6 (quoting *Bryson v. Gere*, 268 F. Supp. 2d 46, 55-56 & n. 5 (D.D.C.
2003)). The sole difference between the two jurisdictions is the federal law's additional
consideration of whether application of collateral estoppel would "work a basic unfairness" to the
party bound by the first determination. *Id.* Given the Court's decision herein, this distinction is
not relevant to the instant memorandum opinion.

District of Columbia residency requirement [and] that she [] did not violate any statutory requirement that she remain a District resident." *Id.* at 8. According to Plaintiff, this "finding" by the D.C. Office of Personnel is binding on Defendants. *Id.* She therefore "requests that the jury in this case be advised" that the "charges brought against plaintiff before the District of Columbia Office of Personnel" were ultimately found to be "without merit for the reasons stated by the D.C. Office of Personnel" in its final decision. *Id.* Plaintiff also asks the Court to hold that the D.C. Office of Personnel's "finding . . . that plaintiff did not violate [the] District of Columbia Residency Preference Act is binding on the jury in this case." *Id.*

Unfortunately for Plaintiff, her argument is premised on a mischaracterization of the D.C. Office of Personnel's final decision. Although Plaintiff is correct that the Office of Personnel ultimately dismissed the charges against Plaintiff, it did so based upon its conclusion that "the evidence of record establishes by a preponderance of the evidence that the Agency has not met its Burden of proof in the matter." Pl.'s MSJ, Ex. C (Final Decision and Order to Dismiss regarding Christian Williams Residency Preference Determination) at 12. Specifically, the Office of Personnel dismissed the charges against Plaintiff based on a finding that: (1) the District "ha[d] not met its burden of proof to show that [Plaintiff] was required to live in the District for five years from the date of appointment and that her failure to do so violated the residency requirement resulting in forfeiture of the position;" and (2) "[e]ven assuming *arguendo* that the [Plaintiff] received a residency preference . . . [t]he failure of the Agency to follow its procedures in providing a written notice to the [Plaintiff] and obtaining a written certification that she received notification of the residency requirements deprived [Plaintiff] of adequate notice and does not comply with basic due process." *Id.* Contrary to Plaintiff's assertions, the Office of

Personnel's finding that the District failed to meet its burden of proof or follow its own procedures is not substantively equivalent to an affirmative finding that Plaintiff was never subject to any residency requirement in the first instance, such that the District's claims were "without merit."

In addition, the Court notes that Plaintiff's requests to bar Defendants from proffering certain evidence at trial and to provide certain instructions to the jury regarding the preclusive effect of the Office of Personnel's final decision are premature. Such requests are more appropriately dealt with through a motion in limine rather than through the pending motion for partial summary judgment. At the pre-trial stage in this litigation, the parties will have a more concrete understanding of the type of evidence they intend to introduce at trial as well as the manner in which they intend to utilize such evidence. While the District may arguably be precluded from relitigating at trial the propriety of the Office of Personnel's final decision dismissing the charges against Plaintiff, it does not necessarily follow that Defendants are barred from proffering evidence in support of their position that the charges against Plaintiff were brought for non-retaliatory reasons. To the extent Defendants seek to do so at trial by presenting evidence relating to the Office of Personnel's final decision, rulings regarding the admissibility of such evidence are better left for pre-trial motions in limine. Accordingly, the Court DENIES Plaintiff's [72] motion for partial summary judgment. Plaintiff may re-raise any evidentiary issues relating to the charges against Plaintiff and the Office of Personnel's final decision, as may be appropriate, at the motions in limine stage.

## IV. CONCLUSION

For the reasons set forth above, Defendants' [68] Motion for Summary Judgment is GRANTED-IN–PART and DENIED-IN-PART.  Specifically, Defendants' motion is GRANTED with respect to Plaintiff's claims of retaliation in violation of the First Amendment and the WPA based on her private meeting with the D.C. Councilmember Catania, but is DENIED with respect to Plaintiff's WPA claim based upon her testimony before the D.C. Council.  As such, only Plaintiff's allegation in Count II of the First Amended Complaint that Defendants impermissibly retaliated against her in violation of the WPA for remarks made to the D.C. Council remains viable.  The Court shall also DENY Plaintiff's [72] Motion for Partial Summary Judgment. Plaintiff may re-raise any evidentiary issues relating to the charges against Plaintiff and the Office of Personnel's final decision, as may be appropriate, at the motions in limine stage.

Date:   March 18, 2010

                                               _/s/_____
                                               **COLLEEN KOLLAR-KOTELLY**
                                               United States District Judge