# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHRISTINA CONYERS WILLIAMS,

    *Plaintiff,*

    v.

ROBERT JOHNSON, *et al.*,

    *Defendants.*

Civil Action No. 06-02076 (CKK)

## MEMORANDUM OPINION
(October 31, 2010)

Plaintiff Christina Conyers Williams ("Plaintiff"), brings this action against the District of Columbia (the "District"), and her former supervisors Robert Johnson, in his capacity as the Senior Deputy Director of the Addiction Prevention and Recovery Administration (the "APRA") of the District of Columbia Department of Health (the "DOH"), and David Anthony, in his capacity as Chief of Staff to the Senior Deputy Director (collectively, "Defendants"). Plaintiff contends that Defendants violated her rights under the District of Columbia Whistleblower Protection Act (the "DCWPA"), D.C. Code §§ 1-615.01 *et seq.*, by retaliating against her for remarks she made during testimony before the District of Columbia Council (the "D.C. Council").[1] Presently before the Court are a number of ostensibly evidentiary-related and other

---

[1] The claims at issue in this action have been progressively winnowed down over time. Plaintiff's Amended Complaint initially asserted two causes of action: in the first, Plaintiff alleged that Defendants retaliated against her for activity protected under the First Amendment – namely, Plaintiff's testimony before the D.C. Council and her remarks during a private meeting with a D.C. Councilmember; in the second, Plaintiff alleged that Defendants took or threatened to take "prohibited personnel actions" against her for these same disclosures in violation of the DCWPA. *See* Am. Compl., Docket No. [13], ¶¶ 101-13. The Court dismissed Plaintiff's First Amendment claim insofar as it was based upon her testimony before the D.C. Council and also dismissed any potential DCWPA claim against Defendants Johnson and Anthony in their

pretrial motions that will, when resolved, hopefully narrow the parties' focus as they move closer
to trial.  The Court will address each motion in turn.

## I.  BACKGROUND[2]

Plaintiff was employed as Chief of the Center of Research Evaluation and Grants for the
APRA and, beginning in or about April 2005, was assigned responsibility for the implementation
of the APRA's Client Information System ("ACIS") software, which was intended to allow staff
members to go online to access information collected from the APRA's clients.  *See Williams v.
Johnson*, 701 F. Supp. 2d 1, 3 (D.D.C. 2010).  Johnson, the Senior Deputy Director of the
APRA, was Plaintiff's supervisor at the DOH, while Anthony was his Chief of Staff.  *Id.*

On February 14, 2006, Plaintiff and Johnson attended a routine oversight hearing before
the D.C. Council Committee on Health, headed by Councilmember David Catania.  *Id.* at 4.
During the course of the hearing, Councilmember David Catania asked several questions
regarding the ACIS software.  *Id.*  Johnson beckoned Plaintiff to approach the witness table and
respond to the Councilmember's questions on the APRA's behalf.  *Id.* at 4-5.

Plaintiff did so, providing approximately ten minutes of testimony.  *Id.* at 5.  Plaintiff
testified that, at that time, the ACIS software was capable of collecting only "demographic data"

---

individual capacities.  *See Williams v. Johnson*, 537 F. Supp. 2d 141 (D.D.C. 2008).
Subsequently, the Court granted Defendants' Motion for Summary Judgment with respect to
Plaintiff's First Amendment claim and DCWPA claim insofar as those claims were based upon
Plaintiff's private meeting with a D.C. Councilmember.  *See Williams v. Johnson*, 701 F. Supp.
2d 1 (D.D.C. 2010).  As such, only Plaintiff's claim that Defendants impermissibly retaliated
against her in violation of the DCWPA for remarks made before the D.C. Council remains
viable.  *Id.*

    [2]  The Court assumes familiarity with its prior opinions in this action, which set forth in
detail the factual and procedural background of this case, and shall therefore only address those
facts as are necessary to address the discrete issues currently before the Court.

– *i.e.*, the gender and race of the APRA's clients and the type of drugs that the clients were using. *Id.* Plaintiff also expressed her opinion that the ACIS system would not be fully functional until November 2006. *Id.* According to Plaintiff, these statements revealed that the ACIS software was, despite significant monetary expenditures, a "major failure." *Id.* at 15.

