# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **CHRISTINA CONYERS WILLIAMS**, <br><br> *Plaintiff*, <br><br> v. <br><br> **ROBERT JOHNSON**, *et al.*, <br><br> *Defendants*. |

Civil Action No. 06-02076 (CKK)

## MEMORANDUM OPINION
(May 23, 2011)

Plaintiff Christina Conyers Williams ("Williams") was once employed by the Addiction Prevention and Recovery Administration of the District of Columbia Department of Health. In December 2006, she commenced this civil action against the District of Columbia and two of her former supervisors.[1] Over the years, the claims at issue have been progressively winnowed down through motions practice and by the decisions of this Court. Today, the exclusive focus of the dispute is Williams's contention that she was retaliated against in violation of the District of Columbia Whistleblower Protection Act, D.C. Code §§ 1-615.01 *et seq.*, for testimony that she gave before the District of Columbia Council. She claims that she was subjected to a concerted campaign of harassment in reprisal for her protected testimony, a campaign which she contends ultimately compelled her to resign her employment to accept a less lucrative position elsewhere. In connection with these allegations, she seeks to recover back pay and front pay representing the difference in her lower earnings in her new position and the earnings that she would have

---

[1] While it has not always been the case, the two individual defendants now appear in this action solely in their official capacities.

received had she remained employed with the District of Columbia.

Presently pending before the Court is the District of Columbia's [111] Supplemental Motion for Summary Judgment, in which the District of Columbia contends that Williams is precluded from securing the aforementioned back pay and front pay for a single reason—namely, because she purportedly failed to provide adequate pre-suit notice of her claims following her resignation. Williams does not dispute that she did not provide pre-suit notice after she resigned her position. Instead, she counters that, in the time since she commenced this action, the District of Columbia Council has enacted the Whistleblower Protection Act of 2009, D.C. Act 18-265, which amended the underlying statute to eliminate the pre-suit notice requirement altogether, and she argues that the amended version of the statute should be applied in this case.[2] The Court agrees. Therefore, based upon a searching review of the parties' submissions, the relevant authorities, and the record as a whole, the shall deny the District of Columbia's motion in its entirety.[3]

---

[2] Williams argues in the alternative that the pre-suit notice that she provided *before* she actually resigned her position was sufficiently broad to satisfy the pre-suit notice requirements with respect to any claims arising out of her resignation, but the Court need not—and does not—reach that question here because it concludes that no such notice was required. Nonetheless, the Court observes that there is some question as to whether the pre-suit notice that Williams provided would have sufficed to discharge her obligations. *See Francis v. District of Columbia*, 731 F. Supp. 2d 56, 76 (D.D.C. 2010) (concluding that the plaintiff failed to provide adequate pre-suit notice of claims when notice was provided before the injury occurred); *Kennedy v. District of Columbia Gov't*, 519 F. Supp. 2d 50, 58 (D.D.C. 2007) (same).

[3] While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents, listed in chronological order of their filing: Def.'s Mem. of P. & A. in Supp. of its Suppl. Mot. for Partial Summ. J., ECF No. [111]; Def.'s Stmt. of Material Facts, ECF No. [111-1]; Pl.'s Opp'n to Def.'s Suppl. Mot. for Partial Summ. J., ECF No. [113]; Pl.'s Resp. to Def.'s Suppl. Stmt. of Material Facts, ECF No. [113-2]; Def.'s Reply to Pl.'s Opp'n to Def.'s Suppl. Mot. for Partial Summ. J., ECF No. [117]; Amicus Curiae Br., ECF No. [118]; Def.'s Resp. to Amicus Curiae Br., ECF No. [120].

# I. BACKGROUND

The Court assumes familiarity with its prior opinions in this action, which together set forth in detail the factual and procedural background of this case. *See Williams v. Johnson*, 537 F. Supp. 2d 141 (D.D.C. 2008); *Williams v. Johnson*, 701 F. Supp. 2d 1 (D.D.C. 2010); *Williams v. Johnson*, 747 F. Supp. 2d 10 (D.D.C. 2010). The Court shall therefore limit its discussion here to those facts that are most germane to the instant motion. In addition, while the pending motion is contested, there is surprisingly little disagreement as to the underlying facts, obviating in large part the need to make specific references to the record. The Court will therefore reference the record primarily when highlighting points of disagreement and contention.

Williams was formerly employed as Chief of the Center of Research Evaluation and Grants for the Addiction Prevention and Recovery Administration (the "APRA") of the District of Columbia Department of Health. Beginning in or about April 2005, she was assigned responsibility for the implementation of the APRA's Client Information System ("ACIS") software, which was intended to allow staff members to access information collected from the APRA's clients. On February 14, 2006, Williams and her supervisor attended a routine oversight hearing before the District of Columbia Council Committee on Health, which was headed by Councilmember David Catania. During the course of the hearing, Councilmember Catania asked several questions concerning the ACIS software. Her supervisor beckoned Williams to approach the witness table and respond to the Councilmember's questions. Williams did so, providing approximately ten minutes of testimony. According to Williams, her statements revealed that the ACIS software was, despite significant monetary expenditures, a major failure.

By Williams's account, a concerted campaign of harassment and retaliation against her

began immediately on the heels of her testimony before the District of Columbia Council. She contends that her supervisors reprimanded her, repeatedly threatened to terminate her employment, removed her responsibilities and staff, and moved her office to a less desirable location. Williams alleges that her supervisors eventually attempted to terminate her employment on the pretext that she failed to comply with residency preference requirements—namely, a statutory requirement that she remain a resident of the District of Columbia for a certain length of time.

On August 18, 2006, Williams, through counsel, sent the first of what would be four letters to the District of Columbia's Office of Risk Management setting forth in considerable detail her allegations that she had been the target of harassment and efforts to wrongfully terminate her employment as a result of her testimony before the District of Columbia Council. *See* Def.'s Ex. C (Aug. 18, 2006 Ltr. from J. Karl, Jr.). The letter was expressly styled as a pre-suit notice of claims under D.C. Code § 12-309. *See id.*

Williams asserts that she began looking for alternative employment in October 2006. *See* Def.'s Ex. B (Decl. of Christina Conyers Williams), ¶ 1. While her search was allegedly ongoing, Williams sent three more pre-suit notice letters to the District of Columbia's Office of Risk Management—one on October 13, 2006, a second on November 29, 2006, and a third on March 19, 2007. *See* Def.'s Ex. D (Oct. 13, 2006 Ltr. from J. Karl, Jr.), Ex. E (Nov. 29, 2006 Ltr. from J. Karl., Jr.), & Ex. F (Mar. 19, 2007 Ltr. from J. Karl, Jr.). Each letter added to Williams's allegations that she had been the target of harassment and efforts to wrongfully terminate her employment. When Williams sent the last of her letters, she was still employed.

Williams resigned her employment in June 2007 to accept a less lucrative position with

the U.S. Public Health Service. Williams did not send another pre-suit notice letter to the District of Columbia's Office of Risk Management at any time following her resignation in order to supplement her allegations. Nonetheless, in this action, Williams seeks back pay and front pay representing the difference in her earnings in her new position with the federal government and the earnings that she would have received had she remained employed with the APRA.[4]

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that it] . . . is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact, and therefore "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly

---

[4] Parenthetically, the Court pauses to observe that the parties have long shared an assumption about the scope of this action, an assumption which the Court need not—and does not—question. Specifically, both parties have for quite some time operated under the assumption that the allegations in the operative iteration of the Complaint are sufficiently broad to support a claim that Williams was constructively discharged from her position with the APRA, even though Williams may have technically filed that iteration of the Complaint a short time *before* she actually resigned. *See* First Am. Compl., ECF No. [13]. The assumption is certainly not an unreasonable one. In her Complaint, Williams alleged that her supervisors took a wide variety of adverse employment actions against her in reprisal for her testimony; notably, she averred—perhaps partly in anticipation of what would eventually transpire—that the prohibited personnel actions included termination. *Id.* ¶ 110. As this action has progressed over the years, the parties have reasonably proceeded as if Williams was pursuing a claim that she was constructively discharged in connection with her resignation from the APRA. Simply by way of example, when the District of Columbia moved *in limine* to preclude Williams from introducing evidence concerning the difference between her purportedly lower earnings in her new position with the federal government and her expected earnings had she remained employed by the District of Columbia, both parties clearly understood that Williams intended to pursue a claim for constructive discharge in this action, which the District of Columbia characterized as a necessary prerequisite to Williams's request for back pay and front pay. *See* Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. *in Limine*, ECF No. [92]; Pl.'s Opp'n to Def.'s Mot. *in Limine*, ECF No. [94]; Def.'s Reply to Pl.'s Opp'n to its Mot. *in Limine*, ECF No. [100].

5

preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in her favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477

U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted," *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted). Stated differently, the mere existence of a "scintilla of evidence" in support of the non-movant's position will not suffice; there must be enough evidence on which the jury could reasonably find for the non-movant. *Talavera v. Shah*, __ F.3d __, 2011 WL 1120285, at *2 (D.C. Cir. Mar. 29, 2011).

## III. DISCUSSION

When the District of Columbia Council first enacted the Whistleblower Protection Act (the "DCWPA"), D.C. Code §§ 1-615.01 *et seq.*, it did so based on the finding that "the public interest is served when employees of the District government are free to report waste, fraud, abuse of authority, violations of law, or threats to public safety without fear of retaliation or reprisal." D.C. Code § 1-615.51 (2011). Consistent with this legislative finding, the DCWPA prohibits a broad category of adverse employment actions taken in reprisal for protected disclosures, providing that "[a] supervisor shall not take, or threaten to take, a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure." *Id.* § 1-615.53(a) (2011).

In its original form, the DCWPA required any plaintiff invoking its protections to provide the District of Columbia with written notice of their claims prior to bringing suit. *See* D.C. Code § 1-615.54(a) (2006) ("A civil action brought pursuant to this section shall comply with the

notice requirements of § 12-309").[5] That is no longer the case. While this action was pending, the District of Columbia Council passed the Whistleblower Protection Act of 2009, D.C. Act 18-265, which made a number of changes to the DCWPA.[6] Most notably, the District of Columbia Council unambiguously eliminated the requirement that a plaintiff seeking to invoke the protections of the DCWPA provide the District of Columbia with written notice of her claims prior to bringing suit. *See* D.C. Code § 1-615.54(a)(3) (2011) ("Section 12-309 shall not apply to any civil action brought under this section."). As a result, the Court is left with two fundamentally irreconcilable statutory commands—the first in effect at the time this action was commenced and the time Williams's claims accrued, and the second in effect today. This motion turns on a straightforward question—which version should the Court apply?

While there may be a presumption against retroactive legislation that is "deeply rooted in our jurisprudence," *Landsgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994), courts have historically drawn a distinction between laws that affect substantive rights or obligations and laws that affect procedural rights or obligations. Substantive legislation is presumed to operate prospectively, *Lacek v. Washington Hosp. Ctr. Corp.*, 978 A.2d 1194, 1197 (D.C. 2009), but procedural legislation is presumed to apply to pending cases, *Montgomery v. District of Columbia*, 598 A.2d 162, 166 (D.C. 1991). Viewed from a slightly different perspective,

---

[5] Section 12-309 provides, in pertinent part, that "[a]n action may not be maintained against the District of Columbia . . . unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage." D.C. Code § 12-309 (2011).

[6] The Court has no occasion to address the impact of any other changes that may have been made by the Whistleblower Protection Act of 2009.

legislation cannot be said to be "truly retroactive" unless it changes the legal consequences of primary conduct engaged in before its effective date. *Lacek*, 978 A.2d at 1197 (citing *Landsgraf*, 511 U.S. at 269 n.3).

The distinction between substantive and procedural legislation is not readily reduced to abstract principles. As the Supreme Court has observed, the question of whether a particular provision is substantive or procedural is not formalistic but "demands a commonsense, functional judgment" about what legal consequences it attaches to prior conduct. *Immigration & Naturalization Serv. v. St. Cyr.*, 533 U.S. 289, 321 (2001) (internal quotation marks omitted). The essential question that the court "must ask [is] whether the new provision attaches new legal consequences to events completed before its enactment." *Landsgraf*, 511 U.S. at 269-70. This is because the distinction between the two forms of legislation rests on the eminently sensible conclusion that "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Id.* at 265. In other words, the purpose of distinguishing between the two is to avoid *post hoc* changes to legal rules on which parties have relied in shaping their primary conduct. *Trout v. Sec'y of the Navy*, 540 F.3d 442, 445 (D.C. Cir. 2008), *cert. denied*, __ U.S. __, 129 S. Ct. 2791 (2009). The same concerns about applying legislation to past conduct simply does not arise when the legislation in question "regulate[s] secondary rather than primary conduct." *Landsgraf*, 511 U.S. at 275. This remains true even where "the transaction which precipitated the dispute took place prior to the enactment of the statute." *Montgomery*, 598 A.2d at 166.

Applying these general principles to the amendment that is at issue in this case is an easy matter. Like the pre-suit notice requirement addressed by the District of Columbia Court of

Appeals in *Lacek v. Washington Hosp. Ctr. Corp.*, 978 A.2d 1194 (D.C. 2009), neither the presence nor the absence of a pre-suit notice requirement under the DCWPA curtails a plaintiff's right to sue for wrongful conduct (or the potential liability of a defendant to be sued), but instead merely involves "a procedural requirement" that notice be given before suit may be filed. *Id.* at 1198 n.4. That is, the Whistleblower Protection Act of 2009 "merely removes a procedural hurdle" to the assertion of claims under the DCWPA. *Bowyer v. District of Columbia*, __ F. Supp. 2d __, 2011 WL 1603257, at *3 (D.D.C. Apr. 29, 2011).

Stated differently, the pre-suit notice requirement plainly "regulate[s] secondary rather than primary conduct." *Landsgraf*, 511 U.S. at 275. It does not enlarge the scope of a plaintiff's cause of action or alter the responsibilities and liabilities of the District of Columbia and its employees. Simply put, both prior to and after the elimination of the pre-suit notice requirement, supervisors were always prohibited from retaliating against an employee because of that employee's protected disclosure. *See* D.C. Code § 1-615.53(a). In this case, were the individuals implicated by Williams's allegations to have looked at the law at the time of the allegedly wrongful conduct and "conform[ed] their conduct accordingly," *Landsgraf*, 511 U.S. at 265, the pre-suit notice requirement would have had no bearing on their inquiry. They simply could not have reasonably relied on the pre-suit notice requirement in shaping their primary conduct.

The District of Columbia rejoins that the pre-suit notice requirement "effectively waives sovereign immunity" and, as such, its removal from the statutory scheme is more than procedural. Setting aside the fact that the District of Columbia's argument seems all but foreclosed by the decision of the District of Columbia Court of Appeals in *Lacek*, it fails at the outset because it rests on a fundamental misunderstanding of the pre-suit notice requirement and

10

its relationship to sovereign immunity. The District of Columbia Court of Appeals has repeatedly observed that the pre-suit notice requirement is *not* a waiver of sovereign immunity, but is instead "'purely a notice provision.'" *Tucci v. District of Columbia*, 956 A.2d 684, 694 (D.C. 2008) (quoting *Gwinn v. District of Columbia*, 434 A.2d 1376, 1378 (D.C. 1981)); *see also Barnhardt v. District of Columbia*, 8 A.3d 1206, 1214 (D.C. 2010). It is, plain and simple, the means by which the District of Columbia has prescribed the "terms and conditions imposed . . . on [its] waiver of its immunity." *Tucci*, 956 A.2d at 695 (internal quotation marks omitted). In this case, the District of Columbia independently waived its immunity "when it enacted the [DCWPA] in 1998, allowing aggrieved District employees to file civil actions and seek relief and damages." *Bowyer*, 2011 WL 1603257, at *4. The pre-suit notice requirement was, plain and simple, nothing more than the *procedure* by which a waiver of sovereign immunity might occur. The sovereign has now decided to abandon that procedural requirement. Such a procedural change applies to pending cases, even where the conduct precipitating the case predated the enactment of the legislation. As a result, the pre-suit notice requirement is effectively eliminated from this action.

/

/

/

/

/

/

/

## IV.  CONCLUSION

For the reasons set forth above, the Court concludes that the elimination of the pre-suit notice requirement in the Whistleblower Protection Act of 2009 effected a procedural change to the DCWPA, which is therefore properly applied to this case, eliminating the pre-suit notice requirement for purposes of this action.  Therefore, the Court shall deny the District of Columbia's [111] Supplemental Motion for Summary Judgment in its entirety.  An appropriate order accompanies this memorandum opinion.


Date:   May 23, 2010

                                       /s/
                        **COLLEEN KOLLAR-KOTELLY**
                        United States District Judge