# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

CHRISTINA CONYERS WILLIAMS,

    Plaintiff,

v.

DISTRICT OF COLUMBIA,

    Defendant.

</td><td>

Civil Action No. 06-02076 (CKK)

</td></tr>
</table>

## MEMORANDUM OPINION
(October 19, 2011)

In this action, Plaintiff Christina Conyers Williams ("Williams") claims that Defendant, the District of Columbia (the "District"), retaliated against her in violation of the District of Columbia Whistleblower Protection Act (the "DC-WPA") for testimony that she provided before the District of Columbia Council.  The action is now in the pretrial stage of litigation and the trial will begin on November 16, 2011.  Currently before the Court is the District's [158] Motion Regarding Legal Basis for Defenses, through which the District asks the Court to instruct the jury on three of its intended legal defenses at trial.  Upon consideration of the parties' submissions, the relevant authorities, and the record as a whole, the Court shall GRANT-IN-PART and DENY-IN-PART the District's Motion.[1]

---

[1]  While the Court's decision today is based on the record as a whole, its consideration has focused on the following documents, listed in chronological order of their filing: Def.'s Mot. Regarding Legal Basis for Defenses ("Def.'s Mem."), ECF No. [158]; Pl.'s Opp'n to Def.'s Mot. Regarding Legal Basis for Defenses ("Pl.'s Opp'n"), ECF No. [161]; Def.'s Reply in Further Supp. of its Mot. Regarding Legal Basis for Defenses ("Def.'s Reply"), ECF No. [162].

# I. LEGAL STANDARD

Before trial and with the district court's leave, "a party may file and furnish to every other party written requests for the jury instructions it wants the court to give." FED. R. CIV. P. 51(a)(1). "Jury instructions are proper if, when viewed as a whole, they fairly present the applicable legal principles and standards." *Czekalski v. LaHood*, 589 F.3d 449, 453 (D.C. Cir. 2009) (internal quotation marks and citations omitted). The district court has considerable discretion when crafting instructions, which should be exercised with an aim towards guiding the jury "toward an intelligent understanding of the legal and factual issues involved in [its] search for a proper resolution of the dispute." 9C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2556 (3d ed. 1995). So long as the instructions chosen are "legally correct," the district court is not required to use "any particular language." *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 556 (D.C. Cir. 1993) (quoting *Miller v. Poretsky*, 595 F.2d 780, 788 (D.C. Cir. 1978)) (internal quotation marks omitted). Rather, "[i]t is sufficient if the substance of the instruction as given be correct in law, adapted to the issues developed at trial and adequate for guidance of the jury." *Heflin v. Silvertstein*, 405 F.2d 1075, 1077 (D.C. Cir. 1968).

# II. DISCUSSION

Through the present motion, the District seeks the Court's imprimatur on three of its intended defenses at trial. In particular, the District asks the Court to instruct the jury on the contours of each defense. Below, the Court addresses each defense in turn.[2]

---

[2] Parenthetically, the Court notes that Williams objects to the District raising certain defenses on the basis that they were purportedly not specifically identified in the District's Answer, though she does not claim to have suffered any prejudice thereby. *See* Pl.'s Opp'n at 1-2. Even setting aside the fact that the District's ability to identify its defenses with particularity was hampered in no small part by Williams' "oblique explanations" of her own claims, Order

A.      The *"Ministerial or Nondiscretionary Investigation" Exception*

Under the DC-WPA, "[a] supervisor shall not take, or threaten to take, a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure." D.C. CODE § 1-615.53(a) (2006).  Here, the District asks the Court to instruct the jury on the contours of what the Court shall refer to as the "ministerial or nondiscretionary investigation" exception to the statutory definition of the term "prohibited personnel action."  At the time the underlying conduct at issue in this case transpired, that term was defined as follows:

> "Prohibited personnel action" includes but is not limited to: recommended, threatened, or actual termination, demotion, suspension, or reprimand; involuntary transfer, reassignment, or detail; referral for psychiatric or psychological counseling; failure to promote or hire or take other favorable personnel action; or retaliating in any other manner against an employee because that employee makes a protected disclosure or refuses to comply with an illegal order, as those terms are defined in this section.

*Id.* § 1-615.52(a)(5) (2006).  Long after the underlying conduct at issue in this case had concluded, and during the pendency of this action, the District of Columbia Council passed the Whistleblower Protection Amendment Act of 2009 (the "DC-WPAA"), 2010 D.C. Legis. Serv. 18-117 (West), which became effective on March 11, 2010.  Among other changes, the DC-WPAA amended the definition of the term "prohibited personnel action" to designate the paragraph above as subparagraph (A) and to create a new subparagraph (B) reading as follows:

(B)      For purposes of this paragraph, the term:

─────────────────────

(July 25, 2011), ECF No. [134], at 2, the argument is unpersuasive because an answer need only "affirmatively state any avoidance or affirmative defense." FED. R. CIV. P. 8(c).  The three defenses addressed in the pending motion are not affirmative defenses; rather, each of the three defenses are, in sum or in substance, an argument that Williams cannot satisfy one or more essential elements of a cause of action under the DC-WPA.

3

(i)     "Investigation" includes an examination of fitness for duty and excludes any ministerial or nondiscretionary factfinding activity necessary to perform the agency's mission.

(ii)    "Retaliating" includes conducting or causing to be conducted an investigation of an employee or applicant for employment because of a protected disclosure made by the employee or applicant who is a whistleblower.

D.C. CODE § 1-615.52(a)(5) (2011).  In short, by operation of the DC-WPAA, the DC-WPA now provides, in essence, that an "investigation" qualifies as a prohibited personnel action, but excepts from its coverage "any ministerial or nondiscretionary factfinding activity necessary to perform the agency's mission."  D.C. CODE § 1-615.52(a)(5)(B)(i) (2011).  It is this last clause, which came into being only with the passage of the DC-WPAA, that gives form to the "ministerial or nondiscretionary investigation" exception.

1.     The District Has Failed to Establish that Williams Has "Conceded" the Applicability of the Exception in this Case

The parties sharply dispute whether the "ministerial or nondiscretionary investigation" exception should be applied in this case, which everyone agrees involves conduct that transpired several years before the DC-WPAA became effective.  But before the parties reach the merits of their dispute, they argue over the threshold question of whether Williams may even be heard to contest the applicability of the exception here because, in the District's opinion, Williams has "conceded" that the DC-WPAA applies to this case.  Def.'s Mem. at 2.

The District's argument in this regard, made in passing and without citation to any legal authority, is unavailing.  Even the most cursory review of Williams' opposition papers would reveal that she has not conceded the applicability of the DC-WPAA in connection with the

pending motion. *See* Pl.'s Opp'n at 2-5. Accordingly, the Court can only assume that the District's argument is premised on a theory that Williams is somehow judicially estopped from taking a different position than she has in the past. However, the District does not mention the judicial estoppel doctrine in its moving papers, let alone attempt to establish that the Court should exercise its discretion and apply the doctrine here. For example, the District offers no factual or legal basis for concluding that (i) Williams' current litigation position is "clearly inconsistent" with a prior position, (ii) she "succeeded in persuading" the Court to accept her prior inconsistent position, and (iii) she would "derive an unfair advantage" from being allowed to adopt a different position now. *New Hampshire v. Maine*, 532 U.S. 742, 751-52 (2001).

True, the District briefly cites to a "notice of supplemental authority" that Williams filed in connection with the parties' cross-motions for summary judgment on March 17, 2010, less than a week after the DC-WPAA became effective. *See* Def.'s Mem. at 2. Therein, Williams made the statement that "the Whistleblower Protection Amendment Act of 2009 applies to this litigation." Pl.'s Notice of Supplemental Authority, ECF No. [84-1], at 1. Admittedly, this broad statement stands in some tension with Williams' more refined position today that some elements of the DC-WPAA—for example, its elimination of the pre-suit notice requirement under D.C. CODE § 12-309—enact procedural changes that may be applied retroactively, while other elements enact substantive changes that cannot be applied retroactively. Indeed, the Court has previously taken note of this tension. *See* Order (Sept. 1, 2011), ECF No. [152], at 7. But the history of this litigation has revealed that neither party has harbored any qualms about attempting to lay claim to some of the changes brought about by the DC-WPAA while disregarding others. For its part, the District at one point argued strenuously against the application of the DC-WPAA

in this case—specifically, insofar as the DC-WPAA eliminated the pre-suit notice requirement

under D.C. CODE § 12-309.  In so doing, the District maintained that "[t]he 2009 Amendment

does not apply to this [case] which had been pending several years before its enactment."  Def.'s

Reply to Pl.'s Opp'n to Def.'s Suppl. Mot. for Partial Summ. J., ECF No. [117], at 2.  It is not

without some irony that the District's broad statement stands in tension with its position today

that at least some of the changes brought about by the DC-WPAA should be applied in this case.

The Court need not belabor the point.  Even assuming, *arguendo*, that Williams' broad

statement that the DC-WPAA "applies to this litigation" could be characterized as "clearly

inconsistent" with her more refined position today, the District's argument still comes to naught

because Williams did not succeed in persuading the Court to accept her broad statement.  In fact,

in the course of resolving the parties' cross-motions for summary judgment, the Court expressly

noted that it did not consider Williams' "notice of supplemental authority," having found that the

changes brought about the DC-WPAA were immaterial to the arguments actually raised by the

parties.  *Williams v. Johnson*, 701 F. Supp. 2d 1, 12 n.7 (D.D.C. 2010).  Simply put, Williams'

statement had no effect on the Court's disposition of the issues presented.

The parties did eventually turn their attention to the impact of the DC-WPAA on this

case.  In particular, the Court granted the District leave to file a supplemental motion for

summary judgment addressing, in part, the question of whether the DC-WPAA's elimination of

the pre-suit notice requirement under D.C. CODE § 12-309 should apply in this case.  In the

course of briefing that motion, both sides developed more nuanced approaches to the retroactivity

question.  *See* Pl.'s Opp'n to Def.'s Supplemental Mot. for Partial Summ. J., ECF No. [113];

Def.'s Reply to Pl.'s Opp'n to Def.'s Supplemental Mot. for Summ. J., ECF No. [117].  More

6

importantly, the Court was clear when it resolved that motion that whether certain changes could be applied in this action depended on "[t]he distinction between substantive and procedural legislation," and applying that distinction, the Court found that the DC-WPAA's elimination of the pre-suit notice requirement was a procedural amendment that should be applied in this case. *Williams v. Johnson*, __ F. Supp. 2d __, 2011 WL 2519663, at *4 (D.D.C. May 23, 2011). In short, despite the broad statements tendered by the parties in the past, this Court has never been persuaded that the DC-WPAA applies or does not apply to this case *in toto*. There is no foundation for the Court to conclude that either party should be estopped from pursuing their present positions.[3]

In the final analysis, the District has fallen woefully short of establishing that Williams should be judicially estopped from contesting the application of the DC-WPAA in this case insofar as it pertains to the application of the "ministerial or nondiscretionary investigation" exception. Accordingly, the Court shall now turn to the merits of that question.

---

[3] In its reply memorandum, the District also cites in passing to Williams' more recent statement in a separate context that she brings her "claims under the District of Columbia Whistleblower Protection Act, *as amended*." Pl.'s Mot. in Supp. of Jury Instruction No. 19, ECF No. [155], at 1 (emphasis added). To the extent the District intends to suggest that Williams' use of the phrase "as amended" is tantamount to a concession that the DC-WPAA applies in this case, the suggestion is not well taken. As an initial matter, Williams' statement is hardly "clearly inconsistent" with her present litigation position; the DC-WPA was amended prior to the DC-WPAA, most notably through the District of Columbia Whistleblower Reinforcement Act of 1998, 1998 D.C. Legis. Serv. 12-160 (West). Regardless, Williams' passing statement was made in an entirely separate context and was not even relevant to the motion in which it was made; as a result, even adopting the District's dubious premise that Williams' statement implies that the DC-WPAA applies to this case in its entirety, Williams did not succeed in persuading the Court to adopt that position. In fact, even the unrelated relief underlying her motion was denied. *See* Order (Oct. 17, 2011), ECF No. [167]; Mem. Op. (Oct. 17, 2011), ECF No. [168].

2.      The District Has Failed to Establish that the "Ministerial or
Nondiscretionary Investigation" Exception Should Apply in this Case

While the presumption against retroactive legislation is "deeply rooted in our jurisprudence," *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994), courts have historically drawn a distinction between laws that affect procedural rights or obligations, on the one hand, and laws that affect substantive rights or obligations, on the other hand.  Whereas the former are presumptively applicable to pending cases, the latter are presumed to apply only prospectively. *Compare Montgomery v. District of Columbia*, 598 A.2d 162, 166 (D.C. 1991), *with Lacek v. Wash. Hosp. Ctr. Corp.*, 978 A.2d 1194, 1197 (D.C. 2009).  Viewed from a slightly different perspective, legislation cannot be said to be "truly retroactive" unless it changes the legal consequences of primary conduct engaged in before its effective date.  *Lacek*, 978 A.2d at 1197 (citing *Landgraf*, 511 U.S. at 269 n.3) (internal quotation marks omitted).  Accordingly, the essential question here is whether the DC-WPAA, in altering the statutory definition of the term "prohibited personnel action" to exclude "any ministerial or nondiscretionary factfinding activity necessary to perform the agency's mission," D.C. CODE § 1-615.52(a)(5)(B)(i) (2011), changed the legal consequences of primary conduct.  Answering this question "demands a commonsense, functional judgment."  *INS v. St. Cyr*, 533 U.S. 289, 321 (2001) (internal quotation marks omitted).

Significantly, the District does not claim that the changes to the definition of the term "prohibited personnel action"—and, in particular, the exclusion of "ministerial or nondiscretionary" investigations—were merely procedural in nature.  Nor could the District credibly make such an argument.  The term "prohibited personnel action" lies at the heart of the operative liability provision of the DC-WPA.  *See* D.C. CODE § 1-615.53(a) (2006) ("A

supervisor shall not take, or threaten to take, a *prohibited personnel action* or otherwise retaliate against an employee because of the employee's protected disclosure.") (emphasis added).  As a result, any meaningful expansion or contraction of that term will have important consequences for the substantive rights and obligations attaching to primary conduct.  Distilling the matter to the essence, the broader the term is defined, the more robust the protections afforded to employees and the more expansive their cause of action.  Concomitantly, the broader the term is defined, the greater the obligations placed on supervisors and agencies and the more extensive their potential legal liability.  This landscape leads to the obvious question—in altering the statutory definition of the term "prohibited personnel action" to exclude ministerial or nondiscretionary investigations, did the DC-WPAA actually affect the scope of the parties' substantive rights and obligations?

The Court has no difficulty answering that question in the affirmative.  The District concedes, as it must, that "a retaliatory investigation was prohibited under the pre-amendment [DC-]WPA."  Def.'s Mem. at 2 (citing *Baumann v. District of Columbia*, 655 F. Supp. 2d 1, 6-7 (D.D.C. 2009); *Johnson v. District of Columbia*, 935 A.2d 1113, 1118-19 (D.C. 2007)).  Therefore, an employee subjected to an investigation could recover under the DC-WPA provided she could establish that the investigation was taken "because of [her] protected disclosure."  D.C. Code § 1-615.52(a)(5) (2006).  That is, an investigation was presumptively actionable so long as the employee's protected disclosure was a "contributing factor" in the investigation.  D.C. Code § 615.54(b) (2006).  Before the DC-WPAA, neither the statute nor the case law interpreting its provisions recognized a *categorical* exception for ministerial or nondiscretionary investigations.  Of course, the Court recognizes that where an investigation is ministerial or nondiscretionary, it

may be significantly more difficult for an employee to establish a causal connection between the

investigation and her protected activity.   Nonetheless, before the DC-WPAA, it was at least

theoretically possible that an employee could recover for a ministerial or nondiscretionary

investigation if she could establish that her protected activity was still a contributing factor in the

investigation.   Simply by way of example, an employee might attempt to show that the agency

employing her had an established practice of failing to comply with a nondiscretionary duty to

conduct a certain type of investigation, such that its decision to comply with that duty with

respect to her would give rise to an inference of retaliation.

That theoretical possibility has now been eliminated by operation of the DC-WPAA.   By

virtue of the DC-WPAA, there is now a recognized *categorical* exception for ministerial or

nondiscretionary investigations: an employee simply may not recover for "any ministerial or

nondiscretionary factfinding activity necessary to perform the agency's mission."   D.C. CODE §

1-615.52(a)(5)(B)(i) (2011).   Regardless of whether it was the District of Columbia Council's

intent, this change had the effect of contracting the right of action under the DC-WPA and

limiting the scope of an employer's potential liability—or, in the parlance of the retroactivity

doctrine, it changed the legal consequences attaching to primary conduct.   *Lacek*, 978 A.2d at

1197.   In short, the creation of the "ministerial or nondiscretionary investigation" exception

effected a substantive change to the DC-WPA and therefore it is not properly applicable to this

case, which turns on conduct predating the amendment by several years.   *See Landgraf*, 511 U.S.

at 265 ("[T]he legal effect of conduct should ordinarily be assessed under the law that existed

when the conduct took place.") (citation omitted).

The District attempts to avoid this conclusion by claiming that the DC-WPAA "merely

clarif[ied]" the prior state of the law.  Def.'s Mem. at 2.  However, for at least two reasons, the

Court finds the argument to be completely lacking in merit.

First, the District cites to no legal authority in support of its position and appears to be

laboring under the misapprehension that a "clarifying" act should always be presumed to apply

retroactively.  But that is not the law.  In part because "there is serious debate and doubt as to

when, if ever, a legislature has a role in construing what an earlier legislature intended," even an

enactment that purports to "clarify" the law may be subject to the general presumption against

retroactivity.  *Tippett v. Daly*, 10 A.3d 1123, 1131 (D.C. 2010) (*en banc*) (internal quotation

marks omitted).  Indeed, even "repeated references" in the legislative history to an intention to

"clarify" generally will "not justify an inference that the amendment was to be retroactive."

*Sikora v. Am. Can Co.*, 622 F.2d 1116, 1121 (3d Cir. 1980).  Absent a "clearly expressed intent

to the contrary," courts will "presume that the amendment does not apply retroactively."  *Tippett*,

10 A.3d at 1131.  In this case, it is undisputed that the District of Columbia Council, in enacting

the DC-WPAA, made no affirmative indication that it intended all or part of the statute to apply

retroactively.  *See Sharma v. District of Columbia*, __ F. Supp. 2d __, 2011 WL 2418917, at *3

(D.D.C. June 17, 2011).  The District offers no justification for overriding the presumption

against retroactivity in this instance, and the Court can discern none.

Second, and more importantly, the District simply misreads the legislative history, which,

contrary to the District's proffered interpretation, does not suggest that the District of Columbia

Council, by enacting the DC-WPAA, intended to "clarify" that ministerial or nondiscretionary

investigations were non-actionable both before and after the DC-WPAA.  Rather, the legislative

history provides that the DC-WPAA was intended to "clarify that the use of reprisal

11

investigations are prohibited under District law."  Council of the District of Columbia Committee

on Government Operations and the Environment, Report on Bill 18-223 (Nov. 19, 2009), at 6

(emphasis omitted).  In other words, the District of Columbia Council sought to make it clear that

the DC-WPA has always "prohibit[ed] the practice of retaliatory investigations."  *Id.* at 5.  The

Council apparently thought this clarification was appropriate because the pre-amended DC-

WPA's definition of "prohibited personnel action" did not expressly enumerate investigations

among the list of proscribed actions, even though it would have fallen within the ambit of other

language.  D.C. CODE § 1-615.52(a)(5) (2006).

Meanwhile, the legislative history does not indicate that the District of Columbia Council

viewed the exclusion of ministerial or nondiscretionary investigations as part of its "clarifying"

enterprise.  Instead, the legislative history merely states that the Council "appreciate[d] . . . that

in the course of its ordinary duties, an agency will need to conduct investigations," and the

proposed statute "would not prohibit such investigations" provided they were not in "reprisal" for

an employee's protected disclosure.  Council of the District of Columbia Committee on

Government Operations and the Environment, Report on Bill 18-223 (Nov. 19, 2009), at 6

(emphasis omitted).  In short, the legislative history cited by the District does not evince a clear

intention to retroactively and categorically deprive employees of their capacity to bring suit for

ministerial or nondiscretionary investigations.  Nor does it suggest that the Council saw the

categorical exception for ministerial or nondiscretionary investigations to be part of the

established legal landscape before the DC-WPAA.

For these reasons, the Court finds that the "ministerial or nondiscretionary investigation"

exception effected a substantive change to the DC-WPA and, as such, is not properly applicable

to this case, which turns on conduct predating the amendment by several years.  Because "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place," *Landgraf*, 511 U.S. at 265 (citation omitted), the Court declines the District's invitation to instruct the jury on the scope of the categorical exception.  Instead, the Court shall provide the jury with the parties' agreed-upon Instruction No. 8, which sets for the definition of the term "prohibited personnel action" prior to the DC-WPAA.  *See* Revised Proposed Jury Instructions, ECF No. [144], at 9.  However, because the parties are in agreement that a retaliatory investigation was actionable both before and after the DC-WPAA, the Court shall revise this instruction to expressly mention investigations.[4]

Furthermore, despite the Court's conclusion that the District may not make use of the *categorical* exception, the Court nonetheless recognizes that the question of whether the investigation at issue in this case was nondiscretionary is highly relevant to the jury's determination of whether the investigation was taken "because of [Williams'] protected disclosure."  D.C. CODE § 1-615.52(a)(5) (2006).  Accordingly, upon the District's request and provided the District creates an appropriate evidentiary foundation at trial, the Court shall consider providing the jury with an instruction along the following lines:

> Plaintiff claims that Robert Johnson and William Anthony commenced an investigation into her compliance with the D.C. Residency Preference Act in retaliation for her testimony before the District of Columbia Council.  In determining whether Plaintiff has demonstrated by a preponderance of the evidence that her testimony was a contributing factor in the investigation, or in determining whether Defendant has proven by clear and convincing evidence that

---

[4]  The Court also encourages the parties to discuss whether the omission of references to personnel actions that are not at issue in this case—for example, referrals for psychiatric or psychological counseling—would help crystallize the issues relevant to the jury's deliberations.

the investigation would have occurred for legitimate, independent reasons even if Plaintiff had not provided the testimony, you may consider the extent to which the investigation was non-discretionary or required by regulation or policy.

The parties shall promptly meet and confer and, by no later than November 14, 2011, submit for the Court's consideration a proposed instruction consistent with the foregoing, proposing any adjustments to the wording that the parties consider appropriate.

B.     The "De Minimis" or "Materiality" Requirement

As aforementioned, under the DC-WPA, "[a] supervisor shall not take, or threaten to take, a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure."  D.C. CODE § 1-615.53(a) (2006).  For purposes of this case, the term "prohibited personnel action" is defined in a non-exhaustive fashion as follows:

> "Prohibited personnel action" includes but is not limited to: recommended, threatened, or actual termination, demotion, suspension, or reprimand; involuntary transfer, reassignment, or detail; referral for psychiatric or psychological counseling; failure to promote or hire or take other favorable personnel action; or retaliating in any other manner against an employee because that employee makes a protected disclosure or refuses to comply with an illegal order, as those terms are defined in this section.

*Id.* § 1-615.52(a)(5) (2006).  Here, the parties dispute whether the reference to "retaliating in any other manner" authorizes an employee to bring suit under the DC-WPA for any employment action whatsoever, or whether the DC-WPA instead incorporates a "materiality" requirement akin to the one in federal employment discrimination law.  In this dispute, the Court finds that the District has the better of the argument, and concludes in accordance with the federal employment discrimination case law and those few courts that have addressed the issue in connection with the DC-WPA, that an employee may recover under the DC-WPA only for those

14

personnel actions that might well have dissuaded a reasonable employee in the plaintiff's position from making a protected disclosure.

Significantly, in formulating the legal standard governing claims brought under the DC-WPA, the District of Columbia courts have consciously borrowed from case law interpreting Title VII of the Civil Rights Act of 1964 ("Title VII").[5]  *See, e.g.*, *Johnson*, 935 A.2d at 1117-18. Consistent with this approach, this Court has previously had the occasion to note that DC-WPA claims are subject to the same materiality requirement used when evaluating retaliation claims under Title VII.  *See Mentzer v. Lanier*, 677 F. Supp. 2d 242, 251-52 (D.D.C.), *aff'd*, 408 F. App'x 379 (2010) (*per curiam*); *see also Booth v. District of Columbia*, 701 F. Supp. 2d 73, 81 (D.D.C. 2010) (suggesting the same, in dicta).  That is, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means that it might well have dissuaded a reasonable worker from making" a protected disclosure.  *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 58 (2006) (internal quotation marks and citation omitted).[6]

_____

[5]  On occasion, the District of Columbia courts have also looked to the terms of the federal Whistleblower Protection Act (the "F-WPA") for guidance in interpreting the DC-WPA. *See Wilburn v. District of Columbia*, 957 A.2d 921, 925 (2008); *Crawford v. District of Columbia*, 891 A.2d 216, 221 n. 12 (D.C. 2006).  Like Title VII, the F-WPA includes a materiality requirement, providing that any non-enumerated personnel action must rise to the level of a "significant change in duties, responsibilities, or working conditions."  5 U.S.C. § 2302(a)(2)(A).  Indeed, the F-WPA would appear to require that the employee suffer a *tangible* employment action, a requirement that has since been rejected in the Title VII retaliation context.

[6]  In *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), the Supreme Court found that such a requirement should be read into Title VII even though "[n]o such limiting words appear in the antiretaliation provision."  *Id.* at 62.  The Supreme Court observed that "[n]o one doubts that the term 'discriminate against' refers to distinctions or differences in treatment that *injure* protected individuals."  *Id.* at 59 (emphasis added).  Similarly, the absence of limiting language in the DC-WPA does not preclude an interpretation

Such an interpretation has the benefit of being in harmony with the interpretive canon of *ejusdem generis*, which provides that "where general words follows specific words, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Cement Kiln Recycling Coal. v. EPA*, 493 F.3d 207, 221 (D.C. Cir. 2007) (internal quotation marks and notations omitted) (quoting *Edison Elec. Inst. v. OSHA*, 411 F.3d 272, 281 (D.C. Cir. 2005)).  Here, the statutory definition of "prohibited personnel action" begins by enumerating several specific personnel actions, including (a) termination, (b) demotion, (c) suspension, (d) reprimand, (e) transfer, (f) reassignment, (g) referral for counseling, (h) failure to hire, and (i) failure to promote.  *See* D.C. CODE § 1-615.53(a) (2006).  The items on this list share a common thread—namely, they are all materially adverse employment actions, ones that rise to such a level that they might well dissuade a reasonable employee from making a protected disclosure.  Following these specific personnel actions, the District of Columbia Council placed the generic phrase "or retaliating in any other manner against an employee." *Id.* Consistent with the canon of *ejusdem generis*, the Court construes this phrase to embrace only those personnel actions that, like the specifically enumerated actions, might well dissuade a reasonable employee from making a protected disclosure under the statute.

Indeed, accepting Williams' contrary interpretation would render the remainder of the statutory definition superfluous, and deprive much of the language chosen by the District of Columbia Council of any apparent purpose.  If, as Williams suggests, the phrase "retaliating in any other manner" embraced all personnel actions irrespective of their materiality, there would

---

incorporating a materiality requirement.  No one would doubt that the DC-WPA's use of the term "retaliate," or variations thereof, refers to treatment that injures an employee because of his or her protected disclosure.

16

have been no need for the District of Columbia Council to enumerate several specific personnel actions. That it chose to do so strongly suggests that there was a purpose in identifying specific personnel actions, and undermines Williams contention that DC-WPA authorizes suit upon any personnel action whatsoever.

Despite Williams' stated belief to the contrary, interpreting the DC-WPA to incorporate a materiality requirement is not the least bit inconsistent with the stated statutory purpose to "[e]nhance the rights of District employees to . . . express their views without fear of retaliation." D.C. CODE § 1-615.51(1). Logically, if an action is so immaterial or *de minimis* that it would not dissuade a reasonable employee from making a protected disclosure, then *ipso facto* it can have no meaningful impact on whether a reasonable employee would be inclined to "express [his] views." *Id.* Indeed, by focusing on those acts that might reasonably affect employees' willingness to make protected disclosures, the District of Columbia Council quite sensibly tailored its enactment to fit the precise public interest to be served.

For the reasons set forth above, the Court concludes that an employee may recover under the DC-WPA only for those personnel actions that "might well have dissuaded a reasonable worker" from making a protected disclosure. *Burlington N.*, 548 U.S. at 58 (internal quotation marks and citation omitted). Accordingly, provided an evidentiary foundation is made at trial, the Court shall consider amending the parties' agreed-upon Jury Instruction No. 8 to provide as follows, with the changes noted in bold italics:

> A "prohibited personnel action" includes, but is not limited to, recommended, threatened, or actual termination, demotion, suspension, or reprimand; involuntary transfer, reassignment, or detail; ***referral for psychiatric or psychological counseling***; failure to promote or hire or take other favorable personnel action; ***investigations***; or ***taking any other action that might well have***

17

> ***dissuaded a reasonable employee in Plaintiff's position from
> making a protected disclosure.***

Revised Proposed Jury Instructions at 9.[7]  The parties shall promptly meet and confer and, by no

later than November 14, 2011, submit for the Court's consideration a proposed instruction

consistent with the foregoing, proposing any adjustments to the wording that the parties consider

appropriate.

Meanwhile, the Court declines the District's invitation to instruct the jury that it must find

that each challenged personnel action "rise[s] to the same level of seriousness" as the specifically

enumerated actions, Def.'s Mem. at 10, a proposal that would depart from the standard under

federal law and is so vague that it would, in the Court's estimation, be more likely to confuse

than guide the jury in its search for a proper resolution of the parties' dispute.

C.    *Discrete Acts and Hostile Work Environment Claims*

Finally, the District asks the Court to provide the jury with the following instruction in

connection with Williams' hostile work environment claim:

> Plaintiff has alleged claims for both retaliation and hostile work
> environment.  Retaliation claims are distinct from hostile work
> environment claims, and plaintiff cannot rely on the same set of acts
> to support both types of claims.  For any individual act of alleged
> retaliation for which Plaintiff seeks damages, you may not also
> consider that act in determining whether Plaintiff has met the required
> level of proof for establishing a hostile work environment.

Def.'s Mem. at 11.  The District's proposed instruction is based on a correct statement of the law,

but only in part.  Accordingly, the Court declines to provide the instruction as proposed, and will

---

[7]  Again, the Court encourages the parties to discuss whether the omission of references to
personnel actions that are not at issue in this case would help crystallize those issues directly
relevant to the jury's deliberations.

18

instead consider a modified version outlined below.

In this Circuit, it is well-established that an employee may not attempt to "bootstrap" discrete acts of retaliation into a broader hostile work environment claim. *Baloch v. Norton*, 517 F. Supp. 2d 345, 364 (D.D.C. 2007), *aff'd sub nom. Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008); *accord Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 108 (D.D.C. 2005), *aff'd*, 222 F. App'x 5 (D.C. Cir. 2007), *cert. denied*, 552 U.S. 1243 (2008); *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003).  Because hostile work environment claims by definition "involve[] repeated conduct," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002), employees may not recover under a hostile work environment theory based upon nothing more than an amalgamation of loosely related discrete acts.  "If certain actions are so remote in time or different in kind that a reasonable trier of fact could not find them to be part of the same work environment, then those actions should not be considered."  *Mason v. Geithner*, __ F. Supp. 2d __, 2011 WL 4014300, at *27 (D.D.C. Sept. 12, 2011) (citing *Vickers v. Powell*, 493 F.3d 186, 199-200 (D.C. Cir. 2007); *Verges v. Shelby Cnty. Sheriff's Office*, 721 F. Supp. 2d 730, 746 (W.D. Tenn. 2010)).  These principles are well-established and non-controversial.  Therefore, upon the District's request and assuming an appropriate evidentiary foundation is made at trial, the Court shall consider providing the jury with an instruction along the following lines:

> When it comes to Plaintiff's "hostile work environment" claim, the relevant employment practice is the work environment as a whole. If you find that any of the individual acts that Plaintiff alleges to be part of her claim are so different in kind or so remote in time from the remaining acts, then you should not consider those acts in determining whether Plaintiff has met her burden of proof.[8]

---

[8]  To be clear, this instruction would be in addition to the parties' agreed-upon Jury Instructions Nos. 22-23, which together spell out the general legal standard for a hostile work

The parties shall promptly meet and confer and, by no later than November 14, 2011, submit for the Court's consideration a proposed instruction consistent with the foregoing, proposing any adjustments to the wording that the parties consider appropriate.

While this much is non-controversial, the District's proposed instruction would go much farther, and would categorically prevent Williams from relying upon any "individual act of alleged retaliation for which [Williams] seeks damages . . . in determining whether [she] has met the required level of proof for establishing a hostile work environment." Def.'s Mem. at 11. In this regard, the District effectively seeks to transform the "no bootstrapping" rule, which is designed to safeguard the boundaries between discrete retaliation claims and hostile work environment claims, into a full-blown "election of remedies" rule, which is designed to prevent a plaintiff from securing a double recovery based on two different liability findings where the injury is the same for both claims. Simply put, the District cites to no authority supporting such a radical position, and the Court declines the District's invitation to instruct the jury on a novel and unsupported view of the law.[9]

Nonetheless, the Court acknowledges that, without adequate guidance, there is often a risk that a jury will provide a plaintiff with a windfall by "award[ing] separate and duplicative compensatory damages awards for the same injuries." *Hailey v. City of Camden*, 650 F. Supp. 2d 349, 358 (D.N.J. 2009). Accordingly, upon the District's request and assuming an adequate evidentiary foundation is made at trial, the Court shall consider providing the jury with the

---

environment claim. *See* Revised Proposed Jury Instructions at 17-18.

[9]  The Court observes that only the question of compensatory damages will be decided by the jury, as the parties have agreed to submit the determination of back pay and front pay to the Court. *See* Order (July 25, 2011), ECF No. [134], at 6.

following generalized instruction to prevent a duplicative damages award:

> You must determine the amount of damages to be awarded on each claim for which you find in Plaintiff's favor.  However, Plaintiff may not recover twice for the same injury.  Therefore, if you find in Plaintiff's favor on two or more claims, and you find that any of those claims address the same injury, then you may not compensate Plaintiff twice for any damages she might have suffered for that shared injury.  You may award additional damages only to the extent you find some aspect of injury that has not already been compensated for by another award.

*See Bender v. City of New York*, 78 F.3d 787, 794 (2d Cir. 1996) ("[T]he jurors should have been instructed that they can award additional damages, beyond what they award for an overlapping tort, only to the extent that they find some aspect of injury that has not been already compensated for by the award of damages for the related tort."); *accord Martinez v. Port Auth. of N.Y. and N.J.*, 445 F.3d 158, 161 (2d Cir. 2006).  The parties shall promptly meet and confer and, by no later than November 14, 2011, submit for the Court's consideration a proposed instruction consistent with the foregoing, proposing any adjustments to the wording that the parties consider appropriate.

For these reasons, the Court considers it inappropriate to provide the District's proposed jury instruction in articulating the legal standards governing Williams' hostile work environment claims.  Instead, upon request and with an appropriate evidentiary foundation, the Court shall consider (a) instructing the jury to disregard any individual acts that are "different in kind" or "remote in time" that they could not be part of the same hostile work environment and (b) directing the jury to avoid awarding duplicative damages for the same injury.

### III.  CONCLUSION

For the reasons set forth above, the Court shall GRANT-IN-PART and DENY-IN-PART

21

the District's [158] Motion Regarding Legal Basis for Defenses as follows:

(a)     The Court declines to instruct the jury on a categorical "ministerial or nondiscretionary investigation" exception to the DC-WPA.  However, the Court shall (i) amend the parties' agreed-upon Jury Instruction No. 8 to include a reference to "investigations" and (ii) upon the District's request and provided an appropriate evidentiary foundation is made at trial, consider instructing the jury that it "may consider the extent to which the investigation was non-discretionary or required by regulation or policy" in determining whether Williams has met her burden of demonstrating that her protected disclosure was a "contributing factor" in the investigation or whether the District has met its burden of establishing by "clear and convincing" evidence that the investigation would have occurred even in the absence of Williams' protected disclosure.

(b)     The Court declines to instruct the jury that it must find that any challenged personnel action "rise[s] to the same level of seriousness" as those specifically enumerated in D.C. CODE § 1-615.52(a)(5) (2006).  However, the Court shall consider instructing the jury that a prohibited personnel action must rise to such a level that it "might well have dissuaded a reasonable employee in Plaintiff's position from making a protected disclosure."

(c)     The Court declines to instruct the jury that it cannot consider any "individual act of alleged retaliation for which [Williams] seeks damages . . . in determining whether [she] has met the required level of proof for establishing a hostile work environment."  However, the Court shall, upon the District's request and provided

22

an appropriate evidentiary foundation is made at trial consider (i) instructing the

jury to disregard any individual acts that are so "different in kind" or "remote in

time" that they could not be part of the same hostile work environment and (ii)

providing a generalized instruction to avoid a duplicative damages award.

By no later than November 14, 2011, the parties shall submit for the Court's

consideration (a) proposed instructions consistent with the Court's conclusions set forth above,

proposing any adjustments to the wording provided by the Court that the parties consider

appropriate, and (b) a revised verdict form(s) updated to reflect the refinement of the claims and

defenses in this action and the parties' proposed jury instructions.

Before concluding, the Court pauses to acknowledge that it cannot predict with certainty

how events will unfold at trial.  The foregoing analysis is based on the record as it now stands

and the arguments articulated by the parties to date.  As evidence is presented at trial, the parties

may encounter "issues that could not reasonably have been anticipated" earlier.  FED. R. CIV. P.

51(a)(2)(A).  To be clear, the parties are not absolutely foreclosed from raising such issues at the

appropriate time.  However, the parties are cautioned that this is not an invitation to recycle old

arguments.

An appropriate Order accompanies the Memorandum Opinion.


Date:   October 19, 2011


                              _____/s/_____
                              **COLLEEN KOLLAR-KOTELLY**
                              United States District Judge


23