# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHRISTINA CONYERS WILLIAMS,

      Plaintiff,

    v.

ROBERT JOHNSON, *et al.*,

      Defendants.

Civil Action No. 06-02076 (CKK)

## MEMORANDUM OPINION AND ORDER
(November 18, 2011)

      In this action, Plaintiff Christina Conyers Williams ("Williams") claims that Defendant, the District of Columbia (the "District"), retaliated against her in violation of the District of Columbia Whistleblower Protection Act.  More specifically, she alleges that Robert Johnson, the Senior Deputy Director of the Addiction Prevention and Recovery Administration, and David Anthony, the Chief of Staff to Mr. Johnson,  retaliated against her in a variety of ways for testimony that she gave before the District of Columbia Council in February 2006.[1]  The action is now in the middle of a jury trial, which began on November 16, 2011.

      This Memorandum Opinion and Order addresses the question of whether the District has shown that Mr. Anthony qualifies as an "unavailable witness," such that the District might use his deposition at trial in accordance with Rule 32 of the Federal Rules of Civil Procedure.[2]  In

---

[1]  While it has not always been the case, Mr. Johnson and Mr. Anthony now appear in this action solely in their official capacities.  The parties are in agreement that the only true defendant at this point is the District itself.

[2]  The Court summarized its decision on the record at the beginning of the trial day on November 18, 2011

support of its position, the District relies exclusively on Rule 32(a)(4)(D), which provides:

> A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds . . . that the party offering the deposition could not procure the witness's attendance by subpoena.

FED. R. CIV. P. 32(a)(4)(D).  The question for the Court is whether the District exercised "reasonable diligence" in attempting to procure Mr. Anthony's attendance by subpoena.  The Court finds that the District has failed to meet this standard.  Accordingly, in an exercise of its discretion, the Court shall preclude the District from using Mr. Anthony's deposition in lieu of live testimony on its case-in-chief.[3]

## I.  BACKGROUND

Following the Court's resolution of the parties' dispositive motions and motions *in limine*, the Court held a Status Hearing on July 25, 2011 to discuss pretrial proceedings.  During that hearing, the Court ordered "the parties to exercise their best efforts to contact all their anticipated witnesses and determine their availability for trial," stating that it expected the parties to "be able to identify those witnesses that are likely to testify at trial" at the Pretrial Conference.  Order (July 25, 2011), ECF No. [134], at 6.  When the Court held the first Pretrial Conference on September 1, 2011, it ordered the parties to "promptly contact anticipated witnesses to determine their availability for trial for the weeks of November 7, November 14, and November 28, 2011,"

---

[3]  While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents, listed in chronological order of their filing: District of Columbia's Stmt. Regarding Unavailability of David Anthony ("Def.'s Stmt."), ECF No. [175]; Aff. of Attempted Serv. ("Def.'s Aff."), ECF No. [175-1]; Pl.'s Opp'n to the District's Req. for a Finding that David Anthony is "Unavailable" ("Pl.'s Opp'n"), ECF No. [181]; District of Columbia's Reply in Further Supp. of its Stmt. Regarding Unavailability of David Anthony ("Def.'s Reply"), ECF No. [187].  The Court has also relied on the statements and arguments raised by counsel on the record, in particular on October 19, 2011, November 14, 2011, November 17, 2011, and November 18, 2011.

to "advis[e] the Court of the result of their inquiries," and to "indicat[e] when the parties and witnesses w[ould] be available to proceed to trial." Order (Sept. 1, 2011), ECF No. [152], at 8-9.

On September 12, 2011, the parties filed a Joint Status Report, wherein both sides represented that they "ha[d] attempted to contact their significant non-party witnesses" but had not "received any response to those communications to date." Parties' Joint Status Report Regarding Proposed Trial Dates, ECF No. [153], at 1. On September 13, 2011, upon reviewing the parties' Joint Status Report, the Court set the date for the first day of trial as November 16, 2011, ordering the parties to "promptly mak[e] all necessary arrangements to secure their witnesses' availability at trial, including, if appropriate, the issuance of subpoenas." Min. Order (Sept. 13, 2011).

On September 15, 2011, the parties filed designations of the depositions that they might use at trial, with both sides indicating that they might use Mr. Anthony's deposition. *See* Joint Supplement to the Revised Joint Pretrial Stmt., ECF No. [154]. In response to Williams' designations, the District stated that it had "no objections . . . based on Plaintiff's representation that the designated portions will only be used to the extent Mr. Anthony is unavailable for trial." *Id.* at 3. Meanwhile, in response to the District's designations, Williams "object[ed]" and "demand[ed] strict compliance with Fed.R.Civ.P. 32(a)(4)." *Id.* at 19. Immediately below Williams' objection, the District "respond[ed] that the deposition testimony of Mr. Anthony will only be offered to the extent he is unavailable to testify at trial." *Id.* at 20.

Subsequently, at the continued Pretrial Conference held on October 19, 2011, the District informed the Court that it had been unable to secure Mr. Anthony's agreement to appear voluntarily at trial. Following the conference, the Court ordered the parties to appear for a

hearing to address their objections pertaining to deposition designations.  Min. Order (Oct. 19,

2011).  Prior to that hearing, the parties filed revised deposition designations, narrowing their

areas of dispute.  *See* Revised Joint Pretrial Supplement to the Revised Joint Pretrial Stmt., ECF

No. [172].  Both sides again indicated that they might use Mr. Anthony's deposition at trial.  In

response to Williams' designations, the District again stated that it had no "objections . . . based

on Plaintiff's representation that the designated portions will only be used to the extent Mr.

Anthony is unavailable for trial."  *Id.* at 3.  In response to the District's designations, Williams

again "object[ed]" and "demand[ed] strict compliance with Fed.R.Civ.P. 32(a)(4)."  *Id.* at 8.

Once again immediately below Williams' objection, the District again "respond[ed] that the

deposition testimony of Mr. Anthony will only be offered to the extent he is unavailable to testify

at trial."  *Id.* at 9.

On November 7, 2011, the Court held a continued Pretrial Conference to address the

parties' deposition designations and objections to those designations.  *See* Order (Nov. 7, 2011),

ECF No. [173], at 1.  During the conference, the District, indicating that it had been unable to

locate Mr. Anthony, inquired as to what the Court would "be expecting in terms of the

unavailability showing."  At this point, the Court learned for the first time that the parties were in

agreement that Mr. Johnson was an "unavailable witness" because he was located outside the

Court's subpoena power, *see* FED. R. CIV. P. 32(a)(4)(B), but were in disagreement as to whether

Mr. Anthony qualified as an "unavailable witness."  In light of the apparent dispute, the Court

ordered each side to file "[a] statement . . . providing a legal and factual basis for being able to

use David Anthony's deposition testimony at trial, . . . includ[ing] an explanation as to why such

use would be consistent with FED. R. CIV. P. 32 (*e.g.*, 'the party offering the deposition could not

procure the witness's attendance by subpoena'), with citation to appropriate legal authority." *Id.*

On November 8, 2011, at 8:00 p.m., the District make its first attempt to serve Mr. Anthony with a subpoena requiring his attendance at the trial beginning on November 16, 2011. Def.'s Aff. ¶ 1.  An investigator from the Office of the Attorney General for the District of Columbia visited Mr. Anthony's residence at 1443 Channing Street, N.E., Washington, D.C. 20008, but no one answered when he knocked on the front door.  *Id.*  A neighbor confirmed Mr. Anthony resided at the address, but indicated, in sum or in substance, that Mr. Anthony "comes and goes."  *Id.*  The District's investigator left his business card at the front door and left the premises.  *Id.*

On November 9, 2011, at 7:45 a.m., the District's investigator made a second attempt to serve Mr. Anthony with a subpoena.  *Id.* ¶ 2.  The investigator noticed that his business card remained in the same place.  *Id.*  Again, his knocks were not answered.  *Id.*  Meanwhile, a female identifying herself as Mr. Anthony's "cousin" approached the investigator, confirmed that Mr. Anthony resided at the address, and indicated that she had seen Mr. Anthony "a few days ago." *Id.*  Later that same day, at 3:45 p.m., the investigator returned to the residence and made a third attempt to serve Mr. Anthony with a subpoena.  *Id.* ¶ 3.  Noticing that his business card remained in the same place, the investigator this time posted the subpoena "in plain view on the front of [the] residence" and left the premises.  *Id.*

On November 10, 2011, the District filed a statement purporting to show why Mr. Anthony's deposition could be used at trial in accordance with Rule 32.[4]  *See* Def.'s Stmt.  On

---

[4]  Williams, meanwhile, failed to file a timely statement explaining why she could use Mr. Anthony's deposition on her case-in-chief in accordance with Rule 32, leading the Court to preclude Williams from making such use of Mr. Anthony's deposition at trial.  *See* Min. Order

November 12, 2011, upon reviewing the District's statement, the Court encouraged the District

to "continue to attempt to serve Mr. Anthony with a subpoena . . . until service is successful or

until the District begins its case-in-chief." Min. Order (Nov. 12, 2011).  The Court would later

learn that the District made no attempt to serve Mr. Anthony over the four-day period extending

from November 10, 2011 through November 13, 2011, which included a three-day holiday

weekend.  On November 13, 2011, Williams filed her opposition to the District's statement. *See*

Def.'s Opp'n.

 On November 14, 2011, at 12:43 p.m., the District's investigator made a fourth attempt to

serve Mr. Anthony with a subpoena. *See* Def.'s Reply Ex. 1.  That same day, the Court held a

final Pretrial Conference.  During the conference, the District's counsel represented that they had

been attempting to serve Mr. Anthony at his last-known residential address and admitted that

they believed that Mr. Anthony has resided at that same address "all along."[5]  The District's

counsel also conceded that they never had an explicit conversation, let alone an agreement or

stipulation with Williams' counsel, about how Mr. Anthony would be treated in terms of his

availability for trial.  Rather, the District's counsel merely claimed that the "tenor" of past

discussions led them to assume that neither party would be able to locate Mr. Anthony prior to

trial.  Finally, the District's counsel frankly admitted that "in hindsight [they] probably should

have done more" to procure Mr. Anthony's attendance at trial, particularly "in the period" before

---

(Nov. 10, 2011), ECF No. [178]; Order Clarifying Minute Order dated November 10, 2011 (Nov. 12, 2011), ECF No. [180].

 [5] Mr. Anthony retired from his employment with the District of Columbia government and the record does not indicate that the District was aware of Mr. Anthony having obtained new employment.  Accordingly, Mr. Anthony's residence was the sole focus of the District's service efforts.

the District first attempted to serve Mr. Anthony on November 8, 2011.

On November 15, 2011, the District filed its reply in further support of its position that it may use Mr. Anthony's deposition at trial. *See* Def.'s Reply. That same day, at 11:00 a.m., the District's investigator made a fifth attempt to serve Mr. Anthony with a subpoena. *See id.* Ex. 2.

The trial began on November 16, 2011. Earlier that morning, at 2:30 a.m., the District made its sixth attempt to serve Mr. Anthony with a subpoena. Williams rested her case-in-chief on November 17, 2011. On November 17, 2011, at the end of the trial day, the District provided an on-the-record, oral account of its more recent efforts to serve Mr. Anthony. Later that evening, at approximately 7:00 p.m., the District made its seventh attempt to serve Mr. Anthony. On November 18, 2011, at approximately 7:30 a.m., the District made its eighth attempt to serve Mr. Anthony. That same day, Williams submitted a document comparing her efforts to serve a subpoena upon a non-party witness who testified at trial, Julian Muhammad f/k/a Julian Tolver, with the District's efforts to serve a subpoena on Mr. Anthony.

## II.  LEGAL STANDARD

Rule 32 of the Federal Rules of Civil Procedure governs the use of depositions in court proceedings. In support of its position that it may use Mr. Anthony's deposition testimony at trial, the District relies exclusively on Rule 32(a)(4)(D), which provides:

> A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds . . . that the party offering the deposition could not procure the witness's attendance by subpoena.

FED. R. CIV. P. 32(a)(4)(D). Implicit in this provision is an obligation on the part of the proponent to first exercise "reasonable diligence" to procure the witness's attendance by subpoena. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 308 (7th Cir.), *cert. denied*, __

U.S. __, 131 S. Ct. 643 (2010); *accord Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 963

(10th Cir. 1993). Generally speaking, "reasonable diligence" is the "degree of diligence" that

would be expected from an attorney of "ordinary prudence" under the circumstances presented.

BLACK'S LAW DICTIONARY 523 (9th ed. 2009). Accordingly, "[a] request to admit deposition

testimony may be denied if the offeror's inability to procure the witness's attendance at trial is at

least in part due to the offeror's own lack of diligence." 7-32 J. Moore et al., MOORE'S FEDERAL

PRACTICE § 32-26.

The proponent bears the burden of establishing that the requirements of Rule 32(a)(4)(D)

are satisfied, *Angelo*, 11 F.3d at 963, and the trial judge has "broad discretion" to determine

whether the proponent has met its burden, *Thomas*, 604 F.3d at 308 (citing *Griman v. Makousky*,

76 F.3d 151, 154 (7th Cir. 1996)); *see also Lear v. Equitable Life Assurance Soc. of U.S.*, 798

F.2d 1128, 1135 (8th Cir. 1986), *cert. denied*, 479 U.S. 1066 (1987). In particular, the trial

judge's determination of whether a party has exercised reasonable diligence will be reviewed

with considerable deference. *Cf. United States v. Tchibassa*, 452 F.3d 918, 925 n.4 (D.C. Cir.

2006) (quoting *Doggett v. United States*, 505 U.S. 647, 652 (1992)), *cert. denied*, 549 U.S. 1298

(2007); *Gaw v. Comm'r*, 45 F.3d 461, 465 (D.C. Cir. 1995).

### III. DISCUSSION

Relying exclusively on Rule 32(a)(4)(D), the District claims that Mr. Anthony qualifies as

an "unavailable witness" because it could not procure Mr. Anthony's attendance by subpoena.

*See* Def.'s Stmt. at 1. Accordingly, as both parties' agree, the essential question for the Court is

whether the District exercised "reasonable diligence" in attempting to procure Mr. Anthony's

attendance by subpoena. For the reasons set forth below, whether considered together or

independently, the Court finds that the District has failed to meet this standard.

   A.   *The District's Efforts to Communicate with Mr. Anthony through Informal Means*
        *Before November 8, 2011 Do Not Establish Reasonable Diligence*

   The District first contends that it exercised reasonable diligence in part because "[i]n the weeks leading up to trial," it attempted to contact Mr. Anthony by telephone and e-mail but received no response.  Def.'s Stmt. at 2.  The District avers, and for present purposes the Court shall assume, that these informal methods had been successful in securing Mr. Anthony's voluntary attendance at his deposition.  *See* Def.'s Reply at 1.  Regardless, several considerations lead the Court to conclude that the District's attempts to contact Mr. Anthony through these informal means are not sufficient to establish reasonable diligence.

   First, despite having ample opportunity to do so, the District has never provided this Court with any meaningful measure of detail about its informal attempts to communicate with Mr. Anthony.  The District's proffer that such efforts began "[a]fter . . . September 13, 2011," Def.'s Reply at 1, essentially reduces to the unilluminating contention that it attempted to communicate with Mr. Anthony through telephone and e-mail on multiple occasions.  To meaningfully assess the reasonableness of the District's efforts, the Court would need to know more about when the District made such attempts and, more importantly, on how many occasions.  The District has not provided this level of detail.

   Second, and more to the point, the District only indicates that it attempted to contact Mr. Anthony "[a]fter the Court's September 13, 2011 Minute Order directing the parties to arrange for witnesses."  Def.'s Reply at 1.  But the Court's Minute Order dated September 13, 2011 was not the first time that the Court directed the parties to reach out to their witnesses to ensure their availability for trial.  On July 25, 2011, the Court ordered the District to "exercise [its] best

efforts to contact all [its] anticipated witnesses and determine their availability for trial."  Order

(July 25, 2011), ECF No. [134], at 6.  Despite this unambiguous instruction, the District offers no

indication of what efforts, if any, it made to communicate with Mr. Anthony between July 25,

2011 and September 13, 2011, a period of one month and nineteen days.  The Court does not

doubt that there is a time and a place for parties to use informal means to secure a witness's

voluntary attendance at trial.  However, had the District complied with the Court's directive on

July 25, 2011 to exercise its best efforts to contact all its anticipated witnesses, it would have

known long before September 13, 2011, and certainly long before it first attempted to serve Mr.

Anthony with a subpoena on November 8, 2011, that informal means were unlikely to be

successful in this case.

    Third, and finally, the District's argument does not speak directly to the question posed

by Rule 32(a)(4)(D), which is whether the District exercised reasonable diligence in attempting

to "procure the witness's attendance *by subpoena*."  FED. R. CIV. P. 32(a)(4)(D) (emphasis

added).  Again, the Court does not doubt that informal attempts to secure a witness's voluntary

attendance at trial may be an appropriate consideration in evaluating the reasonableness of the

proponent's efforts to secure the witness's attendance, but the focus of Rule 32(a)(4)(D) remains

the proponent's attempts to procure the witness's attendance by formal process.  In the final

analysis, informal methods of communication are not a substitute for attempting to procure a

witness's attendance by subpoena.

    For the reasons set forth above, whether considered together or independently, the Court

finds that the District's attempts to informally communicate with Mr. Anthony an unspecified

number of times between September 13, 2011 and November 8, 2011 are insufficient to

discharge the District's burden of establishing that it exercised reasonable diligence in attempting

to secure Mr. Anthony's attendance at trial.  This remains true when these informal efforts are

considered alongside the District's subsequent, and belated, efforts to formally serve Mr.

Anthony with a subpoena.  The Court now turns to that subject.

> B.     *The District's Efforts to Formally Serve Mr. Anthony with a Subpoena Eight Days Before Trial Do Not Establish Reasonable Diligence*

The District contends that it exercised reasonable diligence in part because it made

approximately eight attempts to serve Mr. Anthony with a subpoena between November 8, 2011

and November 18, 2011.  *See* Def.'s Stmt. at 2.  For present purposes, the Court shall assume,

without deciding, that the District has presented competent evidence supporting its attempts to

serve Mr. Anthony.[6]  The Court shall also assume, without deciding, that the total number of

attempts that the District made, could be sufficient to establish reasonable diligence in the right

circumstances.  Even with these assumptions, the Court finds that the District failed to exercise

reasonable diligence when it waited until November 8, 2011 to make its first attempt to serve Mr.

Anthony with a subpoena.

The District's characterization of the Court's Minute Order dated September 13, 2011 as

"directing the parties to arrange for witnesses," Def.'s Reply at 1, omits a critical part of what the

Court actually ordered in its Minute Order dated September 13, 2011.  Significantly, the Court

did not merely direct the parties to "arrange for witnesses."  After setting the first day of trial for

November 16, 2011, the Court expressly ordered the District to "*promptly* mak[e] all necessary

arrangements to secure their witnesses' availability at trial, *including, if appropriate, the issuance*

---

[6]  The District relies in part on the unsworn averments of its counsel and unauthenticated
e-mail correspondence.

*of subpoenas.*" Min. Order (Sept. 13, 2011) (emphasis added).  Upon receipt of such a directive

from a trial judge, an attorney of ordinary prudence would have done one of two things.  First, a

reasonable attorney might have secured opposing counsel's consent to treat a witness as

unavailable and memorialized the agreement in a written stipulation.  Second, barring such an

agreement, a reasonable attorney would promptly take affirmative steps to "procure the witness's

attendance by subpoena." FED. R. CIV. P. 32(a)(4).  The District did neither.  Despite the Court's

unambiguous instruction, the District plainly did not act promptly to secure Mr. Anthony's

availability for trial.[7]  Instead, it waited until November 8, 2011, an extraordinary one month and

twenty-six days later and eight days before trial, to make its first attempt to serve a subpoena on

Mr. Anthony.  On this basis alone, the District failed to exercise reasonable diligence.

During the final Pretrial Conference on November 14, 2011, the District conceded that it

"should have done more" to procure Mr. Anthony's attendance at trial before November 8, 2011.

Nonetheless, the District attempts to minimize its dilatoriness through a variety of arguments.

The Court addresses each argument in turn.

First, the District, arguing that it "immediately took steps to subpoena Mr. Anthony when

it became clear that Plaintiff intended to contest Mr. Anthony's testimony," intimates that

Williams' counsel lulled the District's counsel into believing that Williams would not contest

Mr. Anthony's "unavailability." Def.'s Reply at 1.  As an initial matter, this contention fails at

---

[7]  By failing to act promptly, the District contravened the Court's Minute Order dated
September 13, 2011.  The Court has the discretion to issue "any just orders" when a party "fails
to obey a scheduling or other pretrial order." FED. R. CIV. P. 16(f)(1)(C). In this case, the Court
finds it appropriate to exercise its discretion to preclude the District from using Mr. Anthony's
deposition testimony at trial.  Accordingly, this provides a separate, alternative basis for the
Court's decision today.

the outset because it ignores the fact that *the Court* expressly ordered the District to "promptly

mak[e] all necessary arrangements to secure [its] witnesses' availability at trial, *including, if*

*appropriate, the issuance of subpoenas*," on September 13, 2011.  Min. Order (Sept. 13, 2011)

(emphasis added).  But rather than promptly taking steps to subpoena Mr. Anthony, the District

waited another month and twenty-six days before taking appropriate action.  Furthermore, the

District's counsel also conceded that they never had an explicit conversation, let alone an

agreement or stipulation with Williams' counsel, about how Mr. Anthony would be treated in

terms of his availability for trial.  Even assuming, for the sake of argument, that a party may

reasonably proceed along the path to trial without subpoenaing a witness under an assumption

that opposing counsel might at some point consent to treat the witness as "unavailable," in this

case, the District's assumption was not reasonable.  As early as September 15, 2011, one month

and twenty-four days before the District first attempted to serve Mr. Anthony with a subpoena,

Williams had unambiguously objected to the District's stated intention to use Mr. Anthony's

deposition at trial.  *See* Joint Supplement to the Revised Joint Pretrial Stmt., ECF No. [154], at

19.  In so doing, Williams expressly stated that she would demand "strict compliance" with Rule

32(a)(4), which governs the determination of when witnesses may be deemed "unavailable."  *Id.*

The District responded that it would offer Mr. Anthony's deposition testimony "only . . . to the

extent [that] he is unavailable to testify at trial," Joint Supplement to the Revised Joint Pretrial

Stmt., ECF No. [154], at 20, demonstrating that the District was aware of the "unavailability"

requirement, and Williams' objection on that basis, long before it began making efforts to

subpoena Mr. Anthony.

       Second, the District claims that several unidentified sources indicated at an unidentified

point in time that Mr. Anthony had "disappeared." Def.'s Reply at 2. This allegation is stated in such bare and unilluminating terms as to be virtually devoid of meaning. More to the point, the District concedes that it has been serving Mr. Anthony at his last-known residential address and that it believed that Mr. Anthony has been residing at this address all along. In other words, it appears that the District has known where Mr. Anthony actually lives for quite some time. Even if this were not the case, it is implicit in the concept of reasonable diligence that the proponent has made a reasonable attempt to locate the witness. The District has made no attempt to show that it made reasonable efforts to determine Mr. Anthony's location prior to November 8, 2011.

Third, and finally, the District speculates that earlier efforts to serve Mr. Anthony might have been unsuccessful, suggesting that such speculation is supported by "the proffer made by Plaintiff's counsel . . . that Plaintiff too had been attempting to find Mr. Anthony at his address without any success." Def.'s Reply at 3. But the District is the sole proponent of Mr. Anthony's deposition testimony and it is the District's burden to establish reasonable diligence. For this reason, it is perhaps unsurprising that Williams' "proffer," as the District characterizes Williams' counsel's responses to the Court's inquiries during the final Pretrial Conference on November 14, 2011, did not include any meaningful level of specificity as to what efforts Williams made to locate Mr. Anthony or when she made those efforts. Moreover, irrespective of the District's efforts to shift the attention to the efforts made by Williams, the District's own evidence undermines any contention that earlier efforts to serve Mr. Anthony would have been unfruitful. According to the District's investigator, a female identifying herself as Mr. Anthony's cousin had *seen* Mr. Anthony just a "few days" prior to the District's first attempted service on November 8, 2011. *See* Def.'s Aff. ¶ 2. This evidence suggests that with even a modestly more prompt effort,

the District might have been successful in serving a subpoena on Mr. Anthony.  As Williams

notes, "by waiting so late to attempt service of process," the District made "no allowance for the

possibility that Mr. Anthony might be out of town for a day or two," Pl.'s Opp'n at 2, which

should have been of heightened concern to the District given the approaching three-day holiday

weekend and the upcoming Thanksgiving holiday.  Ultimately, it is the District that must bear the

responsibility for any uncertainty as to what might have transpired had it complied with the

Court's directive to "promptly mak[e] all necessary arrangements to secure" Mr. Anthony's

availability at trial, "including, if appropriate, the issuance of subpoenas," on September 13,

2011.  Min. Order (Sept. 13, 2011).  Simply put, we will never know whether earlier efforts

would have been unsuccessful precisely *because* the District did not act with reasonable

diligence.

     To summarize, this was the time line leading up to trial:

- **July 25, 2011 — three months and fourteen days before the District first attempted service:** The District is directed to "exercise [its] best efforts to contact all [its] witnesses and determine their availability for trial."

- **September 1, 2011 — two months and seven days before the District first attempted service:** The District was ordered to "promptly contact anticipated witnesses to determine their availability for trial" between November 7, 2011 and November 28, 2011.

- **September 13, 2011 — one month and twenty-six days before the District first attempted service:** The Court set the first day of trial for November 16, 2011 and ordered the District to make "all necessary arrangements to secure [its]

witnesses' availability at trial, including, if appropriate, the issuance of subpoenas."

- **September 15, 2011 — one month and twenty-four days before the District first attempted service:** Williams objects to the District's stated intention to use Mr. Anthony's deposition at trial and demands "strict compliance" with Rule 32(a)(4).

- **October 19, 2011 — twenty days before the District first attempted service:** Williams again objects to the District's stated intention to use Mr. Anthony's deposition at trial and demands "strict compliance" with Rule 32(a)(4).

- **November 8, 2011 — eight days before trial:** The District makes its first attempt to serve a subpoena on Mr. Anthony at his last-known residential address.

- **November 10, 2011 through November 13, 2011 — the week before trial:** Despite its prior attempts being unsuccessful, the District makes no attempt to serve a subpoena on Mr. Anthony.

Taking into account this time line, and after careful consideration of the District's showing, the Court in its discretion finds that, under the unique circumstances presented in this case, the District did not exercise "reasonable diligence" in attempting to procure Mr. Anthony's attendance by subpoena. Once a trial date has been set, a party should promptly and diligently make efforts to subpoena witnesses if their attendance is not readily procured through other means. This principle must be reinforced.

### C.      Other Considerations Supporting the Court's Determination

The Court has also considered three other factors in reaching its decision today.  None of these factors affects the Court's bottom-line conclusion.  Nonetheless, the Court mentions them here to provide a more fulsome picture of the surrounding circumstances.

First, the Court is sensitive to the fact that issues of credibility are often "crucial" in employment discrimination and retaliation actions such as this one, *Christie v. Foremost Ins. Co.*, 785 F.2d 584, 586 (7th Cir. 1986), and that live testimony is often essential to putting the jury in a position to assess a witness's credibility.  In this case, not only does the District seek to introduce Mr. Anthony's deposition in lieu of live testimony, which would have been its right had it satisfied its burden of showing compliance with Rule 32(a)(4)(D), the District seeks to introduce a disjointed assortment of excerpts from Mr. Anthony's deposition testimony, undermining to some extent the jury's ability to meaningfully assess the weight that should be accorded to that testimony.

Second, as the trial has progressed, the Court's assessment has been that the role of Mr. Anthony is not as great as the parties' pretrial submissions described.  In the Court's view, Williams' own testimony and other evidence in the record shows Mr. Anthony having a far more circumscribed role in the personnel actions at issue than previously suggested.  Moreover, Mr. Anthony's deposition testimony, taken long before trial and before the parties had fully crystallized the theories upon which they would proceed at trial, is not well-tailored to speak to the evidence that has actually been presented at trial.  As a result, the Court's assessment is that the utility of Mr. Anthony's deposition, while not altogether absent, has diminished as the trial has progressed.  However, the Court pauses to observe that if the District considered Mr.

Anthony's testimony important to its case, then that consideration obviously should have informed the diligence that it exercised in attempting to procuring Mr. Anthony's attendance by subpoena.

Third, and finally, the Court is mindful that it also precluded Williams from using Mr. Anthony's deposition at trial for failing to establish his unavailability.  Accordingly, the Court's decision today will not result in a one-sided record when it comes to Mr. Anthony's testimony. Neither party has been able to introduce such testimony.

Again, the Court emphasizes that none of these three factors affects the Court's bottom-line conclusion.  Even in their absence, the Court would exercise its discretion in the same manner and find that the District has, under the unique circumstances presented in this case, failed to exercise reasonable diligence in procuring Mr. Anthony's attendance at trial.

## IV.  CONCLUSION AND ORDER

For the reasons set forth above, the Court finds that the District has failed to carry its burden of showing that it exercised "reasonable diligence" in attempting to procure Mr. Anthony's attendance by subpoena.  Therefore, and in an exercise of the Court's broad discretion, it is, this 18th day of November, 2011, hereby

**ORDERED** that the District is PRECLUDED from using Mr. Anthony's deposition in lieu of live testimony on its case-in-chief.

**SO ORDERED.**

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge