**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CHRISTINA CONYERS WILLIAMS,

        Plaintiff,

    v.                                                                                   Civil Action No. 06-02076 (CKK)

ROBERT JOHNSON, *et al.*,

        Defendants.

**MEMORANDUM OPINION**
(July 2, 2012)

Following a three-day trial, a jury in this Court found that Defendant, the District of

Columbia, retaliated against Plaintiff Christina Conyers Williams in violation of the District of

Columbia Whistleblower Protection Act (the "DC-WPA") and awarded Plaintiff $300,000 in

damages.  Defendant responded by filing a [204] Motion for Judgment as a Matter of Law or, in

the Alternative, for a New Trial ("Motion for Judgment"), contending that it is entitled to relief

under Federal Rule of Civil Procedure 50(b) because the evidence presented at trial was

insufficient to support the jury's findings that Plaintiff (1) made a protected disclosure and (2)

was constructively discharged.  Upon a searching review of the parties' submissions, the relevant

authorities, and the record as a whole, the Court concludes that the evidence was legally

sufficient to sustain the jury's verdict.[1]  Accordingly, Defendant's Motion for Judgment shall be

DENIED.  The Court shall allow judgment on the verdict.

---

[1]  While the Court has reviewed the whole record, including the trial transcripts and exhibits, its
consideration has focused on the following documents: Mem. of P. & A. in Supp. of Def.'s Mot.
for J. as a Matter of Law or, in the Alternative, for a New Trial, ECF No. [204] ("Def.'s Mem.");
Pl.'s Mem. of P. & A. in Opp'n to Def. District of Columbia's Mot. for J. as a Matter of Law or
for a New Trial, ECF No. [207]; District of Columbia's Reply in Further Supp. of its Mot. for J.

# I. BACKGROUND

The Court assumes familiarity with its prior opinions in this action, which set forth in detail the history of the case.[2]  In addition, although the pending motion is contested, the parties' disagreement over the factual support for the jury's verdict is confined to discrete pockets, obviating in large part the need for specific references to the record.  The Court will therefore reference the record primarily when highlighting particularly pertinent evidence that a reasonable jury could credit, but it shall do so largely when addressing the merits of the parties' arguments.  *See infra* Part III.

\* \* \*

Plaintiff was formerly employed as Chief of the Center of Research Evaluation and Grants for the Addiction Prevention and Recovery Administration (the "APRA"), a component of the District of Columbia Department of Health.  In April 2005, Plaintiff was assigned responsibility for the implementation of the APRA's Client Information System ("ACIS") software, which was intended to allow staff members to access and track information about the APRA's clients.  On February 14, 2006, Plaintiff and Robert Johnson ("Johnson")—the Senior Deputy Director of the APRA and Plaintiff's supervisor—attended a routine oversight hearing before the District of Columbia Council ("Council") Committee on Health.  During the course of the hearing, Councilmember David A. Catania posed several questions regarding the

---

as a Matter of Law or, in the Alternative, for a New Trial, ECF No. [208] ("Def.'s Reply").  In an exercise of its discretion, the Court finds that hearing oral argument on Defendant's motion would not be of assistance in rendering a decision.  *See* LCvR 7(f).

[2]  The abbreviated citations for the Court's published decisions are, in reverse chronological order: 278 F.R.D. 10 (Nov. 22, 2011); 278 F.R.D. 1 (Nov. 18, 2011); 825 F. Supp. 2d 88 (Oct. 19, 2011); 818 F. Supp. 2d 197 (Oct. 17, 2011); 818 F. Supp. 2d 202 (Oct. 17, 2011); 806 F. Supp. 2d 44 (Aug. 17, 2011); 794 F. Supp. 2d 22 (May 23, 2011); 747 F. Supp. 2d 10 (Oct. 31, 2010); 701 F. Supp. 2d 1 (Mar. 18, 2010); 597 F. Supp. 2d 107 (Feb. 18, 2009); 537 F. Supp. 2d 141 (Mar. 14, 2008).  The Court's unpublished decisions are myriad.  *See, e.g.*, ECF Nos. [134], [140], [152], [174], [180].

implementation of the ACIS software.  Johnson beckoned Plaintiff to approach the witness table

and respond to Councilmember Catania's questions, whereupon Plaintiff provided approximately

ten minutes of videotaped testimony about the implementation of the ACIS software.  *See*

*generally* Pl.'s Trial Ex. 13 (Excerpts of Tr. of Hr'g Before Council of the District of Columbia

Committee on Health), ECF No. [204-3] ("2/14/06 Hr'g Tr.").

By Plaintiff's account, a concerted campaign of harassment and retaliation against her

began immediately on the heels of her testimony before the Council.  At trial, she testified that

Johnson and his Chief of Staff, David Anthony ("Anthony"), subjected her to a series of adverse

actions, including, but not limited to: repeatedly threatening to terminate her employment;

orchestrating an administrative investigation into her residency status; subjecting her to false

accusations, impossible demands, and open hostility; and stripping her of responsibilities, staff,

and resources.  *See, e.g.*, Tr. of Jury Trial Before the Hon. Colleen Kollar-Kotelly, U.S.D.J.

(Nov. 17, 2011), ECF No. [210] ("11/17/11 Tr."), at 16-23, 38-42, 46-55, 58-61, 64, 110-11; *see*

*also infra* Part III.B.  Plaintiff resigned in June 2007 after accepting a position with the United

States Public Health Service.

*   *   *

The trial in this case began on November 16, 2011.  By then, Johnson and Anthony were

sued only in their official capacities, leaving the District of Columbia, for all practical purposes,

as the sole defendant.  Plaintiff proceeded to trial on eleven claims under the DC-WPA, ten

based on discrete acts of alleged retaliation, including Plaintiff's alleged constructive discharge,

and the eleventh based on an alleged retaliatory hostile work environment.  *See* Pl.'s Am. Stmt.

of Claims, ECF No. [147].  After Plaintiff rested her case, Defendant made an oral motion for

judgment as a matter of law under Federal Rule of Civil Procedure 50(a).  *See* 11/17/11 Tr. at

199-208.  At that point, the Court dismissed one claim, which concerned Plaintiff's allegation that she was denied a parking lot access card, and took the remainder of Defendant's motion under advisement.  *See id.* at 207-08; *see also* Min. Order (Nov. 18, 2011).  Defendant orally renewed its motion for judgment as a matter of law at the close of all the evidence.  *See* Tr. of Jury Trial Before the Hon. Colleen Kollar-Kotelly, U.S.D.J. (Nov. 21, 2011), ECF No. [212], at 10.  The Court again took the motion under advisement, *see id.*, and the ten remaining claims were submitted to the jury.  On November 21, 2011, the jury returned a verdict in Plaintiff's favor on all ten claims and awarded her damages in the amount of $300,000.  *See* Verdict Form, ECF No. [194].  Defendant's pending motion for relief under Rule 50(b) followed.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 50(b) provides that, once a jury has rendered its verdict, the verdict loser "may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial."  FED. R. CIV. P. 50(b).  Relief under Rule 50(b) is "highly disfavored," *Boodoo v. Cary*, 21 F.3d 1157, 1161 (D.C. Cir. 1994), and appropriate only "if the court finds that the evidence was legally insufficient to sustain the verdict," *Ortiz v. Jordan*, __ U.S. __, 131 S. Ct. 884, 891-92 (2011).  If the court finds the evidence was legally insufficient to sustain the jury's verdict, then it may "direct the entry of judgment as a matter of law" in favor of the verdict loser or "order a new trial."  FED. R. CIV. P. 50(b)(2), (b)(3).  If, however, the district court finds that the evidence was legally sufficient to sustain the jury's verdict, then it must "allow judgment on the verdict."  FED. R. CIV. P. 50(b)(1).

In this context, the central question "is whether there was sufficient evidence upon which the jury could base a verdict in [the prevailing party's] favor."  *Scott v. District of Columbia*, 101 F.3d 748, 752 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1231 (1997).  The evidence in support of

the verdict must "be more than merely colorable; it must [be] significantly probative."

*Richardson by Richardson v. Richardson-Merrell, Inc.*, 857 F.2d 823, 829 (D.C. Cir. 1988), *cert.*

*denied*, 493 U.S. 882 (1989).  However, because the fundamental function of the jury is "to

select, from among conflicting inferences and conclusions, that which it finds most reasonable,"

*Metrocare v. Washington Metro. Area Transit Auth.*, 679 F.2d 922, 924 (D.C. Cir. 1982)

(citation omitted), "the court cannot substitute its view for that of the jury, and can assess neither

the credibility nor weight of the evidence," *Scott*, 101 F.3d at 753.  The jury's verdict must stand

"unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided

that reasonable men and women could not disagree."  *Id.* at 752.

## III.  DISCUSSION

Invoking Federal Rule of Civil Procedure 50(b), Defendant asserts that it is entitled to

judgment as a matter of law or a new trial because the evidence presented at trial was insufficient

to support the jury's findings that Plaintiff (1) made a protected disclosure and (2) was

constructively discharged.  Because the Court concludes that the evidence was legally sufficient

to sustain the jury's findings on both accounts, the Court shall allow judgment on the verdict.

A.      *Sufficient Evidence Supported the Jury's Finding that Plaintiff Made a Protected*
        *Disclosure*

The DC-WPA prohibits retaliation based on an employee's "protected disclosure," D.C.

CODE § 1-615.53(a),[3] a term that is statutorily defined as:

> [A]ny disclosure of information, not specifically prohibited by
> statute, by an employee to a supervisor or a public body that the
> employee reasonably believes evidences:
>
> (A)      Gross mismanagement;
>
> (B)      Gross misuse or waste of public resources or funds;

---

[3]  Statutory references are to the 2006 iteration of the DC-WPA, which with a few exceptions not
relevant to the pending motion, was the version that applied in this case.

> (C)     Abuse of authority in connection with the administration of a public program or the execution of a public contract;
>
> (D)     A violation of a federal, state, or local law, rule, or regulation, or of a term of contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or
>
> (E)     A substantial and specific danger to the public health and safety.

*Id.* § 1-615.52(a)(6).  In this regard, the question for the fact-finder is whether a "disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee [could] reasonably conclude that the actions of the government evidence" the circumstances delineated in D.C. CODE § 1-615.52(a)(6)(A)-(E).  *Zirkle v. District of Columbia*, 830 A.2d 1250, 1259-60 (D.C. 2003) (citation omitted).  Before trial, the parties agreed to jury instructions tracking this language, *see* Revised Proposed Jury Instructions, ECF No. [144], at 5, 8, and the Court charged the jury accordingly.[4]  In addition, the verdict form included the following special interrogatory: "Do you find that Plaintiff's testimony before the District of Columbia Council in February 2006 included or constituted a protected disclosure?"  Verdict Form at 1.  The jury answered the question in the affirmative.  *Id.*

Defendant contends that no reasonable juror could conclude that Plaintiff made a protected disclosure through her testimony before the Council on February 14, 2006.  *See* Def.'s Mem. at 8-12.  However, evidence that a reasonable jury could credit showed that: (i) by the time Plaintiff testified before the Council, implementation of the ACIS software was already several months behind schedule despite significant financial expenditures; (ii) Plaintiff testified that the ACIS software was nonetheless at the time largely limited to collecting basic demographic data,

---

[4]  The Court excised the final prong of the statutory definition as nobody claimed it had a bearing on the case.

could not collect meaningful assessment data about the APRA's clients, did not implement the National Outcome Measures called for by the federal Substance Abuse and Mental Health Services Administration, and would not be accessible to certain external providers until November 2006; and (iii) at least some of the information conveyed by Plaintiff to the Council either contradicted, or was omitted from, the APRA's official written responses to the Council's questions.[5]  *See, e.g.*, 2/14/06 Hr'g Tr. at 9-10, 19; Pl.'s Trial Ex. 26 (FY 05 Department of Health Oversight Questions & Resps.), ECF No. [204-5] ("2/14/06 Hr'g Resps."), at 14-15, 18. Whether a disinterested observer could reasonably conclude that the facts described by Plaintiff before the Council evidenced gross mismanagement, gross misuse of public funds, an abuse of authority in the administration of a public program, etc., *see* D.C. CODE § 1-615.52(a)(6)(A)-(D), presents the sort of reasonableness inquiry typically entrusted to the jury.  *Cf. Act-Up!/Portland v. Bagley*, 988 F.2d 868, 874 (9th Cir. 1993) ("[O]ur common law tradition . . . since time immemorial has considered the reasonableness of human conduct to be a quintessential jury question.") (Norris, J., dissenting); *Buettner v. Arch Coal Sales, Co., Inc.*, 216 F.3d 707, 714 (8th Cir. 2000), *cert. denied*, 531 U.S. 1077 (2001).  Considering Plaintiff's testimony before the Council in its context and entirety, and affording Plaintiff the benefit of all reasonable inferences, there was sufficient evidence for the jury to conclude that Plaintiff reasonably believed that the information she conveyed to the Council evidenced one or more of the circumstances delineated in D.C. CODE § 1-615.52(a)(6)(A)-(D).

---

[5]  At trial, Plaintiff also presented evidence that a reasonable jury could credit showing that the draft responses that she had sent to Johnson in anticipation of the hearing had been changed, and that she first learned of the changes when she sat down at the witness table.  *See* Tr. of Jury Trial (Excerpt) Before the Hon. Colleen Kollar-Kotelly, U.S.D.J. (Nov. 16, 2011), ECF No. [209] ("11/16/11 Tr."), at 27, 30-35; 11/17/11 Tr. at 101-02.

Defendant faults Plaintiff because her "description at trial of her protected disclosure [purportedly] d[id] not match what she actually disclosed." Def.'s Mem. at 8. At trial, Plaintiff testified on direct examination as follows:

> Q.     . . . . [W]ith respect to the testimony before the council, what was the point of the disclosure that you were making to the council?
>
> A.     What I was making to the council was that Softscape could not do the job that it was set out to do. The high plans for this particular company to come in and put a technology system in did not meet the standards of what was expected. And when I got it online in June of 2005 – up until June of 2005 to February [of 2006] where the council hearing – we could get nothing but basic demographics. And that was a lot of money poured into a company that didn't do anything.

11/17/11 Tr. at 12. Plucking this single statement from the record, Defendant intimates that it somehow reflects a complete and binding description of what Plaintiff claims was her protected disclosure in this case. *See* Def.'s Mem. at 8-10. But Plaintiff was not asked "point blank what it was that [she] believed she had disclosed during her Council testimony," *id.* at 9, she was asked to provide the basic "point," or essential thrust, of her testimony. 11/17/11 Tr. at 12. No legal principle required Plaintiff to regurgitate her Council testimony with exactitude at trial. Plaintiff's videotaped testimony was entered into evidence, accompanied by a transcript, putting the jury in a solid position to assess the reasonableness of Plaintiff's belief. Regardless, Plaintiff's description of the "point" of her Council testimony was sufficiently consistent with the actual substance of her testimony to permit a reasonable jury to infer that Plaintiff reasonably believed that the information she conveyed to the Council fell within the ambit of D.C. CODE § 1-615.52(a)(6)(A)-(D).

Defendant next contends that Plaintiff's testimony before the Council was tantamount to "no disclosure at all" because "Plaintiff only disclosed facts to the Council that Councilmember

Catania already knew." Def.'s Mem. at 10.  As this Court has previously observed, there is

support for Defendant's position that an employee's statements do not qualify as a protected

disclosure "if the statements conveyed only information that was already known to the person to

whom the information is reported." *Williams v. Johnson*, 701 F. Supp. 2d 1, 15 (D.D.C. 2010)

(citing *Wilburn v. District of Columbia*, 957 A.2d 921, 925-26 (D.C. 2008)); *see also Williams v.

District of Columbia*, 9 A.3d 484, 489-90 (D.C. 2010).  However, in tendering this argument,

Defendant appears to be laboring under the misapprehension that Councilmember Catania's

knowledge is controlling, presumably on the basis that Councilmember Catania presided over the

hearing and was the most vocal member of the Committee on Health with respect to the ACIS

software.  But Councilmember Catania was not the only participant in the hearing.[6]  The

question submitted for the jury's consideration was whether Plaintiff's testimony before the

Committee on Health as a whole involved a protected disclosure, and in answering this question

Councilmember Catania's state of mind cannot be dispositive.  But even assuming, *arguendo*,

that it were, the jury could reasonably infer from Councilmember Catania's detailed questioning

during the hearing—including a series of specific questions about the current status of the

APRA's efforts to implement the ACIS software and the anticipated timeline for its

completion—that he was unaware of important aspects of Plaintiff's testimony.  *See* 2/14/06

Hr'g Tr.

 Finally, Defendant posits that Plaintiff cannot rely on any discrepancies between her draft

responses to the Council's questions and the APRA's official submission because (1) "Plaintiff

did not tell the Council that the written responses did not match the drafts she and her staff

allegedly had prepared," (2) "Plaintiff did not testify at trial that she believed her protected

---

[6]  The participants included then-Councilmember Vincent C. Gray.  *See* 2/14/06 Hr'g Tr.

disclosure included that the written responses did not match the earlier drafts," and (3) "Plaintiff failed to provide sufficient evidence at trial from which a reasonable juror could even have concluded that there were any material changes to the written draft responses that Plaintiff allegedly prepared."  Def.'s Mem. at 11-12.  The first prong of this argument fails because no legal principle required Plaintiff to literally tell the Council that her written responses had been altered.  The second prong of the argument fails for reasons already discussed: Defendant misconstrues Plaintiff's testimony; Plaintiff was not obligated to regurgitate her Council testimony at trial; and Plaintiff's description of the essential thrust of her Council testimony was sufficiently consistent with the actual substance of her testimony.  The third prong of the argument fails because there was, in fact, sufficient evidence to permit the jury to conclude that at least some of the information conveyed by Plaintiff to the Council either contradicted, or was omitted from, the APRA's official written responses.  *See, e.g.*, 2/14/06 Hr'g Tr. at 9-10, 19; 2/14/06 Hr'g Resps. at 14-15, 18.

Taking into account the totality of the record, there was sufficient evidence to support the jury's finding that Plaintiff made a protected disclosure to the Council.  Because the evidence presented at trial was not "so one-sided that reasonable men and women could not disagree," *Scott*, 101 F.3d at 752, the jury's verdict must stand.

    B.    *Sufficient Evidence Supported the Jury's Finding that Plaintiff Was Constructively Discharged*

A constructive discharge occurs when an employer deliberately makes working conditions "intolerable." *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 362 (D.C. 1993). Working conditions "rise to the requisite level of intolerableness if they 'would lead a reasonable person to resign.'" *Id.* (quoting *Atl. Richfield Co. v. District of Columbia Comm'n on Human Rights*, 515 A.2d 1095, 1101 (D.C. 1986)).  Before trial, the parties agreed to a jury instruction

tracking this language, *see* Revised Proposed Jury Instructions at 16, and the Court charged the jury accordingly.[7]

Defendant contends that no reasonable juror could find that Plaintiff's working conditions were so intolerable that her resignation qualified as a fitting response. *See* Def.'s Mem. at 12-14. However, evidence that a reasonable jury could credit showed that Plaintiff suffered, *inter alia*: (i) repeated threats of termination; (ii) an administrative investigation and hearing concerning her residency status; (iii) false accusations, impossible demands, and open hostility; (iv) a marked deterioration in her relationship with her supervisor; (v) the removal of significant job responsibilities; (vi) the reduction of staff and denial of resources; (vii) multiple moves to less desirable offices; (viii) being singled out as "not a team player"; (ix) exclusion from staff meetings and the inaccessibility of supervisors; (x) the foreclosure of her career goals and aspirations; and (xi) one occasion of undesired physical contact. *See, e.g.*, 11/16/11 Tr. at 11; 11/17/11 Tr. at 16-23, 38-42, 46-55, 58-61, 64, 110-11, 141-44. How a reasonable person would have reacted to these conditions presents a quintessential jury question. *Cf. Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1270 (11th Cir. 1999); *United States v. Kelly*, 748 F.2d 691, 698 (D.C. Cir. 1984). Affording Plaintiff the benefit of all reasonable inferences, there was sufficient

---

[7] In its opening memorandum, Defendant cites to caselaw from this Circuit standing for the proposition that, to prevail on a constructive discharge claim, a plaintiff must point to certain "aggravating factors," *see* Def.'s Mem. at 13—*i.e.*, "those aspects of a discriminatory [or retaliatory] work environment that, by making the workplace so disagreeable, prevent the reasonable employee from seeking remediation on the job," *Veitch v. England*, 471 F.3d 124, 130 (D.C. Cir. 2006) (citing *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1558 (D.C. Cir. 1997)), *cert. denied*, 552 U.S. 809 (2007). Arguably, Defendant waived the right to raise this argument by (1) failing to request an appropriate jury instruction at trial and (2) making no mention of it in its pre-verdict motion for judgment as a matter of law. *See Porter v. Natsios*, 414 F.3d 13, 21 (D.C. Cir. 2005); *Whelan v. Abell*, 48 F.3d 1247, 1251 (D.C. Cir. 1995). However, the Court need not reach that question because Defendant retreats in its reply memorandum, conceding that "the issue of 'aggravating factors' [is] subsumed in" the broader question of whether Plaintiff's working conditions rose to the requisite level of intolerableness. Def.'s Reply at 3. The Court's analysis therefore focuses on that broader question.

evidence to support the jury's finding that Plaintiff's working conditions were so intolerable that a reasonable person would be led to resign.

Defendant next contends that no reasonable juror could find in Plaintiff's favor on her constructive discharge claim because Plaintiff was offered, and declined, a detail assignment in November 2006. *See* Def.'s Mem. at 16-17. But evidence that a reasonable jury could credit showed that the detail offered to Plaintiff required a distinct skillset and would have constituted a significant departure from Plaintiff's firmly held career goals and aspirations. *See* 11/16/11 Tr. at 11; 11/17/11 Tr. at 118-19. There was sufficient evidence for the jury to find that Plaintiff's working conditions remained intolerable despite her decision to decline a temporary position for which she had no experience or professional interest.

Finally, Defendant contends that no reasonable juror could find that Plaintiff was constructively discharged when she resigned in June 2007 because the agents behind her purportedly intolerable working conditions—Johnson and Anthony—had left the APRA by January 2007.[8] *See* Def.'s Mem. at 17-19. Despite this temporal gap, a reasonable jury still could have concluded that Plaintiff was constructively discharged when she resigned in June 2007.[9] Evidence that a reasonable jury could credit showed that: (i) Plaintiff had reason to believe that her working conditions might improve upon the appointment of her new

---

[8] In a similar vein, Defendant suggests that no reasonable juror could find in Plaintiff's favor on her constructive discharge claim because the removal of Plaintiff's job responsibilities occurred remote in time to her actual resignation. *See* Def.'s Mem. at 14-15. Among other things, Defendant's suggestion relies on a parsimonious and ultimately untenable reading of the record, which sufficed to find that the universe of intolerable working conditions was considerably broader than the mere removal of Plaintiff's job responsibilities.

[9] As requested by the parties and consistent with the applicable legal standard, the Court instructed the jury that, to find in Plaintiff's favor on her constructive discharge claim, it must find that Plaintiff's working conditions were intolerable "at the time she left her position." The Court "must assume that the jury discharged its obligation to apply the law in accordance with [its] instructions." *Litton Sys., Inc. v. Am. Tel. & Tel. Co.*, 700 F.2d 785, 812 (2d Cir. 1983), *cert. denied*, 464 U.S. 1073 (1984).

supervisor—in particular, that her job responsibilities would be restored and the harm caused by Johnson and Anthony remediated; (ii) Plaintiff's new supervisor did not offer a prompt answer as to what Plaintiff's role would be going forward; (iii) Plaintiff, a single mother, was seeking alternative employment as early as October 2006 to no immediate avail; (iv) it was not until April 2007, when Plaintiff's new supervisor informed her that her responsibilities would not be restored and that she would instead be transferred to a different position, that Plaintiff's realization that her working conditions would not improve fully crystallized.  *See* 11/17/11 Tr. at 59, 62-64, 110-11.  This was sufficient evidence for the jury to find that Plaintiff's "working conditions had not sufficiently changed to preclude a constructive discharge claim," *Wallace v. City of San Diego*, 479 F.3d 616, 627-28 (9th Cir. 2007), notwithstanding the earlier departures of Johnson and Anthony.  *Cf. McKelvey v. Sec'y of U.S. Army*, 450 F. App'x 532, 536 (6th Cir. 2011).

Considering the record as a whole, there was sufficient evidence for the jury's verdict that Plaintiff was constructively discharged. The evidence presented at trial was not "so one-sided that reasonable men and women could not disagree." *Scott*, 101 F.3d at 752.  Therefore, the jury's verdict must stand.

/

/

/

/

/

/

/

## IV.  CONCLUSION

For the reasons set forth above, the Court concludes that there was a legally sufficient basis for the jury to find that Plaintiff (1) made a protected disclosure and (2) was constructively discharged.  Accordingly, Defendant's Motion for Judgment shall be DENIED.  The Court shall allow judgment on the verdict.

Dated: July 2, 2012

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge