**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CHRISTINA CONYERS WILLIAMS,
        Plaintiff

        v.                                          Civil Action No. 06-2076 (CKK)

ROBERT JOHNSON, *et al.*,
        Defendants

**MEMORANDUM OPINION**
(March 30, 2016)

Plaintiff Christina Conyers Williams brought the claims in this action against the District of Columbia and other associated defendants under the District of Columbia Whistleblower Act and prevailed before this Court and on appeal.[1] After trial, a jury awarded Williams $300,000 in compensatory damages, which were sustained by this Court and the United States Court of Appeals for the District of Columbia Circuit. In addition, in light of the judgment entered by this Court on the award of compensatory damages, the District of Columbia agreed to pay Williams $19,609 in back and front pay, conditional on affirmance in the Court of Appeals. The pending motions for attorney's fees and costs under the Whistleblower Act's fee-shifting provisions constitute the final step in litigation that is now in its tenth year.

Before the Court are Plaintiff's [225] Motion for the Award of Reasonable Attorney's Fees and Costs and Plaintiff's [239] Supplemental Motion for the Award of Reasonable Attorney's Fees and Costs on Appeal and in Litigating Plaintiff's Claim for the Award of Attorney's Fees and Costs. Defendant does not contest Plaintiff's eligibility for costs and fees. Nor does Defendant contest the litigation costs sought by Plaintiff. However, Defendant does

---

[1] Plaintiff also brought claims under the First Amendment related to the same underlying facts, which were dismissed by this Court. The dismissal of the First Amendment claims resulted in the dismissal of all of the individual defendants in this action, as well, such that the only remaining defendant is the District of Columbia.

contest the reasonableness of the amount of total fees that Plaintiff seeks, specifically contesting the hourly rates and the number of hours that are the bases for Plaintiff's request. Defendant argues that Plaintiff should be awarded no more than $392,164.17 in fees.

Upon consideration of the pleadings,[2] the relevant legal authorities, and the record for purposes of this motion, the Court GRANTS IN PART and DENIES IN PART Plaintiff's [225] Motion and GRANTS IN PART and DENIES IN PART Plaintiff's [239] Supplemental Motion. The Court concludes that it is appropriate to apply the *currently* applicable *Laffey* rates as updated by the United States Attorney's Office to all of the fees at issue in this case (using counsel's level of experience at the time of the work completed). The Court also concludes that certain discrete items for which Plaintiff seeks fees are not properly compensable in full and reduces or eliminates those requests. The Court also applies a percentage reduction to certain categories of tasks presented in the Supplemental Request. Accordingly, the Court GRANTS Plaintiff's request as to $753,876.34 in fees and $7,467.72 in costs and awards those amounts; the Court otherwise DENIES Plaintiff's request. This case is dismissed in its entirety.

---

[2] The Court's consideration has focused on the following documents:

- Pl.'s Mot. for the Award of Reasonable Attorney's Fees and Costs ("Pl.'s Mot."), ECF No. 225;
- Pl.'s Supp. Mot. for the Award of Reasonable Attorney's Fees and Costs on Appeal and in Litigating Plaintiff's Claim for the Award of Attorney's Fees and Costs ("Pl.'s Supp. Mot."), ECF No. 239;
- District of Columbia's Opp'n to Pl.'s Mot. and Supp. Mot. for Attorneys' Fees ("Def.'s Opp'n"), ECF No. 241; and
- Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. and Pl.'s Supp. Mot. ("Pl.'s Reply"), ECF No. 242.

The Court has also considered the supplemental memoranda, responses, and notices filed by the parties regarding the pending fees motions. *See* ECF Nos. 252-262. In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

# I. BACKGROUND

The Court set out the background of this case at length in previous opinions. *See, e.g.*, *Williams v. Johnson*, 870 F. Supp. 2d 158, 16062 (D.D.C. 2012) (resolving rule 50(b) motion); *Williams v. Johnson*, 701 F. Supp. 2d 1, 3-13 (D.D.C. 2010) (resolving motion for summary judgment); *Williams v. Johnson*, 537 F. Supp. 2d 141, 143-48 (D.D.C. 2008) (resolving motion to dismiss). So, too, did the United States Court of Appeals for the District of Columbia Circuit in the appeal of this Court's judgment. *See Williams v. Johnson*, 776 F.3d 865, 867-70 (D.C. Cir. 2015). Accordingly, there is no need to present the factual background of this case prior to addressing the issues raised in the pending motions. Instead, the Court reserves presentation of the relevant background for the issues discussed below.

# II. LEGAL STANDARD

"An employee aggrieved by a violation of § 1-615.53 [the D.C. Whistleblower Act] may bring a civil action against the District." D.C. Code. § 1-615.54(a)(1) (2016); *see also id.* § 2-223.03(a).[3] Through such an action, a plaintiff may seek various remedies, including compensatory damages, back pay, and "[r]easonable costs and attorney fees." *Id.* § 1-615.54(a)(1)(A)-(G). "Reasonable costs and attorney fees" are available only to a party who prevails on a Whistleblower Protection Act claim. *D.C. v. Poindexter*, 104 A.3d 848, 851 n.1 (D.C. 2014); *see also Crawford v. D.C.*, 891 A.2d 216, 222 (D.C. 2006) (quoting trial judge opinion) ("The plainest reading of the statute, consistent with common sense, is that all the relief

---

[3] Sections 2-223.03 contains what appears to be an analogous enforcement provision, which also allows attorney's fees for violations of section 2-223.02, an analogous but separate whistleblowing protection provision. While Plaintiff also relies on section 2-223.03 for her requests for fees, Plaintiff never presented a substantive violation of section 2-223.02 in prior briefing. In addition, the parties never identify any material differences between the two provisions. Accordingly, the Court will focus solely on section 1-615.54.

is available where Plaintiff prevails, and none is available when he does not.")). As the District

of Columbia Court of Appeals has stated with respect to fee-shifting statutes, "it is important that

attorneys who are willing to take on civil rights and other public interest work are adequately

compensated, or it will be difficult to find competent counsel to handle this important job."

*Lively v. Flexible Packaging Ass'n*, 930 A.3d 984, 988 (D.C. 2007). "The goal is to attract

competent counsel for these cases, but not to provide them with windfalls." *Id.* (citing cases).

When awarding attorney's fees and costs under a District of Columbia statute, as here, this Court

must apply these principles.

### III. DISCUSSION

In order to determine reasonable attorney's fees to award, the Court must address (1) the

applicable hourly rates for the attorneys involved in the case, (2) the total numbers of hours for

which compensation is reasonable, and (3) whether there is any basis for further reductions in the

fees awarded in light of this case. Notably, the District of Columbia does not contest that fees are

warranted in the first instance. However, the District contests the applicable hourly rates and the

total number of hours on which Plaintiff's request is based and argues that the total fee award

should be further reduced. The Court addresses each factor, in turn. Finally, the Court concludes

by addressing the litigation costs that Plaintiff requests, which are uncontested.

### A.  Hourly Rates

In Plaintiff's original [225] Motion for fees, Plaintiff requested fees covering the period

from the beginning of this controversy through August 31, 2012. That motion covers fees for all

proceedings through the trial on the merits, as well as post-trial motions in this Court and the

earliest phase of appellate proceedings.[4] Through that motion, Plaintiff requested fees calculated according to the hourly rates listed in the annual update of the *Laffey* matrix produced by the United States Attorney's Office for the District of Columbia, which is adjusted annually for inflation. Specifically, Plaintiff requested fees according to the *Laffey* matrix for June 2012 through May 2013, which was current as of the filing of that motion (September 4, 2012). Through Plaintiff's [239] Supplemental Motion, Plaintiff requested fees for the period from September 1, 2012, through the filing of that motion. The supplemental motion covers fees for the proceedings on appeal, as well as the litigation of these requests for fees. For this latter period, Plaintiff requests fees pursuant to the *Laffey* matrix as updated to account for inflation pursuant to the Legal Services Index of the Bureau of Labor Statistics ("LSI").[5] Plaintiff does not, now, request fees for the earlier period pursuant to this LSI version of the *Laffey* matrix.

In short, Plaintiff now requests fees for the first period (through August 31, 2012) pursuant to the current USAO *Laffey* matrix, which is now the 2015-2016 matrix. For the second period, Plaintiff requests fees pursuant to the current version of the LSI *Laffey* matrix. For each of those periods, Plaintiff requests fees for attorneys according to their experience at the time of the work itself. In response, Defendant argues that the USAO *Laffey* matrix should be used for the entire time at issue, not merely for the earlier period. Defendant also argues that the Court should award fees based on the *Laffey* rates in effect at the various times when work was done

---

[4] The District of Columbia filed its Notice of Appeal on August 1, 2012.

[5] The Court refers to the two competing matrices as the USAO *Laffey* matrix and the LSI *Laffey* matrix. However, the Court notes that the LSI-updated *Laffey* matrix is often described in other cases as the LSI/*Salazar* matrix because it was first adopted by another district court judge in *Salazar v. Dist. of Columbia*, 123 F. Supp. 2d. 8, 15 (D.D.C. 2000). *See, e.g.*, *Makray v. Perez*, No. CV 12-520 (BAH), 2016 WL 471271, at *4 (D.D.C. Feb. 8, 2016).

rather than based on the current *Laffey* matrix, *i.e.*, using the 2006-2007 *Laffey* matrix for time expended during that time period.

The Court first addresses the parties' dispute regarding whether *current* or *historical* rates should be used for work done during prior time periods, bracketing for the moment the question of whether the Court should use the LSI *Laffey* matrix for a portion of the fees requested. The D.C. Court of Appeals has stated regarded another fee shifting statute that *current* hourly rates, not *historical* rates, should be used. *See Lively,* 930 A.2d at 989-91 ("Indeed, the adjustment for inflation by the use of current hourly rates, rather than the historic rates of the relevant legal community, has been recognized as a means of 'approximat[ing] the value today of the historic rates charged at the time when the legal services actually were rendered.' " (quoting *Murray v. Weinberger,* 741 F.2d 1423, 1433 (D.C. Cir. 1984))); *id.* at 990-91 (trial court did not "abuse[] its discretion in using 'the current rates applicable to each level of experience the individual lawyers had attained when the work for which compensation is sought was performed.' " (quoting *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C.1983), *rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984))). As Plaintiff seeks fees solely under D.C. law, these instructions from the D.C. Court of Appeals govern this Court's task in assessing fees. Moreover, as explained by the D.C. Court of Appeals, this conclusion is sensible because an attorney is deprived of the fees during the pendency of the litigation. Given that period of deprivation, using current *Laffey* rates properly accounts for the impact of inflation on the fees earned.

Defendant's citation of the D.C. Court of Appeals decision in *Lively* for the contrary position, that *historical* rates should be used, is simply without basis. As cited by Defendant, the *Lively* court definitively stated that historical *levels of experience* should be used, together with

current *hourly rates.*[6] *See* 930 A.2d 989-90. Indeed, that is precisely what Plaintiffs here request. Unlike the plaintiffs in *Lively*, Plaintiff here seeks fees pursuant to historical levels of experience as mandated by the D.C. Court of Appeals. The Court notes that these conclusions are independent of the question of whether the USAO *Laffey* matrix or the LSI *Laffey* matrix should be used; either way the Court would use current hourly rates as applied to historical levels of experience.

Before turning to the parties' dispute about whether a portion of the fees should be awarded pursuant to the LSI *Laffey* matrix, the Court addresses the actual rates that will be used in awarding fees. A minor complication arises because the levels of experience used by the USAO *Laffey* matrix through the 2014-2015 matrix differ from those used in the current matrix, for 2015-2016. Specifically, like previous annual matrix updates, the 2014-2015 USAO *Laffey* matrix divided attorney experience into categories that include, as relevant here, 11-19 years and 20+ years. With respect to these categories, there is no dispute that Attorney Karl's experience during the entirety of this litigation fell into the 20+ category, as did attorney Shaw's experience. Similarly, there is no dispute that attorney Hughes fell into the 11-19 years category for all of the years of this litigation in which she worked. With respect to these categories, each attorney remained in the same *Laffey* category throughout the period in which each conducted work in this case. That result substantially simplifies the calculations necessary to determine the overall

---

[6] A short example makes these instructions clear: if an attorney seeks fees in 2016 for hours billed in 2005 with one year of experience and hours billed in 2015 with 11 years of experience, all of those fees are assessed pursuant to the matrix applicable for 2016. Fees will be assessed for the 2005 work at the hourly rate appropriate for an attorney with one year of experience (under the 2016 matrix), and fees will be assessed for the 2015 work at the hourly rate appropriate for 11 years of experience (also under the 2016 matrix).

fee award because it means that the same hourly rate would be applied to all of the work an individual attorney conducted throughout this litigation.

However, a further calculation is needed because 2015-2016 USAO *Laffey* matrix adopts a more refined set of categories, with fewer years in each one. In addition to adopting a new measure of inflation as the basis for the yearly updates, which the Court discusses below, the U.S. Attorney's Office now divides the levels of experience in additional levels of experience *See* USAO Attorney's Fees Matrix – 2015–2016, n.5, available at https://www.justice.gov/usao-dc/civil-division (last visited March 24, 2016). Specifically, the new USAO *Laffey* matrix includes the following categories: 11-15 years; 16-20 years; 21-30 years; and 30+ years. While Plaintiff filed a Notice attaching the 2015-2016 USAO *Laffey* matrix, *see* ECF Nos. 257-58, Plaintiff never enumerated the levels of experience, according to the new categories, that would apply to the earlier requested fees. The Court concludes that the fairest and most efficient way to calculate current hourly rates without additional information on the years of experience is to inflate the 2014-2015 *Laffey* rates for the experience levels used by *that* matrix by the Producer Price Index-Office of Lawyers ("PPI-OL") index now used by the U.S. Attorney's office. Pursuant to the PPI-OL, the rate of inflation between May 2014 (used for the 2014-2015 matrix) and May 2015 (used for the 2015-2016 matrix) was 1.0283, or an annual price increase of 2.83%.[7] Insofar as the Court uses the USAO *Laffey* matrix, The Court will apply this level of

---

[7] The PPI-OL for May 2014 was 194.3, and the PPI-OL for May 2015 was 199.8. *See* Bureau of Labor Statistics, Producer Price Index Industry Data, available at http://data.bls.gov/cgi-bin/dsrv (Data extracted on March 24, 2016). Dividing the latter by the former yields the inflation rate of 2.83%.The U.S. Attorney's Office *Laffey* Matrix for 2015-2016 provides instructions for these calculations: "The PPI-OL index is available at www.bls.gov/ppi/#data. On that page, under 'PPI Databases,' and 'Industry Data (Producer Price Index - PPI),' select either 'one screen' or 'multiple screen' and in the resulting window use 'industry code' 541110 for 'Offices of Lawyers.' " USAO Attorney's Fees Matrix – 2015–2016, n.5.

inflation to the rates listed in the 2014-2015 matrix. Specifically, the rate for 11-19 years in the 2014-2015 matrix was $460/hour. For that bracket, which includes all of the hours billed by Hughes, the Court will impute a rate of $473 (that is, $460 * 1.0283).[8] Similarly, the rate for 20+ years in the 2014-2015 matrix was $520/hour. The Court will impute a rate of $535/hour for the time Karl and Shaw have billed (that is, $520 * 1.0283).

The Court now turns to the major remaining dispute regarding the hourly rates to be applied: whether application of the LSI *Laffey* matrix is warranted for the fees requested through Plaintiff's Supplemental Motion, which covers the period from September 1, 2012 through the present. In Plaintiff's Supplemental Motion, Plaintiff's primary argument in favor of the application of the higher LSI *Laffey* rate is that it is a better reflection of the "market for attorneys engaged in complex litigation." Pl.'s Supp. Mot. at 20. In Plaintiff's reply, she further contends that the LSI *Laffey* rates are warranted for an additional reason for post-September 2012 fees: those fees primarily encompass appellate work and such work is "inherently more complex than legal work performed at the trial court level." Pl.'s Reply at 2. The Court first notes that Plaintiff never raised this argument prior to her reply—not even implicitly in her Supplemental Motion—and the Court could simply consider it waived. In addition, in making this argument, Plaintiff fails to acknowledge that she is also requesting the LSI *Laffey* rates for more than 50 hours of work on the fees motions themselves. Plaintiff never argues, let alone convincingly shows, that such *fees* work is more complex than other work conducted at the trial level. If anything, it would appear to be that the contrary is true. Nor does Plaintiff convincingly show that the appellate work in this case was more complex than the trial work in this case.

---

[8] Like the U.S. Attorney's Office, the Court rounds to the nearest whole dollar to derive the applicable rate.

Plaintiff does not attempt to do so, and the Court emphasizes that it appears, based on the parties' representations, that the issues raised on appeal in this case were primarily, if not entirely, those raised by the parties before this Court in the first instance. Plaintiff has provided no support for the claim that the mere fact of arguing to this Court's colleagues on the Court of Appeals requires a level of experience and sophistication unnecessary to proceedings in this Court. It is irrelevant whether *some* appellate work is more complex than *some* trial work; that is undoubtedly true. But Plaintiff provides no support for her bald statement that appellate work is more complex than trial work, and the Court sees no reason to accept that proposition as a general matter. The Court therefore rejects Plaintiff's argument that the higher LSI *Laffey* rates are more appropriate for the fees accrued after September 2012 in light of the nature of the work conducted in that period of time. With that said, the Court turns to Plaintiff's primary argument that the LSI *Laffey* rates are simply a better reflection of the complex work involved in this litigation.

As a prefatory matter, the Court notes that Plaintiff represented in her original motion that the USAO *Laffey* rates were appropriate for this litigation. Defendant argues, in part, that Plaintiff is essentially estopped from seeking the LSI *Laffey* rates given her prior argument in favor of the appropriateness of the USAO *Laffey* rates. Indeed, as Defendant points out, this Court previously came to such a conclusion in other fees litigation. *See Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 66 F. Supp. 3d 134, 155 (D.D.C. 2014) ("Given CREW's failure to request the CPI Laffey Matrix's application to the instant matter at any time prior to the filing of its response in March 2014 and CREW's prior, uncontested assertion that the USAO Laffey Matrix is applicable in this case, the Court shall apply the USAO Laffey Matrix to CREW's request for additional attorney fees."). The Court considers Plaintiff's previous position significant. However, the Court will not end the inquiry

with Plaintiff's prior representation and will consider her arguments in favor of the LSI *Laffey* matrix. Nonetheless, as explained below, the Court concludes that Plaintiff has not borne her burden of demonstrating the appropriateness of the LSI *Laffey* rates in this case.

With respect to Federal fee shifting statutes, "[t]he 'fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates' and the opposing party remains 'free to rebut a fee claim.' " *Eley v. Dist. of Columbia*, 793 F.3d 97, 98 (D.C. Cir. 2015) (quoting *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107-08 (D.C. Cir. 1995)). The D.C. Court of Appeals has adopted similar reasoning. *See Lively*, 930 A.3d at 993 (It is " 'counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero.' " (quoting *Bratcher v. Bray-Doyle Independent School Dist.*, 8 F.3d 722, 725 (10th Cir. 1993))). The Court concludes that Plaintiff has not shown that the LSI *Laffey* rates are reasonable in these circumstances.

For this case under a District of Columbia fee-shifting statute, it is important, albeit not dispositive, that there is no case in which the D.C. Court of Appeals has approved of the use of the LSI *Laffey* matrix.[9] Similarly, Plaintiff has not identified any case in which the LSI *Laffey* matrix was applied to a District of Columbia fee-shifting statute. That absence is notable, if still not dispositive. Moreover, the D.C. Court of Appeals has recently discussed the benefits of using the USAO *Laffey* matrix as the basis for fee awards based on D.C. law. *See Tenants of 710 Jefferson St., NW v. D.C. Rental Hous. Comm'n*, 123 A.3d 170, 184 (D.C. 2015) ("[T]he Laffey Matrix is a very good place to start, and, we would add, in most cases will be the best place to end lest litigation over attorney's fees overshadow the underlying case. Deviations from the

---

[9] Plaintiff does not contest the District's representation to that effect. Nor has the Court found any such cases.

11

Laffey Matrix's presumptively reasonable measure should not be lightly undertaken and need to be substantially supported."). Lest there be any lack of clarity: the D.C. Court of Appeals was discussing the USAO update to the *Laffey* matrix, not the LSI *Laffey* matrix. The Court will hew to that court's guidance that the USAO *Laffey* matrix is presumptively reasonable, as it must in this case under a D.C. fee-shifting statute. The Court concludes that Plaintiff has simply not provided evidence that would support the reasonableness of the LSI *Laffey* rates in this case.

Notably, Plaintiff does not indicate anything regarding litigation under the Whistleblower Protection Act that establishes it as a *particularly* complex category of litigation. This is not a case with national significance. Nor is it a case under Federal law or involving significant numbers of plaintiffs. *Cf. Salazar ex rel. Salazar v. D.C.*, 809 F.3d 58, 60 (D.C. Cir. 2015) (holding that district court did not abuse its discretion in awarding fees based on LSI *Laffey* matrices in Medicaid class action under 28 U.S.C. § 1983). The Court emphasizes that neither the length of a case itself nor the number of opinions issued by the Court is itself a measure of the complexity of the case. Those facts may reveal how vigorously the parties contested various issues presented. Moreover, the length of the case and number of opinions will likely be reflected in the *amount* of work conducted by the attorneys. In other words, in a case with a long duration, with numerous motions, it is not surprising if numerous attorney hours are required. Accordingly, insofar as such factors indicate more attorney services that warrant compensation, the appropriateness of such compensation will be reflected in the *number of hours* that are the basis for a fees request. Indeed, in this case Plaintiff's request for fees is based on approximately 1,892 hours of attorney time. For all of these reasons, it is important that the Court's assessment of appropriate legal fees begins rather than ends with a determination of the properly hourly rates. As the next step in the inquiry, the Court is required to assess the hours requested, and it does so

below. But with respect to the hourly rate itself, the Court concludes that the mere fact of a fiercely disputed case that unfolds over a significant period of time—as this one has—does not itself justify the higher LSI *Laffey* rates.

The Court need not address this issue further. For the purposes of this motion, the Court need only decide that Plaintiff have not borne their burden of showing that the LSI *Laffey* rates are reasonable for the type of litigation involved in this case. The Court concludes that they have not done so and will therefore not award fees in this case based on the LSI *Laffey* matrix. Instead, the Court will use the currently applicable USAO *Laffey* rates, as calculated above.

In light of that conclusion and pursuant to the above analysis of the 2014-2015 and 2015-2016 USAO *Laffey* matrices, the Court will apply the following hourly rates to the work by Plaintiff's attorneys for all of the work in which they engaged over the course of this litigation:

- John F. Karl: $535/hour.

- Peggy Shaw: $535/hour.

- Kristen Grim Hughes: $473/hour.

With that established, the Court turns to the number of hours that are the basis for Plaintiff's request for attorney's fees.

## B.  Number of Hours Requested

Defendant argues that the number of hours that is the basis for Plaintiff's request is unreasonable. Defendant raises a number of specific objections to Plaintiff's request with respect to certain phases of the litigation or certain types of activities. Defendant also argues that Plaintiff's overall request is grossly deficient in certain respects and that, accordingly, a significant percentage reduction in the overall request is warranted. Plaintiff responds that the number of hours requested is reasonable and attempts to rebut each of Defendant's arguments

regarding the unreasonableness of certain categories of hours. The Court addresses first the specific tasks for which Defendant argues that the fees requested are unreasonable, either in whole or in part. Then the Court turns to Defendant's general arguments that Plaintiff's request is deficient due to Plaintiff's failure to exercise adequate billing judgment and due to what Defendant alleges is improper "block billing."

### 1.   Representation at the DC Office of Personnel (Phase I)

Plaintiff requests fees for 25.8 hours of representation before the District of Columbia Office of Personnel, which Plaintiff refers to as Phase I of the litigation proceedings. Defendant argues that these hours are not compensable under the fee-shifting provision of the Whistleblower Protection Act. The Court agrees with Defendant.

Under the Whistleblower Protection Act, an employee aggrieved by a violation of the act "may bring a civil action against the District." D.C. Code. § 1-615.54(a)(1) (2016). Through such an action, a plaintiff may seek various remedies, including injunctive relief, compensatory damages, back pay, and "[r]easonable costs and attorney fees." *Id.* § 1-615.54(a)(1)(A)-(G). The Act nowhere states that an aggrieved employee may seek attorney's fees for related administrative proceedings. Moreover, as presented by Plaintiff, the proceedings before the Office of Personnel were not an attempt by Plaintiff to gain relief from the alleged retaliation to Plaintiff's whistleblowing activities. Instead, Plaintiff was exercising her right to a hearing before her employer took disciplinary action, all of which occurred before Plaintiff filed suit in this Court. The Court concludes that such representation is not within the scope of the statutory provisions for attorney's fees through which Plaintiff seeks relief. Plaintiff's only response to Defendant's argument is to characterize Defendant's argument as a "thinly veiled attack on the jury verdict" and to baldly claim that representation in this context is "fully compensable under

the plain language of the statute." Pl.'s at 18. With respect to the former argument, the Court fails

to see any way in which Defendant's argument is an attack on the jury verdict. With respect to

the latter argument, the Court disagrees. The Court concludes that the representation before the

Office of Personnel for which Plaintiff seeks attorney's fees is not compensable under the

applicable fee-shifting provision. Accordingly, the Court will deduct the **25.8 hours** associated

with this task from the fees that the Court will award.

### 2.   Fees for Preliminary Injunctive Relief

In what Plaintiff calls Phase II, Plaintiff seeks fees for the preparation and filing of the

Complaint in this action and the preparation of a motion for a temporary restraining order and

preliminary injunction, which Plaintiff *did not* file. Plaintiff seeks fees for a total of 36.3 hours

for this task. Specifically, Plaintiff delineates 20.7 hours attributed to attorney Karl and 19.6

hours attributed to attorney Shaw, for a total of 40.3 hours; Plaintiff then reduced the request by 4

hours to avoid possible "duplication and inefficiency," while noting that most of the work

involved in preparing Plaintiff's declaration was later used in Defendant's motion for summary

judgment. Pl.'s Mot. at 11. Defendant argues that the time spent on preparing to seek preliminary

injunctive relief is not compensable because Plaintiff never filed any such motion and because

such a motion had a weak legal basis. Therefore, Defendant argues that Plaintiff's Phase II

request should be reduced by 19.6 hours, eliminating all of the hours billed by Shaw. Plaintiff

responds that it was neither legally nor strategically unreasonable to plan to seek injunctive

relief. Plaintiff also responds that the reason she did not file a motion for preliminary injunctive

relief is that she left the agency and, therefore, any such relief would be moot. The Court agrees

with Defendant that the time spent preparing for such relief is not compensable; however, upon

examining the declaration supporting this request, the Court concludes that only 16.8 hours were spent on the ill-fated preparation for injunctive relief and only those hours will be eliminated.

The parties seem to agree that it would have been an uphill battle to prevail on a motion for preliminary injunctive relief in an employment context even though they do not agree on whether it was reasonable to spend time preparing to file one. But the Court need not assess the viability of a theoretical motion for injunctive relief that might have been filed at the beginning of this litigation. The sequence of events at the beginning of this case is critical to understanding why these activities are not compensable:

- Shaw reports that on October 18, 2006, and October 23, 2006, she spent time on activities that included preparation of a possible motion for preliminary injunctive relief. She billed 7.8 hours and 9 hours, respectively on those days. Shaw Decl., ECF No. 226-3, Billing details.

- On November 27, 2006, Shaw billed 2.8 hours reviewing the drafted complaint and, relatedly, the legal bases for the claims in the complaint. *Id.*

- On December 4, 2006, Plaintiff filed this action. *See* Compl., ECF No. 1.

- On March 20, 2007, Plaintiff filed her First Amended Complaint, ECF No. 13.

- As with the original complaint, all of the defendants moved to dismiss that complaint.

- Subsequently, Plaintiff resigned her employment in June 2007.[10]

In light of this timeline, Plaintiff cannot credibly claim that the only reason that she opted not to file the request for preliminary injunctive relief is that she left the agency. She left the agency *six months* after the filing of this action and *eight months* after the last work was completed on the planned motion for preliminary injunctive relief. Based on this sequence of events, the Court concludes that Plaintiff simply decided not to file the motion for injunctive relief, whether based

---

[10] The jury's conclusion that Plaintiff was constructively discharged when she did so was upheld by this Court and on appeal.

on assessment of the legal merits, factors related to litigation strategy, or other innumerable possible factors. But the timeline does not support the claim that this quest for injunctive relief was mooted by the happenstance of Plaintiff leaving the agency.[11] In short, it appears that two roads diverged in this litigation in 2006, and Plaintiff chose not to take the one that included seeking preliminary injunctive relief.[12] Whether Plaintiff would have prevailed in taking such a route 10 years ago, the Court cannot say. Nor can the Court say whether Plaintiff would have benefited from taking such a route. But the Court can say that Plaintiff may not now seek compensation for that road not taken.

In light of that conclusion, the Court must address which hours should be eliminated from the total request. As stated above, Defendant argues that all of the hours spent by Shaw on the Phase II tasks, which she completed in October and November 2016, should be deducted. The Court agrees only in part. With respect to the hours billed on October 18 and October 23, 2006, it is clear that Shaw spent a significant amount of time on preparation for the potential motion for injunctive relief. It is also clear, as Plaintiff argues, that Shaw spent *some* time on other activities that would be compensable on those days, such as the preparation of the complaint itself. However, the Court simply cannot distinguish between the amount of time spent on these discrete tasks because Plaintiff only lists a single total hour figure for each day, which is associated with a laundry list of activities.[13] Having committed the sin of block billing with

---

[11] It makes no difference that there was evidence at trial that Plaintiff realized in April 2007 that her working conditions would not improve. *See Williams v. Johnson*, 870 F. Supp. 2d 158, 167 (D.D.C. 2012) *aff'd*, 776 F.3d 865 (D.C. Cir. 2015) (citing Trial Transcript, 11/17/11, at 59, 62–64, 110–11).

[12] *Cf.* Robert Frost, *The Road Not Taken*, 1916 ("Two roads diverged in a yellow wood,/ And sorry I could not travel both/ … Two roads diverged in a wood, and I —/ I took the one less traveled by,/ And that has made all the difference.")

[13] Shaw billed 7.8 hours for the following activities on October 18, 2006:

respect to these days, the Court will eliminate the hours listed for these two days in their entirety. However, with respect to the November 27, 2006, entry, the Court comes to the opposite conclusion. That entry only includes activities related to the preparation of the complaint. Particularly given that the complaint was filed less than ten days later without any attached request for immediate injunctive relief, it appears that the November 27 hours were spent on final preparations for filing the complaint and not in preparing to seek any injunctive relief. In sum, the Court will deduct the **16.8 hours** billed by Shaw on October 18, 2006, and October 23, 2006.

### 3.   Litigation on Legislative Privilege

Plaintiff seeks fees for certain disputes related to legislative privilege that occurred over the course of the litigation before this Court, which fall into what she call Phase IV,[14] as well as for Plaintiff's cross-appeal to the Court of Appeals in which Plaintiff sought to reverse this Court's rulings on the legislative privilege issue, which she calls Phase XV. Defendant argues that time spent on these issues is not chargeable to the District both because Plaintiff did not prevail and because these disputes revolved around the evidentiary privileges of third parties.

---

Conference with [attorney Karl] re: need for Complaint and declaration from client to support motion for TRO to prevent DC from firing her. Conference re: applicable law and facts. Review file (show cause to remove her for violation of residency requirement). Format Complaint. Begin preparation of affidavit of Christina Williams based on documents in file, including notes on what further evidence is needed for TRO. Legal research on whistleblower statute and DC cases construing it. Copy entire current whistleblower statute to disk. Legal research on what must be proved for First Amendment violation. Review argument in preliminary injunction motion in another case against DC where TRO succeeded.

Shaw Decl., Billing Appendix. The listing for October 23, 2006, includes a similar, albeit somewhat shorter, laundry list of activities.

[14] Plaintiff mistakenly refers to this phase as Phase *VI* in at least one point in her briefing.

Defendant seeks a reduction of 30.2 hours of time from the discovery phase and a 25% reduction in certain tasks conducted on appeal. The Court concludes that the time spent in the discovery phase on these activities must be eliminated, but the Court concludes that reducing the time spent on appeal on this basis is not warranted.

The Court previously described and analyzed the substance underlying this issue at length, *see Williams v. Johnson*, 597 F. Supp. 2d 107, 109 (D.D.C. 2009), and there is no need to repeat that full history here. But a brief review is necessary to explain the Court's conclusion regarding fees. Plaintiff served subpoenas on D.C. Councilmember David Catania, whose actions were seriously intertwined with the factual predicate for this case, and on one of Catania's former aids, Tori F. Whitney. Importantly, by the time of the evidentiary dispute, Whitney had left Catania's service and had joined the staff of the agency where Plaintiff had previously worked. Catania moved to quash the subpoenas on the grounds that he had absolute immunity as a result of the District's Speech or Debate statute. *Id.* at 112. On Whitney's behalf (as a District employee), the District moved to join Catania's motion to quash. With respect to Catania, the Court granted the motion in full, holding that Catania had absolute immunity as a result of the Speech or Debate statute. *Id.* at 118. With respect to Whitney, the Court granted the motion "to the extent Plaintiff seeks information learned by Whitney while employed with the D.C. Council," and concomitantly denied with prejudice Plaintiff's cross-motion to compel Whitney's testimony. *Id.* at 119. However, with respect to the possibility that Whitney may have had personal knowledge that was not protected by the Speech or Debate statute, the Court granted the motion to quash but allowed Plaintiff to serve on Whitney two interrogatories in order to determine whether she had any such personal knowledge. *Id.* The Court also denied *without prejudice* Plaintiff's cross-motion to compel to Whitney's testimony "to the extent she seeks to

compel testimony and/or the production of documents as concerns Whitney in her individual capacity." *Id.* at 120. It is unclear whether Plaintiff ever served such interrogatories, and no further proceedings in this Court occurred regarding Whitney's potential testimony.

Fast forward almost two-and-half years. A jury entered a verdict for Plaintiff, awarding Plaintiff $300,000 in compensatory damages; the Court denied Defendant's motion for judgment as a matter of law and, in the alternative, for a new trial, and ordered that judgment be entered on the jury's verdict. *See* Order dated July 2, 2012, ECF No. 213. Defendant appealed the judgment. Plaintiff cross-appealed, noting that, if the Court of Appeals affirmed this Court's judgment, there would be no need to reach the cross-appeal. *See* Pl.'s Appellate Brief, USCA Case #12-7074, Doc. No. 1454396, at 56 n.14. As one of two primary arguments in her cross-appeal, Plaintiff argued that this Court erred in quashing the subpoenas issued to Catania and Whitney. *See id.* at 58-63. Ultimately, the Court of Appeals affirmed this Court's judgment in all respects and, therefore, concluded that there was no need to reach Plaintiff's cross-appeal, as Plaintiff had suggested. *See Williams v. Johnson*, 776 F.3d 865, 875 (D.C. Cir. 2015)

The Court first addresses Defendant's claim that Plaintiff should not be compensated for the time spent before this Court on these issues because Plaintiff did not prevail on them. Rather than looking to the Federal courts' treatment of such questions as the parties do, the Court follows the lead of the D.C Court of Appeals. In addressing situations where a party has partly succeeded on relief sought under D.C. fee shifting statutes, that court has "recognized that 'it is often impossible to distinguish hours spent on individual claims that are ultimately unsuccessful from time spent on the overall successful litigation.' " *Thanos v. Dist. of Columbia*, 109 A.3d 1084, 1092 (D.C. 2014) (quoting *Natural Motion by Sandra, Inc. v. District of Columbia Comm'n on Human Rights*, 726 A.2d 194, 198 (D.C. 1999)). As a result, a fee award should not

simply be reduced across the board because of the failure to prevail on certain contentions. However, with respect to the issue that Defendant raises regarding legislative privilege, it is a simple task to identify the hours spent on this unsuccessful claim before this Court. Defendant identifies 30.2 hours that are associated with this task and should be eliminated. The Court agrees that the billing records submitted reveal 30.2 hours that are associated with the motions to quash, all of which were unsuccessful, and these hours will be eliminated from the fees request.

Because the Court concludes that all of these hours must be eliminated, the Court need not address further Defendant's argument that hours related to *Catania's* motion to quash before this Court should not be chargeable to the District. Similarly, the Court need not address further Plaintiff's response that Catania's motion was highly intertwined with the issues raised in the District's motion on behalf of Whitney.

The Court now turns to Defendant's argument that the hours spent in the appellate phase should be reduced for the time spent on the privilege issues raised in Plaintiff's cross-appeal. Specifically, Defendant argues that the 270.6 hours Plaintiff's counsel spent on briefing the appeal should be reduced by 25% percent and the 87.5 hours Plaintiff's counsel spent preparing for oral argument should be reduced by one-third. With respect to oral argument, Plaintiff responds that he spent little time on the issues raised in the cross-appeal because it was unlikely that the Court of Appeals would reach many of those issues. While neither Plaintiff's billing entries nor Plaintiff's declaration directly provide support for that statement, the Court will take Plaintiff at his word, particularly given that the statement appears reasonable in all respects. The Court, therefore, will not reduce the hours spent on oral argument in connection with the legislative privilege issue. With respect to the appellate briefing, the Court will not reduce Plaintiff's award on the basis that she did not prevail given that the Court of Appeals simply was

not required to reach the cross-appeal in light of Plaintiff's success in defending the judgment of this Court. That alone does not merit a reduction in fees. With respect to the District's argument that it should not be charged for the fees associated with the issues on appeal relating to Catania's motion to quash, the Court finds the issues raised in that motion overlapped to a very high degree with those raised by the District on behalf of Whitney. That is, a small proportion of the fees associated with the legislative privilege issue on appeal are properly outside the zone of the District's responsibility. Concomitantly, an even smaller proportion of all of the fees associated with the briefing on appeal can be considered to be associated with Catania's assertion of privilege alone and, therefore, outside of the zone of the District's responsibility. Accordingly, the Court will not reduce the fees on appeal on this particular basis.

That said, the Court notes that Plaintiff does not distinguish the time spent on the cross-appeal from other appellate tasks in his billing entries. This lack of specificity would create a challenge in reducing the hours specifically spent on legislative privilege on appeal. While the Court concludes that reducing those specific hours is not warranted, the Court will reduce Plaintiff's fees for certain tasks on appeal because of this same lack of specificity, as discussed fully below.

In sum, with respect to the issue of legislative privilege, the Court eliminates **30.2 hours** billed by Karl for the proceedings under Phase IV. The Court will not reduce the hours associated with Plaintiff's cross appeal.

### 4.   Appellate Briefing on Section 12-309

As explained above, Plaintiff seeks fees for defending this Court's judgment on appeal, including defending this Court's decision that D.C. Code § 12-309 *does not* bar Plaintiff's recovery in this case. Defendant argues that, insofar as Plaintiff's appellate billing encompasses

work spent on this billing, it should be significantly reduced because much of the language in this section of the brief was used previously by Plaintiff's counsel in another case. Plaintiff responds that, because the section 12-309 arguments on appeal were similar to those submitted by Plaintiff's counsel in another case, the amount of time required to do so in this case was limited. Although Plaintiff does not support this statement with a declaration, the Court will take Plaintiff's counsel at his word, as an officer of this Court. On that basis, the Court will not reduce the appellate hours billed with respect to the section 12-309 issue. However, the Court agrees with Defendant that Plaintiff's billing on appeal is deficient in terms of its specificity. The Court will address this deficiency below and, accordingly, will reduce the fees in light of these deficiencies.

### 5. Telephone Conferences

In explaining its objections to Plaintiff's general billing practices, the District references billing entries that include telephone conferences. Plaintiff responds that there is no reason why telephone conferences are non-compensable. The Court agrees with Plaintiff that there is no *per se* rule barring fees for telephone conferences. *See In re Segal*, 145 F.3d 1348, 1354 (D.C. Cir. 1998) (two attorneys on conference with independent counsel not unreasonably duplicative). In any event, it does not appear that Defendant is ever making such an argument. However, the Court will briefly address the question of whether the specific entries that include teleconferences are deficient in specificity. The Court concludes that they are not. The better practice would be to bill separately for discrete actions, especially when their duration is readily ascertainable, as is true for teleconferences. That said, the Court does not find the entries that include teleconferences to be deficient. But the Court addresses, below, Defendant's general argument that Plaintiff's attorneys' billing entries, as a whole, are seriously non-specific.

**6.   Travel Time**

Courts in this jurisdiction generally allow compensation for travel time at no more than half an attorney's hourly rate. *See, e.g.*, *Heller v. D.C.*, 832 F. Supp. 2d 32, 54 (D.D.C. 2011) (citing cases); *Blackman v. D.C.*, 397 F. Supp. 2d 12, 15 (D.D.C. 2005) (same); *see also Cooper v. U.S. R.R. Ret. Bd.*, 24 F.3d 1414, 1417 (D.C. Cir. 1994) (concluding that travel time is compensable at half attorney's rate in Equal Access to Justice Act case). The District argues that Plaintiff's failure to charge travel time at this reduced rate demonstrates a lack of billing judgment. While the Court addresses the District's general billing judgment arguments below, the Court here addresses the compensability of the travel time charged.

By the Court's count, nineteen billing entries by attorney Karl includes travel time, including 17 entries in Plaintiff's initial Motion and two entries in Plaintiff's Supplemental Motion. *See* Pl.'s Mot., Ex. A., ECF No. 226-1. Many of the entries include travel time together with other activities. All 17 entries in the initial Motion and one of the entries in the Supplemental Motion list the travel time at 0.4 hours (or 24 minutes). The remaining entry in the Supplemental Motion does not list the amount of time associated with travel. In attorney Shaw's billing entry, she includes travel on two of the days on which she billed time, but never distinguishes that time from the remainder of the laundry list of activities included for each day in her billing diary. *See id.*, Ex. C., ECF No. 226-3.

In response to Defendant's critique, Plaintiff explains that he bills 0.2 hours for each trip to or from the courthouse. He further explains that "[i]n view of the distances involved, and the severity of D.C. traffic, this practice appears to save the District money, because the District is not required to compensate Attorney Karl when the cost of traveling to the court house exceeds 0.2 hours, or to pay the cost of Metro or cab fare." Pl.'s Reply at 13. With respect to the comparison to travel costs themselves, the Court notes that, in light of the high cost of attorney's

fees generally, including the $535 hourly rate at which the Court awards Plaintiff fees for Karl's work, any unwarranted additional time billed for travel easily swamps costs such as Metro or taxicab fare. In any event, it may be true that Plaintiff's billing practice saves the District money, but Plaintiff does not provide the facts to support that claim. Simply put, the amount of time required for any given trip depends on the distance traveled, congestion on the roads or on public transit and numerous other factors. Plaintiff's general statement about travel times is insufficient to support the application of an across-the-board 0.4 hour figure in all circumstances. Accordingly, the Court will eliminate the hours for which Plaintiff seeks compensation for travel time. With respect to the single Karl entry that lists travel without an associated time figure, the Court will presume that Plaintiff simply omitted the 0.4 figure by mistake and will use that figure to calculate the overall reduction. That conclusion is wholly consistent with the remainder of that specific entry, in which Karl lists 3.8 hours for "[p]reparation for oral argument; oral argument; waiting[;] Travel." Pl.'s Supp. Mot., Ex. H, ECF No. 239-4, at 15. It reasonable to bill 3.4 hours for the other activities listed, all together, with 0.4 hours left for travel. Accordingly, the Court will reduce the hours serving as the basis for the award by 0.4 hours for each of the 19 travel entries, for a total reduction of 7.6 hours.

With respect to Hughes, she states that she does not bill for travel as a matter of billing judgment. The Court approves of this use of the attorney's judgment. In response to Defendant's argument, she now requests to add billing entries that encompass travel time, billed at half her hourly rate. She does not provide any details in support of this request, and it is simply too late to do so.

With respect to Shaw, two of her daily entries include travel in their long list of activities, without delineating the time associated with travel. Plaintiff never mentions, let alone justifies, this practice in her Reply. Accordingly, the Court will deduct one hour for each of those entries.

In sum, the Court deducts **9.6 hours** as a result of deficiencies in the attorneys' billing practices regarding travel time.

### 7.   Revisions to the Joint Pretrial Statement

Before the Court addresses Defendant's general objections to Plaintiff's attorneys' billing practices, the Court addresses one other discrete area of work for which Plaintiff seeks attorney's fees, time spent on preparing multiple revisions to the Joint Pretrial Statement. Because the Court found the underlying work deficient, the Court will not award fees for the work associated with the revisions to the Joint Pretrial Statement that were necessitated by deficiencies found in the original Joint Pretrial Statement or in subsequent revisions.

The Court need not fully recount the history of the parties' attempts to produce a satisfactory Joint Pretrial Statement in compliance with this Court's prior orders, the Local Civil Rules, and the Federal Rules of Civil Procedure. The Court previously noted that the parties violated those instructions multiple times. *See Williams v. Johnson*, 278 F.R.D. 10, 12 (D.D.C. 2011) (describing failure to follow this Court's orders and the applicable Local and Federal Civil Rules in filing the Joint Pretrial Statement); *see id.* 13 n.3 (describing *previous* failure to comply with this Court's orders and the applicable rules in filing a previous version of the Joint Pretrial Statement). The parties' failure to abide by these instructions necessitated the filing of several versions of the Joint Pretrial Statement until the Court was satisfied. And even the final version that the Court accepted had deficiencies that, in part, led to a dispute between the parties during jury deliberations. *See id.* at 10-11. Clearly, Plaintiff may not be assigned responsibility for the

District's failures during the preparation of the Joint Pretrial Statement, of which there were several. *See, e.g.*, Minute Order dated August 24, 2011 (detailing Defendant's failure to comply with the Court's directives). Yet, by the same token, Defendant may not be charged with Plaintiff's failures and, therefore, Plaintiff will not be awarded attorney's fees for the time her attorneys spent revising the Joint Pretrial Statement to account for previous failures to satisfy this Court's orders and the applicable rules. Accordingly, the Court will eliminate **32.8 hours** billed by attorney Karl in July and August 2011, which were associated with revisions to the Joint Pretrial Statement.

### 8.  Billing Judgment and Alleged Block Billing

Aside from all of the specific concerns that Defendant raises regarding particular elements of Plaintiff's billing, Defendant also raises two general critiques in support of its argument that Plaintiff's requested fees are not reasonable. First, the District argues that Plaintiff failed to exercise adequate billing judgment. Second, the District argues that Plaintiff's attorneys committed the sin of block billing, including entries that are "vague and compound," preventing the Court from being able to assess the reasonableness of the fees requested. As a result of these deficiencies, the District argues that, after making the other specific reductions, Plaintiff's hours requested should be further reduced by 50%. Plaintiff rejects all of these contentions. The Court address Defendant's argument regarding billing judgment, following by Defendant's argument regarding non-specific "block billing."

Defendant's argument regarding billing judgment fails to stand up to scrutiny. As Plaintiff argues, her attorneys had no obligation to list non-compensable items in their billing records and then to explain why they refrained from charging them to Defendant as an exercise of billing judgment. It is also wholly reasonable for Plaintiff to deduct certain hours, not seeking attorney's

fees based on them, in an exercise of caution to ensure that Plaintiff is not seeking

reimbursement for work that was somehow duplicative. Similarly, it was a reasonable exercise of

billing judgment for Plaintiff to reduce her request for attorney's fees in the Supplemental

Motion by 6%. Whether 6% is a *sufficient* reduction in light of deficiencies in those billing

records, the Court considers next. However, the Court cannot conclude that Plaintiff fatally failed

to exercise billing judgment or that, as a result of these practices, Plaintiff's award should be

reduced further. Insofar as Defendant's billing judgment argument, in actuality, is an argument

that Plaintiff's attorneys' billing entries are fatally non-specific, the Court addresses that

argument next.

  With respect to Karl's billing in the original motion, which covered all of his work

through filing of the appeal, Defendant includes only one sentence in its brief providing any

details about the District's claim that Karl's billing is "vague and compound." Defendant

explains that "[t]ypical descriptions include 'teleconference with client' (repeated at least 17

times), and 'Preparation of Plaintiff's Motion for Partial Summary Judgment' (six entries)."

Def.'s Opp'n at 9. But Defendant fails to acknowledge that the meaning of such entries is

transparent in their context. For instance, Karl includes entries for teleconferences with his client

on the 9th, 15th, 16th, 20th and 26th of February, 2007. *See* Pl.'s Supp. Mot., Ex. A, at 16. While

those entries do not explicitly state the substance of the respective conversations, the content is

sufficiently clear from context. Immediately before those entries, Karl notes that the District filed

its motion to dismiss on February 2, 2007. Immediately after the teleconference entries, Karl's

entries describe the preparation of a settlement letter and then the preparation of an opposition to

the District's motion. From this context, it is clear enough that the teleconferences very likely

included discussions of potential settlement offers and potential legal responses to the motion to

dismiss. In addition, it is noteworthy that each telephone conference is less than an hour and that most are in the range of 6 to 20 minutes. If there is any error here, it is harmless and does not warrant a reduction in fees. While this is only one example of the failure of Defendant's critique of Karl's entries, it is representative. The Court concludes that Defendant has not shown that Karl's requests in the original Motion were unreasonable. Upon the Court's review of all of Karl's billing entries in support of the original Motion, the Court concludes that they are not fatally unspecific. Therefore, no general reduction of Karl's hours that support the original Motion, aside from the specific reductions discussed above, is warranted.

The District devotes more space to explaining how Hughes' billing is deficient. But this argument is belied by the billing records themselves. Defendant claims that Hughes' billing is fatally non-specific because of the column headings in the billing chart that Hughes submitted, such as "obtain/review documents" and "investigation/trial prep." Defendant paints a misleading picture of Hughes' billing in suggesting that the *only* information available about those activities are these categorizations. Indeed, if the billing entry said no more than "obtain/review documents," that would likely be deficient. But that is not the case. Each entry in Hughes' chart includes a description of the activity undertaken, *as well as* an indication of whether it falls in one of the enumerated categories, such as "obtain/review documents" or "conf[erence]s/meetings." The combination of the column headers and the individual entry descriptions provides sufficient descriptions of the individual tasks involved and enables the Court to fully assess the reasonableness of Hughes' billing for those tasks. No general reduction of Hughes' time is warranted.

Finally, the Court turns to Plaintiff's request for fees for work on appeal through her Supplemental Motion, which includes a request for fees for work for 196.5 hours of work by Hughes and 500.5 hours by Karl.[15]

The Court begins with Karl's entries. Karl's billing includes 46.1 hours spent on the initial phase of the appeal, including briefing on Plaintiff's motion for summary affirmance; 270.6 hours spent on the preparation of briefs (not including 5.5 hours spent on mediation); and 91.9 hours on the oral argument phase. As Defendant points out, numerous entries in Karl's billing submission are identical, including approximately 35 entries stating "[p]reparation of Brief; legal research; analysis of D.C.'s Brief." Karl's billing also includes approximately 28 entries that state "Review and analysis of Briefs; legal research; preparation For oral argument." Karl's billing also includes a significant number of entries with identical phrasing pertaining to drafting Plaintiff's reply brief in support of her cross-appeal and a significant number of entries with identical phrasing regarding the motion for summary affirmance. Although there are certainly entries that are not deficient, it is notable how a significant proportion of the entries in support of the appellate fees request fail to provide the requisite specificity. Rather than assessing a specific reduction to the number of hours for specific line items, the Court concludes that it is appropriate to apply a percentage reduction to several entire sub-categories of appellate activities billed by Karl.

---

[15] In calculating these totals, the Court does not include the hours enumerated in Plaintiff's Supplemental Motion for work pertaining to the litigation of the fees issue before this Court. *See* Pl.'s Supp. Mot., Ex. I, Chart, at 7 (listing .06 hours on fees work by Hughes); *id.*, Ex. H, at 15, 17 (listing 35.2 hours and 25.7 hours for work by Karl in Phase XVII and Phase XVIII, which pertain to the fees issue). Defendant never explains how these entries are fatally non-specific, nor does the Court come to that conclusion. The Court will not reduce the hours spent on fees work any further. The Court also does not include the 5.5 hours spent by Karl on mediation-related tasks during the appellate phase. There is no reason to reduce or eliminate those hours.

In *Role Models America, Inc., v. Brownlee*, 353 F.3d 962 (D.C. Cir. 2004), the United States Court of Appeals for the District of Columbia Circuit addressed similar deficiencies. Specifically, the *Role Models* court described how "[t]he law clerk's time records, for instance, give an identical one-line entry, '[r]esearch and writing for appellate brief,' on eight consecutive weekdays: the clerk billed 8.25, 6.25, 7.25, 8.25, 7.25, 4, 8, and 4.25 hours on those days." *Id.* at 971. The Court of Appeals concluded that "[s]uch generic entries are inadequate to meet a fee applicant's 'heavy obligation to present well-documented claims.' " *Id.* at 971 (quoting *Kennecott Corp. v. EPA*, 804 F.2d 763, 767 (D.C. Cir. 1986) (*per curiam*)). A similar pattern is present here. Numerous entries in Karl's billing indicate only the category of task in which he was engaging—e.g., preparing the appellee brief on appeal—but do not provide any specifics regarding the aspects of that task for any given day. Such generalities do not enable the Court to assess the reasonableness of the hours requested. The failure to provide additional details is particularly notable given that it appears that the vast majority of the issues presented on appeal were already presented and thoroughly briefed before this Court. Accordingly, more details are necessary to justify fees for the high number of hours that Karl billed on appeal. With several exceptions described below, the Court will therefore apply a percentage reduction to all of Karl's hours on appeal, following the lead of the Court of Appeals in *Role Models*.

It is true that there were numerous additional problems regarding the fees request in *Role Models* that are absent from this case, such as blatant inconsistencies in billing. *See id.* at 972. Moreover, insofar, as there are other deficiencies that warrant a reduction in fees in this case, the Court has already accounted for those deficiencies above. Accordingly, there is no need to account for those specific deficiencies in applying a percentage reduction to entire categories of billing entries. In *Role Models*, the Court of Appeals determined that, "[i]n view of all this—

31

inadequate documentation, failure to justify the number of hours sought, inconsistencies, and improper billing entries," it would "allow reimbursement for only *fifty percent* of the attorney hours that Role Models requests." *Id.* at 973 (emphasis added). Because the billing entries in question in this case present some but not all of the deficiencies identified in *Role Models*, the Court concludes that a 50% reduction is similarly appropriate here, but only with respect to the specific categories of activities in which the deficient entries fall. In other words, the Court will award fees based on only 50% of the hours enumerated by Karl as spent on appellate briefing and oral argument. The Court will apply this reduction to the 46.1 hours spent on the initial phase of litigation and to the 270.6 hours spent on the preparation of the appellate briefs, as enumerated above. With respect to oral argument, the Court will not apply the reduction to the 3.8 hours listed for activities on the day of oral argument or the 0.6 hours spent reviewing the District's 28(j) letter and attached decision after argument. Those individual billing entries do no suffer from insufficient specificity. Accordingly, the Court will apply the percentage reduction to the remaining 87.5 hours spent in oral argument. In sum, the Court will apply a 50% reduction to the 404.2 hours spent by Karl on these activities, resulting in a reduction of **202.1 hours.**

Turning to Hughes' billing on appeal, her billing records only display a modest version of these deficiencies. Most notably, she includes 44.7 hours where the billing records only list "Draft motion for summary affirmance." The Court concludes that these entries present the same *Role Models* problems as did numerous entries by Karl. However, the Court does not find that Hughes' other billing entries submitted with Plaintiff's Supplemental Motion present the same deficiencies. Accordingly, for the same reasons that the Court concluded that a 50% reduction was appropriate with respect to the problematic categories of Karl's appellate billing, the Court

will apply a 50% reduction to the 44.7 hours that Hughes billed for drafting the motion for summary affirmance, resulting in a reduction of **22.35 hours**.

*    *    *

In sum, the Court reduces Plaintiff's requests by eliminating in full these amounts:

- 25.8 hours (Karl), for representation before the Office of Personnel (Phase I);
- 16.8 hours (Shaw), for the motion seeking injunctive relief that was not filed (Phase II);
- 30.2 hours (Karl), for time associated with the motions to quash before this Court (Phase IV);
- 9.6 hours (Karl), for travel time (multiple phases); and
- 32.8 hours (Karl), for revisions to the Joint Pretrial Statement (Phase VI).

The Court eliminates in full these 115.2 hours. In addition, the Court applies a reduction of 50% to 404.2 hours spent on appeal by Karl and 44.7 hours spent on appeal by Hughes, which together result in a *reduction* of 224.45 hours. In total, the Court reduces the hours requested by **339.65 hours.** The Court notes that this figure is approximately 18.5% of the 1832.6 total hours that are the basis for Plaintiff's request

The following chart applies the foregoing analysis to the dollar values of Plaintiff's requests through the original Motion and through her Supplemental Motion:

|  | Hours Requested | Hours After Reductions | Hourly Rate | Fee Award |
|---|---|---|---|---|
| Karl (Original Mot.) | 770.4 | 672.8 | 535 | $359,948.00 |
| Shaw (Original Mot.) | 62.3 | 45.5 | 535 | $24,342.50 |
| Hughes (Original Mot.) | 327.8 | 327.8 | 473 | $155,049.40 |
| Karl (Supp. Mot.) | 475 | 255.774 | 535 | $136,839.09 |
| Hughes (Supp. Mot.) | 197.1 | 164.265 | 473 | $77,697.35 |
|  |  |  | **TOTAL** | **$753,876.34** |

The Court notes that the column including the "hours after reductions" account for the reductions listed above, both the specific hours disallowed, the 50% reduction for certain categories of deficient billing presented in the Supplemental Motion, and the 6% reduction for all fees

33

requested through the Supplemental Motion pursuant to Plaintiff's own billing judgment reduction. The hourly rates are the current USAO *Laffey* rates applied to historical levels of experience, which the Court extrapolated from the 2014-2015 and 2015-2016 *Laffey* matrices as explained above.

This sizable award here is justified by the long history of this case, including the litigation of numerous motions before this Court, as well the proceedings on appeal. While this history does not justify the use of the higher LSI *Laffey* rates, it does explain an award of approximately three-quarters of a million dollars. The Court notes that the size of this award was in significant part necessitated by the District's decision to fiercely contest this litigation at every stage of the proceedings. This resulted in the briefing and resolution of numerous substantive motions, the vast majority of which were filed by the defendants, the District of Columbia and its employees. Clearly, the District has every right to litigate zealously. But here, where the D.C. Council has promulgated a fee-shifting statute in order to ensure the full protection of the rights of whistleblowers, the District must now pay the price, in dollars and cents, for its role in magnifying the scope of the fees. Plaintiff had a right to vindicate her substantive rights, using the assistance of competent counsel, as she has done in this case. Therefore, the Court concludes that this award of attorney's fees is reasonable and is, ultimately, consistent with both the letter and the spirit of the D.C. Whistleblower Protection Act and the relevant principles of law.

**C.  Costs**

Plaintiff requested costs in both her original Motion and her Supplemental Motion. The District of Columbia does not object to these costs. The following are the constituent items in the costs requested by Plaintiff:

- Skip tracers and service (attached to original Hughes Declaration): $550.
- Transcript and courier (original Shaw Declaration): $145.10.

- Bill of costs taxed, ECF No. 240: $5348.69.
- Copying and production (Supplemental Hughes Declaration): $154.28.[16]
- Filing fee for cross-appeal (Supplemental Karl Declaration): $350.
- Trial transcripts (Supplemental Karl Declaration): $627.30.
- Costs of printing appellate briefs (Supplemental Karl Declaration): $292.35.

These requests come to a total of $7,467.72, and the Court will award costs in that amount. The Court notes that Plaintiff sums up her request in her Reply brief saying that she requests $7,648.91. Pl.'s Reply at 23. The source of this discrepancy remains unclear to the Court. In any event, this difference is negligible, and the Court will issue an award pursuant to the Court's calculations based on the individual items that Plaintiff has presented as supporting her request for requests.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiff's [225] Motion and GRANTS IN PART and DENIES IN PART Plaintiff's [239] Supplemental Motion. The Court GRANTS Plaintiff's requests as to $753,876.34 in fees and $7,467.72 in costs and AWARDS those amounts; the Court otherwise DENIES Plaintiff's requests. As there are no other issues to resolve in this case, this case is dismissed in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

Dated: March 30, 2016

                                        /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge

---

[16] It appears to the Court that this line item, $154.28 for copying and production, was included *twice* in Plaintiff's request for a total of $1,578.21 in costs through its Supplemental Motion. Without that double counting, the Court's sum of the costs requested through the Supplemental Motion amounts to $1423.93.