By Plaintiff's account, Defendants' harassment began immediately following her testimony before the D.C. Council. *Id.* at 6. Among other things, Plaintiff alleges that Johnson held an unprecedented "debriefing" session the day after the hearing, during which he blamed Plaintiff for doing a "poor job of answering" Councilmember Catania's questions and for making the APRA look like "crooks," and threatened to hold Plaintiff liable for the failures of the ACIS system. *Id.* at 6-7. According to Plaintiff, from that point forward, her purportedly "good working relationship" with Johnson soured, and additional retaliatory and harassing conduct followed. *Id.*

Not long thereafter, Plaintiff's husband arranged for her to have a private meeting with Councilmember Catania, which took place on March 8, 2006. *Id.* at 7. Those in attendance discussed Defendants' alleged harassment of Plaintiff, as well as various problems regarding the ACIS software and the APRA's contractual relationship with its vendor, Softscape, Inc. ("Softscape"). *Id.*

Plaintiff alleges that Johnson, with assistance from Anthony, then attempted to terminate her for failure to comply with D.C. residency preference requirements – namely, a statutory requirement that she remain a resident of the District of Columbia for a certain length of time. *Id.* at 11. In May 2006, the DOH issued a Notice to Show Cause why Plaintiff's employment should not be forfeited. *Id.* Pre-hearing conferences were held that same month, and an

evidentiary hearing was held in June. *Id.*

The charges were ultimately dismissed, on the basis that (1) the "evidence fail[ed] to establish that [Plaintiff] was granted a residency requirement," and therefore the DOH "ha[d] not met its burden of proof to show that [Plaintiff] was required to live in the District for five years from the date of appointment," and (2) "[e]ven assuming *arguendo* that [Plaintiff] received a residency preference . . . [t]he failure of the [DOH] to follow its procedures in providing a written notice to the [Plaintiff] and obtaining a written certification that she received notification of the residency requirements deprived [Plaintiff] of adequate notice and does not comply with basic due process." *Id.*

## II. LEGAL STANDARD

Motions *in limine* are designed to narrow the evidentiary issues at trial. The Federal Rules of Evidence generally permit the admission of "relevant evidence" – *i.e.*, evidence having "any tendency" to make the existence of any fact of consequence more probable or less probable – provided it is not otherwise excluded by the Rules, the Constitution, or an Act of Congress, and its probative value is not "substantially outweighed" by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or the needless presentation of cumulative evidence. Fed. R. Evid. 401-03. In deference to their familiarity with the details of the case and greater experience in evidentiary matters, district courts are afforded broad discretion in rendering evidentiary rulings, a discretion which extends to assessing the probative value of the proffered evidence and weighing any factors against admissibility. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008).

In light of their limited purpose, motions in *limine* "should not be used to resolve factual

disputes," which remains the "function of a motion for summary judgment, with its accompanying and crucial procedural safeguards." *C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). Rather, parties should target their arguments to demonstrating why certain categories of evidence should (or should not) be introduced at trial, and direct the district court to specific evidence in the record that would favor or disfavor the introduction of those particular categories of evidence. *U.S. ex rel. El-Amin v. George Washington Univ.*, 533 F. Supp. 2d 12, 19 (D.D.C. 2008). With these principles in mind, the Court turns to the various motions brought by the parties.

## III. DISCUSSION

Although the Court takes this opportunity to resolve the parties' outstanding pretrial motions, and certainly does not foresee a need to revisit the issues addressed herein, the Court nonetheless recognizes that it cannot predict with absolute certainty how events will unfold at trial. Accordingly, this Memorandum Opinion sets forth the Court's analysis based upon the record as it now stands and the arguments articulated by the parties in their respective motions. As evidence is presented at trial, however, the parties may find it desirable to re-raise discrete evidentiary issues addressed here. To be clear, they are not absolutely foreclosed from doing so. Where appropriate, a party wanting to revisit an evidentiary ruling should, conspicuously, bring the matter to the Court's attention and be prepared to summarize the Court's original ruling and explain why that ruling should be modified in light of new evidence or a change in circumstances. However, the parties are cautioned that this is not an invitation to recycle old arguments. With these caveats, the Court proceeds to the merits of the parties' respective motions.

### A.    Plaintiff's Motion in Limine to Bar the District from Presenting Evidence Concerning its Defense under § 12-309 of the D.C. Code

Plaintiff has moved *in limine* to, in her words, "bar[] the district from litigating its claimed defense under § 12-309 of the District of Columbia Code."  Pl.'s Mot. *in Limine* and Mem. of P. & A. in Supp. Thereof to Bar the District from Litigating its 12-309 Defense in View of the Passage of the 2009 Amendment to the Whistleblower Protection Act, Docket No. [90], at 1.  Historically, section 12-309 of the D.C. Code has required aggrieved employees to notify the District of claims pursuant to the DCWPA within six months after the alleged injury or damage was sustained.  *See Payne v. District of Columbia*, __ F. Supp. 2d __, 2010 WL 3833036, at *12 (D.D.C. Sept. 29, 2010).  Here, following her resignation, Plaintiff allegedly did not provide proper notice that she intended to assert a claim for constructive discharge in violation of the DCWPA.  *See* Def.'s Omnibus Opp'n to Pl.'s Mots. *in Limine* ("Def.'s Opp'n"), Docket No. [95], at 2 n.1.[3]

In support of her motion *in limine*, Plaintiff relies upon certain amendments to the DCWPA, which were signed by D.C. Mayor Adrian Fenty in January 2010 and entered into effect in March 2010 – in both instances, several months after dispositive motions in this action were due.  Among other things, those amendments repeal the requirement that individuals asserting claims pursuant to the DCWPA notify the District of their claims under § 12-309.  *Compare* D.C. Code § 1-615.54(a) (2009) ("A civil action brought pursuant to this section shall comply with the notice requirements of § 12-309"), *with* D.C. Code § 1-615.54(a)(3) (2010)

---

[3]  The precise contours of the District's presumed § 12-309 defense are not clear.  In particular, the parties' respective papers do not indicate whether the District's defense is limited to Plaintiff's claim for constructive discharge or extends to other allegedly retaliatory acts.

("Section 12-309 shall not apply to any civil action brought under this section."). The parties principally dispute whether the amendments should apply retroactively. However, Plaintiff's moving papers go much farther, addressing in depth why the notice she provided to the District is, irrespective of the retroactive application of the amendments, compliant with the strictures of § 12-309. *See* Pl.'s Reply Mem. in Supp. of Pl.'s Motion *in Limine* to Bar the District from Litigating its 12-309 Defense in View of the Passage of the 2009 Amendment to the Whistleblower Protection Act, Docket No. [98], at 4-9.

The Court agrees that resolution of whether Plaintiff was required to provide notice under § 12-309 and, if so, whether the notice she provided was sufficient, could substantially narrow the issues that need to be addressed at trial, but disagrees that a motion *in limine* is the proper vehicle to do so. Such issues are more appropriately addressed in the context of a motion for summary judgment, with its accompanying and crucial procedural safeguards. *See C & E Servs.*, 539 F. Supp. at 323. Accordingly, the Court shall deny Plaintiff's [90] Motion *in Limine*. Nevertheless, Plaintiff raises relatively straightforward legal questions that may be resolved by the Court. As such, to the extent they intend to assert a § 12-309 defense in this action, Defendants shall promptly file a supplemental motion for summary judgment addressing these discrete issues.[4] The parties shall propose an appropriate briefing schedule.

---

[4] The Court is mindful of Plaintiff's observation that, irrespective of the recent change in law, Defendants could have raised the issue of the sufficiency of any § 12-309 notice in a motion for summary judgment. Although the Federal Rules of Civil Procedure do not require parties to file motions for summary judgment, *see* Fed. R. Civ. P. 56(b) ("A party against whom relief is sought *may* move . . . for summary judgment on all or part of the claim.") (emphasis added), the Court agrees that Defendants could have – and should have – raised any § 12-309 defense in its earlier papers. Although the Court is, for this reason, hesitant to allow Defendants leave to file a supplemental motion for summary judgment, the permissive nature of the Federal Rules of Civil Procedure, coupled with the recent change in controlling law and the Court's view that resolution

**B.** *Plaintiff's Motion* in Limine *to Bar the District from Relitigating Plaintiff's Compliance with D.C. Residency Preference Requirements*

Plaintiff next asks this Court – again, in her words – to rule that the District "is bound by the decision of its own Office of Personnel that found that [she] did not violate the District of Columbia Residency Preference Act." Pl.'s Mot. *in Limine* and Mem. of P. & A. in Supp. Thereof to Bar the District from Rearguing the Merits of the Attempt to Wrongfully Terminate Pl.'s Employment with the District of Columbia, Docket No. [91], at 1 (emphasis omitted). As described above, in May 2006, the DOH commenced proceedings to determine whether Plaintiff's employment with the APRA should be forfeited due to non-compliance with D.C. residency preference requirements. After an evidentiary hearing was held, the proceedings were ultimately dismissed by the D.C. Office of Personnel. Plaintiff now contends, citing the doctrine of collateral estoppel, that the final decision of the D.C. Office of Personnel should have preclusive effect and prevent the District from relitigating at trial the question of whether she violated D.C. residency preference requirements.

Plaintiff's argument is not without some irony. This is not the first time the Court has heard this argument; Plaintiff raised, and the Court rejected, the identical argument in the context of Plaintiff's Motion for Partial Summary Judgment. *See Williams v. Johnson*, 701 F. Supp. 2d 1, 19-20 (D.D.C. 2010). As set forth in this Court's prior Memorandum Opinion, Plaintiff's entire collateral estoppel argument is "premised on a mischaracterization of the D.C. Office of Personnel's final decision," which dismissed the charges against Plaintiff on the basis that the

---

of these issues may shorten the duration of trial and preserve scarce judicial resources, counsel in favor of permitting Defendants to file a narrow supplemental motion for summary judgment in these limited circumstances.

District "failed to meet its burden of proof or follow its own procedures." *Id.* This Court stated, in no uncertain terms, that the D.C. Office of Personnel's decision was "not substantively equivalent to an affirmative finding that Plaintiff was never subject to any residency requirement, such that the District's claims were 'without merit.'" *Id.* at 20. The nature of the D.C. Office of Personnel's final decision has not changed in the months intervening since Plaintiff first raised this argument. This is the law of the case, and Plaintiff's argument fails for the very same reasons it did over seven months ago.

True, in denying Plaintiff's Motion for Partial Summary Judgment, the Court did observe that Plaintiff's requests concerning the presentation of evidence at trial were "more appropriately dealt with through a motion in limine," *id.*, but that was not an invitation to recycle the very same argument. To the extent Plaintiff's motion may be construed as suggesting that evidence concerning the propriety of the District's investigation is of such little probative value that it is substantially outweighed by considerations of undue delay or waste of time (a dubious reading indeed), it would still be meritless. One of Plaintiff's principal contentions in this action is that the District impermissibly retaliated against her by investigating (and subsequently bringing charges against her) concerning her compliance with D.C. residency preference requirements. *See* Am. Compl. ¶¶ 60-70. For Plaintiff to prevail, the jury must assess whether the District's actions were mere pretext for retaliation. *See Payne*, 2010 WL 3833036, at *12 (citing *Johnson v. District of Columbia*, 935 A.2d 1113, 1118-19 (D.C. 2007)). Whether Plaintiff claimed a residency preference and maintained a residence in D.C. surely bears upon the question of

whether the District's actions were undertaken for legitimate, non-retaliatory reasons.[5]  *Id.*  For

these reasons, the Court shall deny Plaintiff's [91] Motion *in Limine*.  At the pretrial conference

in this action, the parties should be prepared to address the question of what evidence may be

presented at trial concerning the District's investigation into Plaintiff's compliance with D.C.

residency requirements.

        C.        *Plaintiff's Motion* in Limine *to Bar the District from Claiming that a Legitimate
                  Contract Existed with Softscape*

Plaintiff also moves "for an order barring the District from claiming that a legitimate,

bona fide contract with Softscape . . . existed in February 2005."  *See* Pl.'s Mot. *in Limine* and

Mem. of P. & A. in Supp. Thereof to Bar the District from Claiming that a Legitimate, Bona Fide

Contract with Softscape Existed in February, 2005 ("Pl.'s Softscape Mem."), Docket No. [93], at

1.  Once again, Plaintiff misconstrues the purpose of a motion *in limine*.  Here, Plaintiff does not

argue that the contractual relationship between the APRA and its vendor, Softscape, has no

bearing on the issues to be presented at trial.  Quite the contrary, Plaintiff contends that the

alleged absence of a *bona fide* contract between the APRA and Softscape "supplies a motive" for

the District's efforts to have Plaintiff terminated.[6]  *Id.* at 4.  Indeed, it is the District that suggests

---

[5]  Strictly speaking, the question of whether Plaintiff actually violated D.C. residency requirements is immaterial.  Rather, the question for the jury is whether the District acted as it did out of a *bona fide* belief that Plaintiff was not in compliance.  Of course, the former bears on the latter, the primary limitation being that the District cannot rely upon after-acquired evidence to establish the contemporaneous motives behind its actions.

[6]  How this would even be helpful to Plaintiff is not immediately apparent.  Plaintiff appears to argue that, if there was no such contract, Plaintiff's supervisors would have reason to believe that she would disclose that fact to the D.C. Council.  *See* Pl.'s Softscape Mem. at 4.  The Court fails to see how this would "assist [Plaintiff] in proving causation" on her DCWPA claim. *Id.*  It is undisputed that Plaintiff did not actually disclose this information to the D.C. Council in the course of the February 14, 2006 hearing – the only claim remaining in this action.  While the

that the contractual relationship between the APRA and Softscape has little relevance to the remaining claims in this action. *See* Def.'s Opp'n at 4.

The curious positioning of the parties reveals the true nature of Plaintiff's motion, which is not directed towards demonstrating why certain categories of evidence should or should not, *for evidentiary reasons*, be introduced at trial. Instead, the sum total of Plaintiff's argument (so far as the Court can tell) is that the District failed to produce a copy of a physical contract between the APRA and Softscape either in connection with its mandatory initial disclosures or in response to Plaintiff's discovery requests, and that these alleged failures entitle her to an adverse inference. *See* Pl.'s Softscape Mem. at 4. Properly speaking, Plaintiff's motion is not a motion *in limine* at all, but rather a disguised motion for sanctions pursuant to Fed. R. Civ. P. 37.[7] But even assuming Plaintiff's allegations to be true, even assuming that the complained-of conduct falls within the ambit of Fed. R. Civ. P. 37, and even assuming Plaintiff was not first required to

---

subject of the APRA's contractual relationship with Softscape may have had some bearing upon Plaintiff's private meeting with D.C. Councilmember Catania, *see* Am. Compl. ¶¶ 54-55, the Court granted Defendants summary judgment on that claim. *See Williams v. Johnson*, 701 F. Supp. 2d 1, 16-19 (D.D.C. 2010). As a result, the causal connection that must be drawn is between Plaintiff's testimony before the D.C. Council and the alleged retaliatory acts – that, and nothing else. Speculation that Plaintiff's supervisors may have taken certain employment actions against Plaintiff out of a concern that she might hypothetically disclose the nature of the contractual relationship between the APRA and Softscape, if anything, would seem to *undermine* Plaintiff's ability to prove such a causal connection. It is not, however, this Court's duty to tell Plaintiff how to prosecute her case.

     [7] Given the basis of Plaintiff's motion, it is non-sensical for her to suggest that its resolution in her favor would bear upon the credibility of Johnson, who apparently testified in his deposition that he provided Plaintiff with a copy of the contract. *See* Pl.'s Softscape Mem. at 4. Even if Plaintiff were somehow entitled to an adverse inference prohibiting the District from disputing the absence of a contractual relationship between the APRA and Softscape at trial, that inference could not be used to impeach Johnson. One of the peculiarities of our legal system is that a "fact" may be undisputed for various procedural reasons, and yet not true in actuality.

file a motion to compel, Plaintiff's motion would nevertheless fail as untimely. *See Long v. Howard Univ.*, 561 F. Supp. 2d 85, 91 (D.D.C. 2008) (even absent a specified time limit, motions for sanctions must be filed without "unreasonable delay"). In the long and tortured history of discovery in this action, the Court expressly informed the parties that discovery would close, after multiple extensions, on January 31, 2009. *See* Min. Order (Jan. 30, 2009). Plaintiff was cautioned that she could not "seek the Court's intervention [in discovery] beyond January 31, 2009." *Id.* As such, Plaintiff cannot be heard to complain of alleged discovery failures at this late date, now well over a year-and-a-half after the close of discovery. Moreover, given that the District has admitted that the contractual relationship between the APRA and Softscape has little, if any, relevance to the remaining claims in this action, the Court harbors no concern that what minimal evidence that may touch upon the issue at trial will needlessly delay the proceedings. Accordingly, the Court shall deny Plaintiff's [93] Motion in *Limine*.

> D.    *The District's Motion* in Limine *to Exclude Evidence Concerning Damages for Back Pay or Front Pay*

The District, for its part, seeks to preclude Plaintiff from introducing evidence or argument at trial concerning her entitlement to damages for back pay or front pay, on the basis that Plaintiff allegedly "voluntarily resigned" from her position with the APRA. *See* Mem. of P. & A. in Supp. of the District of Columbia's Mots. *in Limine* ("Def.'s Mem."), Docket No. [92].[8]

---

[8] The District initially filed a four-part motion *in limine* seeking to preclude the introduction of, in addition to evidence concerning damages for back pay or front pay, (a) the declaration of Dorothy Smith, (b) purported notes from a chief-of-staff meeting, and (c) the transcript of the hearing before the D.C. Council. *See* Def.'s Mem. at 1. Plaintiff opposed the District's motion in its entirety. *See* Pl.'s Opp'n to the District of Columbia's Mots. *in Limine*, Docket No. [94]. Thereafter, the District filed a reply in which it indicated that the parties have reached agreement on a jury instruction that "will cure the District's objection to admission" of the last of these items – *i.e.*, the transcript of the hearing before the D.C. Council. *See* Def.'s

The District's argument proceeds in two stages: first, because Plaintiff resigned from her position with the APRA to assume a position with the federal government, Plaintiff cannot establish the requisite nexus between the attendant decrease in her income and the alleged retaliatory conduct at issue in this action; and, second, Plaintiff cannot resort to the "constructive discharge" doctrine to salvage her post-resignation damages claim because her working conditions at the APRA were not so "intolerable" as to support a claim for constructive discharge. *Id.* at 4.

Under District of Columbia law, a constructive discharge occurs when an employer deliberately makes working conditions "intolerable," and drives the employee to involuntarily quit. *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 362 (D.C. 1993). Generally speaking, working conditions "rise to the requisite level of intolerableness if they 'would lead a reasonable person to resign.'" *Id.* (quoting *Atl. Richfield Co. v. District of Columbia Comm'n on Human Rights*, 515 A.2d 1095, 1101 (D.C. 1986)).[9] Once established, a constructive discharge is treated

_____

Reply to Pl.'s Opp'n to its Mots. *in Limine*, Docket No. [100], at 1. Therefore, the Court shall deny that prong of the District's motion *in limine* as moot. Separately, after reviewing Plaintiff's proffer in opposition, the District withdrew its motion as it relates to the first two items – *i.e.*, the declaration of Dorothy Smith and the purported notes from a chief-of-staff meeting – without prejudice to renew after Plaintiff has attempted to provide a proper foundation for their admission at trial. *See id.*; Min. Order (Oct. 26, 2010); Def.'s Not. Regarding its Mot. *in Limine*, Docket No. [106], at 1. As such, the Court shall deny the District's motion, as it relates to these two items, as withdrawn.

[9] Perplexingly, Plaintiff objects to the District's reliance on the Supreme Court's formulation of the constructive discharge doctrine in *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004). The *Suders* Court, in addressing a hostile environment claim asserted under federal employment discrimination law, described the relevant inquiry as follows: whether working conditions "become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Id.* at 141. Admittedly, the D.C. Court of Appeals did not expressly endorse this exact formulation in at least one case subsequent to the Supreme Court's decision. *See Darrow v. Dillingham & Murphy, LLP*, 902 A.2d 135, 138 (D.C. 2006). However, the Court simply cannot discern any material distinction between the two formulations: both require that Plaintiff establish that her working conditions were so intolerable that a reasonable

as "functionally the same as an actual termination in damages-enhancing respects."
*Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004).

Although the District broadly claims that none of Plaintiff's allegations rise to the requisite level of "intolerableness," its perfunctory moving papers point to but one specific fact – namely, that Plaintiff waited to resign until June 2007, several months after her "primary tormentor" left the APRA. *See* Def.'s Mem. at 4. Plaintiff counters that she commenced her search for alternative employment long before her actual resignation, as early as October 2006. *See* Williams Decl. (Aug. 5, 2010), Docket No. [94-3], ¶ 1. In addition, Plaintiff points to excerpts from her deposition testimony, which she contends outline the circumstances that compelled her to resign from the APRA. *See* Williams Dep. (Dec. 22, 2008), Docket No. [94-2], at 130:3-137:20.

The Court need not – indeed, should not – resolve these competing claims here. The District's entire motion *in limine* hinges on the contention that Plaintiff cannot establish that she was constructively discharged, but whether a plaintiff has met his or her burden in this regard is generally "a question for the trier of fact." *Arthur Young*, 631 A.2d at 362. In essence, the District asks this Court to decide, on a motion in *limine*, that there is no genuine issue as to the "intolerableness" of Plaintiff's working conditions at the APRA. Like Plaintiff, the District misconstrues the purpose of a motion *in limine*, which should not be used to resolve factual disputes among the parties. *C & E. Servs.*, 539 F. Supp. at 323; *see also U.S. ex rel. Miller v. Bill Harbert Int'l Constr.*, No. 95-1231, 2007 WL 861094, at *2 (D.D.C. Mar. 20, 2007) (denying motion *in limine* addressed to issue of material fact); *Winstead v. District of Columbia*, No. 04-

person, presented with the same conditions, would be led to resign.

887, 2010 WL 2653323, at *4 (D.D.C. July 2, 2010) (the sufficiency of evidence "is an issue to be determined by the finder of fact upon consideration of all of the evidence presented"). Indeed, at least one district court has denied a nearly identical motion *in limine*. *See Davis v. Gen. Accident Ins. Co. of Am.*, No. 98-4736, 2000 WL 1780235, at *4 (E.D. Pa. Dec. 4, 2000) (rejecting defendants' argument that evidence on back and front pay losses should be excluded; defendants were "asking the Court to weigh in on the merits of the . . . constructive discharge claim").

Simply put, the District has cloaked a motion for summary judgment in the form of a motion *in limine*, but the deadline to file dispositive motions has long since passed. *See* Order (Feb. 14, 2009), Docket No. [65]; Am. Min. Order (July 21, 2009).[10] Similarly, for obvious reasons, it is premature for motions for judgment as a matter of law. *See* Fed. R. Civ. P. 50(a)(1). Accordingly, the Court shall deny the District's [92] Motion *in Limine* as it relates to evidence or argument concerning damages for back pay or front pay.[11]

E.    *Plaintiff's Motion to Clarify her Prayer for Relief*

Lastly, Plaintiff seeks an order "clarify[ing] her prayer for relief to allow her full relief available under the District of Columbia Whistleblower Act." Pl.'s Mot. to Clarify her Prayer for Relief to Request Full Relief Available Under the District of Columbia Whistleblower Act and

---

[10] In contrast to Defendants' § 12-309 defense (which was raised by Plaintiff, is affected by a recent change in controlling law, and presents relatively straightforward legal questions suitable for resolution by the Court), the Court sees no reason to excuse Defendants' failure to include Plaintiff's constructive discharge claim in its original motion for summary judgment.

[11] Even if the District's motion was timely and otherwise procedurally sound, the Court concludes that the District's showing is woefully inadequate to support a finding that, as a matter of law, Plaintiff would be unable to meet the legal standard for constructive discharge at trial.

Mem. of P. & A. in Supp. Thereof ("Pl.'s Mot. to Clarify"), Docket No. [99], at 1.  Although hardly the model of artful drafting, Plaintiff's motion appears to be directed towards remedying the omission of an express demand for back pay or front pay in the *ad damnum* clause in the Amended Complaint.[12]  *See id.* at 1.  As a threshold matter, it is not entirely clear to this Court why damages for back pay and front pay would not be captured within the ambit of Plaintiff's request for "such other and further relief as the Court may consider just and proper."  Am. Compl. at 24.  In any event, the Federal Rules of Civil Procedure are clear: every final judgment other than a default judgment "should grant the relief to which the party is entitled, even if the party has not demanded that relief in its pleadings."  Fed. R. Civ. P. 54(c).  Although the courts have carved out an exception to this rule where the opposing party would suffer sufficient prejudice were the omitted relief granted, *see, e.g.*, *First Am. Corp. v. Al-Nahyan*, 17 F. Supp. 2d 10, 28 (D.D.C. 1998), the District claims no such prejudice here and actually concedes that Plaintiff may be awarded all the relief to which she is legally entitled in the event she prevails on her claim under the DCWPA.[13]  *See* Def.'s Resp. to Pl.'s Mot. to Clarify her Prayer for Relief,

---

[12] Elsewhere, Plaintiff further requests "that the [C]ourt rule that she is entitled to the difference between her salary from the Public Health Service and the salary she would have earned had she not been constructively discharged."  Pl.'s Mot. to Clarify at 2.  Plaintiff's request, made in passing and without citation to any legal authority, presents a question more appropriately raised in the context of the pretrial conference; at that conference, the parties should be prepared to address what supplemental briefing on damages, or other legal issues, may be helpful in anticipation of the trial in this action.

[13] The DCWPA expressly contemplates the following categories of relief: an injunction; reinstatement to the same or an equivalent position; reinstatement of the employee's seniority rights; restoration of lost benefits; back pay and interest on back pay; compensatory damages; and reasonable costs and attorneys' fees.  D.C. Code § 1-615.54(a)(1) (2010).  While the statute does not directly mention front pay, the D.C. Court of Appeals has held that, in appropriate circumstances, an award of front pay may be an appropriate substitute for reinstatement.  *See Watkins v. District of Columbia*, 944 A.2d 1077, 1082-83 (D.C. 2008).  Both front pay and back

Docket No. [105], at 1-2.  Accordingly, the Court shall grant Plaintiff's [99] Motion to Clarify insofar as Plaintiff will not be precluded from seeking damages for back pay and front pay based upon the omission of an express reference to those damages in the Amended Complaint and deny Plaintiff's Motion to the extent it may be construed to seek other relief.

## IV.  CONCLUSION

The Court has considered the remaining arguments tendered by the parties, and has concluded that they are without merit.  Therefore, and for the reasons stated above, the Court shall:

1. DENY Plaintiff's [90] Motion *in Limine* to Bar the District from Litigating its 12-309 Defense in View of the Passage of the 2009 Amendment to the Whistleblower Protection Act;

2. DENY Plaintiff's [91] Motion *in Limine* to Bar the District from Rearguing the Merits of the Attempt to Wrongfully Terminate Plaintiff's Employment with the District of Columbia;

3. DENY Plaintiff's [93] Motion *in Limine* to Bar the District from Claiming that a Legitimate, Bona Fide Contract with Softscape Existed in February, 2005;

4. DENY the District's [92] Motions *in Limine*; and

5. GRANT-IN-PART Plaintiff's [99] Motion to Clarify her Prayer for Relief insofar as Plaintiff will not be precluded from seeking damages for back pay or front pay based upon the omission of an express reference to those damages in the Amended Complaint and DENY-IN-PART Plaintiff's Motion to Clarify in all other respects.

---

pay are equitable remedies, *see Washington Convention Ctr. Auth. v. Johnson*, 953 A.2d 1064, 1081-81 (D.C. 2008), and the parties should be prepared to discuss at the pretrial conference in this action what evidence should be presented to the jury for its consideration and what evidence is more appropriately presented to the Court alone.

An appropriate Order accompanies this Memorandum Opinion.

Date:   October 31, 2010

                                        _____/s/_____
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge